# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MGMTL, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2138-WBV-MBN** |
| **STRATEGIC TECHNOLOGY** | **SECTION: D (5)** |

## ORDER AND REASONS

Before the Court is Defendant's Motion *in Limine* to Preclude Expert Testimony of James C. Fontana.[1]  MGMTL, LLC oppose the Motion,[2] and Defendant has filed a Reply.[3]

After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED in part and DENIED in part.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND[4]

This is copyright infringement case concerning MGMTL, LLC's ("MGMTL's") Security Management and Reporting Tool ("SMART"), a "computer software application designed to streamline and efficiently manage the complex tasks and

---

[1] R. Doc. 92.

[2] R. Doc. 103-6, filed into the record under seal.  MGMTL moved for leave to file under seal its Opposition brief and several exhibits thereto "[o]ut of an abundance of caution" and on the basis that, "Strategic Technology, Institute, Inc. has taken an expansive approach with respect to the parties' protective order and has designated all documents it has produced in discovery in this litigation as 'confidential' pursuant to the protective order (Rec. Doc. 39)."  R. Doc. 104.  The Court granted that request.  R. Doc. 105.

[3] R. Doc. 120.

[4] In the interest of judicial economy, and because the Court set forth the factual and procedural background of this matter in great detail in its February 16, 2022 Order and Reasons regarding Defendant's Motion *In Limine* to Preclude Opinion Testimony of Jorge Menes (R. Doc. 173), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.

requirements of United States Department of Defense security managers, government contracting companies, and other industries for which the management of personnel and their security clearance is a priority."[5]  MGMTL alleges that the SMART software application is an extremely valuable tool and the first of its kind, capable of evaluating thousands of personnel records while applying Department of Defense rules, regulations, and applicable security clearance guidelines to each one.[6] MGMTL asserts that it obtained a registered copyright for "the SMART Security Management and Reporting Tool" on September 27, 2013.[7]

MGMTL alleges that it entered into a distributor agreement with Strategic Technology Institute, Inc. ("STI"), through which STI was permitted to advertise, promote, and resell SMART to end-users.[8]  MGMTL alleges that STI violated the distributor agreement, as well as MGMTL's copyright interests in SMART, by repackaging the software application as a security personnel management software called Personnel Administrative Security System, or "PASS," which STI then sold to the Marine Forces Reserve and installed on five machines at the Marine Forces Reserve office in New Orleans.[9]  MGMTL alleges that PASS is listed on STI's United States Government General Services Administration ("GSA") schedule, which is a long-term government-wide contract that provides federal, state, and local government buyers certain contractual pre-approvals to move forward with licensing

---

[5] R. Doc. 22 at ¶¶ 2 & 8.
[6] *Id.* at ¶ 9.
[7] *Id.* at ¶ 11.
[8] *Id.* at ¶¶ 19 & 20.
[9] *Id.* at ¶¶ 35 & 36.

or purchasing the PASS application.[10]  According to MGMTL, the PASS application is actively listed and available for purchase on GSA's Advantage! Website at a purchase price of $214,094.00 per license.[11]  MGMTL filed this lawsuit after learning of these actions allegedly taken by STI.

On May 10, 2021, STI filed the instant Motion in Limine, seeking to preclude the expert testimony of James C. Fontana under Fed. R. Evid. 702.[12]  STI seeks to exclude the opinions contained in Fontana's expert report dated January 28, 2021 for several reasons.  Specifically, STI asserts that Fontana's opinions regarding the value of, and market for, SMART must be excluded because Fontana is not qualified to render expert opinions on that subject and because the opinions are not based upon reliable methodology.[13]  STI also seeks to exclude Fontana's opinion that the Government has determined that the price for PASS on STI's GSA Schedule contract ($214,094.00) is fair and reasonable on the basis that this is a legal conclusion.[14]  Finally, STI seeks to exclude Fontana's opinion that STI has a competitive advantage in being certified as a small business in connection with its potential sales of PASS on the basis that the opinion is irrelevant to the facts in dispute in this case.[15]

MGMTL opposes the Motion, asserting that Fontana is an experience-based expert, namely an attorney who has worked as general counsel for multiple government contractors and in private practice in the realm of government

---

[10] *Id*. at ¶ 38.
[11] *Id*. at ¶ 39.
[12] R. Doc. 92.
[13] R. Doc. 92-1 at pp. 3 & 5-10.
[14] *Id*. at p. 4 (*citing* R. Doc. 92-2 at ¶¶ 7-8 & 11-12).
[15] R. Doc. 92-1 at p. 4.

contracting for approximately 35 years.[16]   MGMTL contends that Fontana's testimony will help the jury understand the complicated process of government contracting and acquisitions, including in the context of security management tools, and that he will provide a framework for the jury to determine the amount of damages suffered by MGMTL as a result of STI's actions.[17]   While not a model of clarity, MGMTL also seems to assert that Fontana is qualified to offer expert opinions in this case,[18] that his opinions are based upon sufficient facts and data,[19] and that his methodologies are reliable.[20]

In response, STI maintains that Fontana's testimony should be excluded because he is not qualified to opine about the value of, and market for, SMART and because his opinions are unreliable and based upon insufficient information.[21]   STI contends that while MGMTL seeks to use Fontana's testimony to "shore up" the damages opinion testimony of Jorge Menes, Fontana failed to identify how many people he thinks would license SMART, how likely they are to license SMART, how long they would license SMART, the probability that they would license SMART, or at what price they may market SMART.[22]   As such, STI argues that Fontana's opinion "is so general that it is irrelevant."[23]   STI further asserts that the Court should disregard the new Declaration from Fontana, submitted with the Opposition brief,

---

[16] R. Doc. 103-6 at pp. 1, 5 & 9-17.
[17] *Id*. at p. 6.
[18] *Id*. at pp. 5, 6, 12, 14, 15-16, 17, & 23.
[19] *Id*. at pp. 21-22.
[20] *Id*. at pp. 8-21.
[21] R. Doc. 120.
[22] *Id*. at p. 1.
[23] *Id*.

which seems designed to make it look like Fontana – contrary to his deposition testimony – actually considered some financial factors in reaching his opinions.[24]   STI maintains that Fontana's experience in the field of government contracts does not relate to his opinions about the value of, and market for, SMART, and that his reliance on his experience alone is fatal to the reliability of his report.[25]   Finally, STI asserts that MGMTL relies upon inapposite cases in its Opposition brief, ignoring the fact that other courts have severely limited testimony from government contracting experts.[26]

## II.   LEGAL STANDARD

When expert testimony is challenged, the party seeking to present the testimony has the burden of proving by a preponderance of the evidence that the testimony satisfies Federal Rule of Evidence 702.[27]   Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.[28]

Rule 702 codifies the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which charges district courts to act as "gatekeepers" when

---

[24] *Id*. at pp. 2 -3.
[25] *Id*. at pp. 3-4.
[26] *Id*. at pp. 4-5 (citing authority).
[27] *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).
[28] Fed. R. Evid. 702.

determining the admissibility of expert testimony.[29]  "To be admissible under Rule 702, the court must find that the evidence is both relevant and reliable."[30]  According to the Fifth Circuit, reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid, while relevance depends on whether the reasoning or methodology underlying the testimony can be properly applied to the facts at issue.[31]  The purpose of the reliability requirement is to exclude expert testimony based merely on subjective belief or unsupported speculation.[32]  District courts have considerable discretion to admit or exclude expert testimony under Rule 702.[33]

## III.   ANALYSIS

### A. MGMTL Has Established That Fontana Is Qualified to Offer Expert Opinions Regarding Government Contracting, But Not the Value of, or Market For, the SMART Software Application.

STI asserts that Fontana's testimony must be excluded under Rule 702 because he does not possess expertise in determining the value of, or market for, software, his specialized knowledge does not pertain to the facts at issue in this case, and he offers opinions on legal issues that are the province of the Court.[34]  As to

---

[29] *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003) (citing *Daubert*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

[30] *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012) (citing *United States v. Valencia*, 600 F.3d 389, 423 (5th Cir. 2010)).

[31] *Ebron*, 683 F.3d at 139 (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)).

[32] *Tajonera v. Black Elk Energy Offshore Operations, LLC*, Civ. A. No. 13-0366, 2016 WL 3180776 at *8 (E.D. La. June 7, 2016) (Brown, J.) (citing *Daubert*, 509 U.S. at 590, 113 S.Ct. at 2795).

[33] *See, Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000); *Tajonera*, Civ. A. No. 13-0366, 2016 WL 3180776 at *8 (citing authority).

[34] R. Doc. 92-1 at pp. 2-3.

Fontana's opinion regarding the value of, and market for, SMART,[35] STI asserts that Fontana has no professional background, experience, training, or education in valuation, software licensing, conducting market analyses, marketing software products to government agencies or government contractors, or purchasing software products for government agencies or government contractors.[36]  STI contends that Fontana's background and experience is limited to providing legal advice regarding contracts.  STI points out that Fontana testified during his deposition that he has never performed a market analysis as part of any expert work, he has never been retained as an expert to evaluate software, he has not authored any publications regarding software licensing, software valuation, or the market for software, and he has never been accepted as an expert by a court.[37]

Regarding Fontana's opinion that the Government has determined the price for PASS listed on STI's GSA Schedule contract is fair and reasonable, STI asserts this is a legal conclusion based upon federal regulations and that experts may not render legal conclusions.[38]  Finally, as to Fontana's opinion that STI has a competitive advantage as a small business in its sales of PASS to government agencies, STI asserts that the opinion is irrelevant because it is undisputed that STI has never sold PASS from its GSA Schedule contract.[39]  STI contends that Fontana

---

[35] R. Doc. 92-1 at p. 3 (*citing* R. Doc. 92-2 at ¶¶ 21-23).
[36] R. Doc. 92-1 at p. 3 (*citing* R. Doc. 92-2 at ¶¶ 1-2 & 21).
[37] R. Doc. 92-1 at p. 3 (*citing* R. Doc. 92-3 at pp. 2-5, 6, 7; R. Doc. 92-2 at p. 21).
[38] R. Doc. 92-1 at p. 4 (*citing* R. Doc. 92-2 at ¶¶ 7-8, 11-12; *Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996)).
[39] R. Doc. 92-1 at p. 4 (*citing* R. Doc. 92-2 at ¶¶ 18-19).
http://www.fpds.gov/ezsearch/search.do?indexName=awardfull&templateName=1.5.1&s=FPDS.GOV &a=47ATCA19D009P ).  The Court notes that, as of the date of this Order, a search of the foregoing website yields the following result: "ezSearch - Page Not Found."

failed to quantify the value of PASS and that his opinions are so general that they are irrelevant.[40]

MGMTL argues that Fontana's experience is not limited to government contracts and includes "deep and personal involvement in industrial security and security clearance management processes."[41] MGMTL claims that this experience includes managing security officers who are responsible for processing, managing, and otherwise handling facility and personnel security clearances and access to classified information facilities, which required knowledge of security management regulations, the cost of security management, security management systems, and the challenges presented to security managers.[42] MGMTL asserts that the premise of STI's argument, that Fontana must be labeled as a software valuation expert to offer his opinion testimony, is wrong.[43]

Although difficult to discern,[44] MGMTL seems to assert that *Daubert* requires specialized knowledge only as to the topics about which the expert will testify, and that Fontana meets that requirement. [45] MGMTL contends that Fontana understands the potential need for and use of security management software with the functionality of SMART among government offices and government contractors, since he has personally worked in that space for years. MGMTL argues that

---

[40] R. Doc. 92-1 at p. 4.
[41] R. Doc. 103-6 at p. 6.
[42] *Id*. (*citing* R. Doc. 103-3 at ¶ 2).
[43] R. Doc. 103-6 at p. 12.
[44] The Court notes that MGMTL provided a combined analysis of Fontana's qualifications and the reliability and relevance of his opinions, making it difficult for the Court to construe MGMTL's arguments regarding Fontana's qualifications to testify as an expert. *Id*. at pp. 12-23.
[45] *Id*. at p. 14.

Fontana's testimony that SMART would likely be sold in substantial or marketable quantities is supported not only by his government contracting experience, but also by his detailed personal knowledge of security management.[46]  MGMTL claims that Fontana's knowledge of government contracting will also allow him to testify that it is well known in the industry that listing a product on a GSA Schedule is a recognition by the government that such a listed price is "fair and reasonable."[47]  Although STI attempts to downplay Fontana's experience in the security management context, MGMTL argues that his industrial security and security management process experience "is significant," as set forth in Fontana's Declaration, submitted with the Opposition brief.[48]  As such, MGMTL asserts that Fontana is qualified by knowledge and experience to provide testimony as to the value of a security management tool such as SMART.[49]

MGMTL further asserts that Fontana is not providing legal conclusions regarding the price at which PASS is listed on STI's GSA Schedule, as he will testify about the industry meaning and standards regarding representations made on the GSA Schedule and in the documentation STI submitted of past commercial sales (called "CSP-1"),[50] how putting a price on a particular product in the GSA Schedule is a representation that the price is fair and reasonable, and that GSA, in evaluating and awarding such schedule contracts, places a heavy premium on that

---

[46] *Id.*
[47] *Id.*
[48] *Id.* at p. 16 (*citing* R. Doc. 103-3 at ¶ 2).
[49] R. Doc. 103-6 at p. 17.
[50] *Id.* at p. 5.

representation.[51]  MGMTL points out that expert testimony on industry standards is common in civil litigation, and helpful in explaining contract terms in government contracts.[52]

In response, STI asserts that despite Fontana's 35 years of experience in security management, he is not qualified to testify regarding the value of, or market for, SMART because his testimony shows that he "has no idea about what government offices would do because Fontana could not answer even the basic question of whether SMART could work on government systems."[53]  STI argues that Fontana's experience in the field of government contracts does not relate to his opinions about the value of, and market for, SMART and that his opinions must be excluded.[54]  STI further asserts that while Fontana may have the experience to discuss terms in the government contracting industry, he lacks a foundation for his opinions that SMART is "valuable" or that someone might purchase it.[55]

According to the Opposition brief, MGMTL intends to offer Fontana as an expert in government contracting and security systems management.[56]  Fontana's expert report provides that he has assisted clients on a variety of government contract matters during his career, including: (1) contract formation issues and related regulatory compliance pursuant to federal procurement laws and regulations, including the Federal Acquisition Regulation ("FAR") and its agency acquisition

---

[51] *Id*. at p. 18.

[52] *Id*. (citing authority).

[53] R. Doc. 120 at p. 3 (*citing* R. Doc. 92-3 at p. 8; R. Doc. 120-1 at p. 3).

[54] R. Doc. 120 at p. 3.

[55] *Id*. at p. 5.

[56] R. Doc. 103-6 at p. 21.

supplements; (2) government contracts litigation, including bid protests before federal agencies, the Government Accountability Office ("GAO"), and the United States Court of Federal Claims ("COFC"), and claims and appeals before the Boards of Contract Appeals and COFC; (3) issues related to contracts with the United States General Services Administration ("GSA") and the GSA Federal Supply Schedule, including Schedule contracting matters, interpretation of and compliance with FAR, GSA Acquisition Manual ("GSAM"), and GSA Acquisition Regulation (GSAR"), formation of and amendments to GSA Schedule contracts, GSA audits of Schedule contract holders, litigation involving GSA Schedule contract holders, and related legal matters; (4) small business contracting issues; and (5) transactions related to government contractors, including GSA Schedule holders.[57]   According to his curriculum vitae, Fontana "has over 35 years of experience as an attorney specializing in government and commercial contracts and related litigation, as well as ethics compliance and corporate governance issues," and "specializes in mergers and acquisitions in both the government technology and commercial sectors."[58] Fontana has also given seminars on several topics, including "issues relating to government contracts . . . and technology-related issues," was previously a regular contributor to Washington Technology's *Infotech and the Law* column, and has published articles in several publications, including the American Bar Association's *Public Contract Law Journal*.[59]

---

[57] R. Doc. 92-2 at p. 2.
[58] *Id.* at p. 15.
[59] *Id.*

With this in mind, the Court finds that Fontana is qualified to testify regarding government contracting based upon his extensive experience and knowledge in that field. Specifically, Fontana is qualified to testify regarding the effect of an award of a GSA Schedule contract to STI for its PASS product,[60] any competitive advantage STI may receive as a result of being certified as a small disadvantaged business,[61] and whether the SMART product would likely be a valuable tool available to Government Security Management Officers ("SMOs"), Government contractor Facility Security Officers ("FSOs"), or other Government personnel in managing and implementing Government personnel security clearances.[62] It is clear to the Court, from Fontana's expert report and his curriculum vitae, that Fontana possesses the knowledge and experience required to offer expert opinions on these topics. The Court rejects STI's request to exclude, as a legal conclusion, Fontana's opinion that the Government has determined $214,094 to be a fair and reasonable price of the PASS product by virtue of the awarded GSA Schedule contract to STI. As MGMTL points out,[63] the Fifth Circuit has recognized that, "a trial court's reliance on individuals experienced in a particular field for the purposes of obtaining explanation of the technical meaning of terms used in the industry is 'prudent.'"[64] Moreover, MGMTL and Fontana have represented to the Court that Fontana has explicitly recognized and accepted the duty to avoid rendering legal conclusions, which he

---

[60] *Id.* at ¶¶ 6-17.
[61] *Id.* at ¶¶ 18-19. *See*, *Id.* at ¶ 20 for the definitions of SMOs and FSOs.
[62] *Id.* at ¶ 21.
[63] R. Doc. 103-6 at p. 20.
[64] *Kona Technology Corp. v. Southern Pacific Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (quoting *Phillips Oil Co. v. OKC, Corp.*, 812 F.2d 265, 281 (5th Cir. 1987)).

acknowledged is the sole province of this Court.[65]  Should Fontana's testimony stray into offering strictly legal conclusions, the Court will entertain and rule on objections from STI at that time.

The Court further finds that Fontana's experience in the area of government contracts, while extensive, does not make him qualified to render opinions regarding the value of, or the market for, the SMART software application.  The Fifth Circuit "require[s] that a witness's qualifying training or experience, and resultant specialized knowledge, are *sufficiently related* to the issues and evidence before the trier of fact [such] that the witness's proposed testimony will help the trier of fact."[66] Stated another way, an expert may not go beyond the scope of his expertise in giving his opinion.[67]  The Court agrees with STI that MGMTL has not demonstrated that Fontana has any experience, training, background, or knowledge regarding software valuation or licensing, conducting market analyses, marketing software products to government agencies or government contractors, or purchasing software products for government agencies or government contractors to support an opinion as to the value of, or market for, the SMART software.[68]  In fact, Fontana testified that he has not conducted any market studies in this case, nor did he conduct a market analysis when he was retained as an expert in a prior, unrelated case.[69]

---

[65] R. Doc. 103-6 at p. 21 (*citing* R. Doc. 103-2 at ¶ 6).
[66] *Macy v. Whirlpool Corp.*, 613 Fed.Appx. 340, 345 (5th Cir. 2015) (quoting *United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013)) (internal quotation marks omitted) (emphasis added by *Macy*).
[67] *Tingle v. Hebert*, Civ. A. No. 15-626, 2018 WL 2287028, at *4 (M.D. La. April 23, 2018) (quoting *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009)) (quotation marks omitted).
[68] R. Doc. 92-1 at p. 3 (*citing* R. Doc. 92-2 at ¶¶ 1-2 & 21; R. Doc. 92-3 at pp. 2, 3-4, 5, 6, & 7).
[69] R. Doc. 92-3 at pp. 2-5 & 9.

While MGMTL argues that the inquiry into Fontana's expertise and qualifications should be guided by the specific opinions to which he will testify,[70] MGMTL fails to address how Fontana's experience in the area of "government contracts and related litigation"[71] makes him qualified to testify regarding the value of SMART or its marketability to government agencies. Fontana's expert report merely states that his opinions are based upon his knowledge of the government contracting industry, his representation of contractors in matters related to GSA Schedules, his experience representing contractors with security clearances at the facility and personnel levels, his familiarity with the use and management of security clearances by Government SMOs, his experience with defense agency purchasing practices, and his general familiarity with the Joint Personnel Adjudications Systems ("JPAS").[72] The Court finds that these conclusory statements and this prior experience does not make Fontana qualified to testify that the SMART software application "would likely be marketable for purchase by [Government] organizations in substantial quantities."[73] As such, STI's Motion is granted to the extent that it seeks to exclude Fontana's testimony regarding the market for, or value of, the SMART software application,[74] on the basis that Fontana is not qualified to testify as an expert on those topics.

---

[70] R. Doc. 103-6 at pp. 12-15.
[71] R. Doc. 92-2 at p. 2.
[72] *Id.* at ¶¶ 21 & 22.
[73] *Id.* at p. 4.
[74] *Id.* at p. 4 & ¶¶ 21-23.

### B. MGMTL Has Failed to Establish that Fontana's Opinions Regarding The Value Of, and the Market For, the SMART Software Application Are Reliable.

The Court further finds that, even if Fontana is qualified to offer opinion testimony regarding the value of, and the market for, SMART, such opinions must be excluded as unreliable under Fed. R. Evid. 702. To satisfy the reliability prong of the *Daubert*/Rule 702 analysis, a "party seeking to introduce expert testimony must show: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[75] To prove reliability, the proponent of the expert testimony must present some objective, independent validation of the expert's methodology.[76] As explained by the Supreme Court, the objective of this Court's gatekeeper role is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[77]

### 1. *Fontana's Opinions Are Based Upon Sufficient Facts or Data.*

As STI points out,[78] the Fifth Circuit has recognized that, "The *Daubert* reliability analysis applies to, among other things, 'the facts underlying the expert's

---

[75] *Recif Resources, LLC v. Juniper Capital Advisors, L.P.*, Civ. A. No. H-19-2953, 2020 WL 5623982, at *2 (S.D. Tex. Sept. 18, 2020) (Atlas, J.) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)) (internal quotation marks omitted).

[76] *Recif Resources, LLC*, Civ. A. No. H-19-2953, 2020 WL 5623982, at *2 (citing *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)).

[77] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

[78] R. Doc. 92-1 at p. 5.

opinion.'"[79]  "In particular, an opinion based on 'insufficient, erroneous information,' fails the reliability standard."[80]  The Fifth Circuit has further cautioned that, "Although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, 'the existence of sufficient facts . . . is in all instances mandatory.'"[81]  Thus, "expert testimony that relies on 'completely unsubstantiated factual assertions' is inadmissible."[82]  Nevertheless, the Fifth Circuit has made clear that, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and should be left for the jury's consideration."[83]  "It is the role of the adversarial system, not the court, to highlight weak evidence."[84]

STI asserts that Fontana's opinions are not based on sufficient facts or data because the only "facts and data" he relied upon was a simple demonstration of the SMART software application by its co-creator, Jorge Menes, a statement from Steve McMurtry of the Marine Forces Reserve, the number of Department of Defense personnel and government contractors with security clearances, and his own experience providing legal advice to companies regarding federal procurement and

---

[79] *Moore v. Int'l Paint, LLC*, 547 Fed.Appx. 513, 515 (5th Cir. 2013) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007)); *Jacked Up, LLC v. Sara Lee Corporation*, 291 F. Supp. 3d 795, 802 (N.D. Tex. 2018) (Horan, M.J.) (quoting *Moore*, 547 Fed.Appx. at 515).

[80] *Moore,* 547 Fed.Appx. at 515 (quoting *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009)).

[81] *Moore*, 547 Fed.Appx. at 515 (quoting *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)) (internal citation omitted).

[82] *Moore*, 547 Fed.Appx. at 515 (quoting *Hathaway*, 507 F.3d at 319 n.4).

[83] *Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United States v. 14.38 Acres of Land, More of Less Sit. In Leflore County, Miss*, 80 F.3d 1074, 1077 (5th Cir. 1996)) (internal quotation marks omitted) (emphasis added by *Primrose*).

[84] *Primrose*, 382 F.3d at 562.

GSA Schedules.[85]  STI also claims that Fontana failed to speak with any agency or contractor in the market to develop his opinion regarding the value of SMART or any potential interest in licensing it, he failed to complete any market surveys to evaluate what, if any, other comparable software was on the market, and he failed to conduct any independent investigation to determine if any other government office or official would be interested in SMART.[86]  The Court finds that these factors are relevant to whether Fontana's methodology is reliable, not the sufficiency of the facts or data supporting his opinions.

While not a model of clarity, MGMTL seems to argue that STI's criticisms of the bases and sources of Fontana's opinions affect the weight to be assigned to his opinions, rather than their admissibility, and should be left for the jury's consideration.[87]  The Court agrees.  During his deposition, Fontana confirmed that his analysis in this case was based upon his experience, as well as a demonstration of the SMART software application by one of its creators, Jorge Menes, and a discussion with Menes.[88]  MGMTL asserts that Fontana's analysis is also based upon "a review of materials related to SMART and the copycat PASS product" and STI's submissions to the federal government, and that Fontana considered the parameters and requirements for getting a product listed on a government-wide GSA contract, STI's submissions to the GSA office, and its listing of PASS on its GSA schedule.[89]

---

[85] R. Doc. 92-1 at pp. 5-6 (*citing* R. Doc. 92-2 at ¶¶ 20-23 & pp. 17-18; R. Doc. 92-3 at pp. 23-24, 25-26).

[86] R. Doc. 92-1 at pp. 6-7 (*citing* R. Doc. 92-3 at pp. 9, 20, 21-22, 26, & 27).

[87] R. Doc. 103-6 at pp. 21-22 (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)) (internal quotation marks omitted).

[88] R. Doc. 92-3 at p. 10; *See, Id.* at pp. 6 & 8-9.

[89] R. Doc. 103-6 at p. 7.  *See also*, *Id.* at pp. 17-18.

Although perhaps not as concrete as STI would like them to be, the Court finds that the facts and data relied upon by Fontana in reaching his opinions are sufficient for purposes of *Daubert*. The Court remains cognizant that, notwithstanding *Daubert*, "the rejection of expert testimony is the exception and not the rule."[90] To the extent that STI is attacking the factual basis of Fontana's opinions, such arguments address the weight to be assigned to those opinions, rather than their admissibility at trial.[91] As suggested by MGMTL,[92] the Court is fully satisfied that during the trial, counsel for STI is perfectly able to, and will, take the opportunity to cross-examine Fontana regarding the bases for his opinions, thus allowing the jury to determine the weight to give the testimony. The Court therefore rejects STI's contention that Fontana's opinions must be excluded because they are not based upon sufficient facts or data.

### 2. Fontana's Opinions Regarding the Value of, and the Market For, SMART Are Not The Product of Reliable Methodologies.

The Supreme Court in *Daubert* set forth the following non-exclusive list of factors to consider in determining the reliability of expert testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) the

---

[90] *Johnson v. Samsung Electronics America, Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (Duval, J.) (*quoting* Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendments) (internal quotation marks omitted).

[91] *See, Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 393 (5th Cir. 2002) ("Unocal instead attempts to show that the underlying data – provided by Unocal – was itself unreliable. This is an issue that Unocal could – and did – raise in cross-examination.").

[92] R. Doc. 103-6 at p. 22.

general acceptance of the methodology in the scientific community.[93]  "Whether some or all of these factors apply in a particular case depends on the facts, the expert's particular expertise, and the subject of his testimony."[94]  The Fifth Circuit has held that a trial court may consider additional factors in assessing the scientific reliability of expert testimony, including: (1) whether the expert's opinion is based on incomplete or inaccurate data; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; and (3) whether the expert has adequately accounted for alternative explanations.[95]  "The overarching goal 'is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"[96]

STI asserts, generally, that Fontana's opinions are "unmoored from any principles or methodology that can be objectively evaluated for reliability" because Fontana repeatedly testified that his opinions are not based on any objective principles or methodology.[97]  The remainder of the Motion, however, addresses the reliability of Fontana's opinions regarding the value of, and the market for, SMART[98]

---

[93] *In re: Vioxx Products Liability Litigation*, 401 F. Supp. 2d 565, 573 (E.D. La. 2005) (Fallon, J.) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-95, 113 S.Ct. 2768, 125 L.Ed.2d 469 (1993)).

[94] *In re: Vioxx*, 401 F. Supp. 2d at 573 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

[95] *Nola Ventures, LLC v. Upshaw Insurance Agency, Inc.*, Civ. A. No. 12-1026, 2014 WL 12721798, at *6 (E.D. La. Oct. 31, 2014) (Brown, J.) (citing *Black v. Food Lion Inc.*, 171 F.3d 308, 313 (5th Cir. 1999); *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 278-79 (5th Cir. 1998); *In re Vioxx*, 401 F. Supp 2d at 573).

[96] *Nola Ventures, LLC*, Civ. A. No. 12-1026, 2014 WL 12721798 at *6 (quoting *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. at 1176).

[97] R. Doc. 92-1 at pp. 7-8 (*citing* R. Doc. 92-3 at pp. 8-9, 10, 19, & 27).

[98] R. Doc. 92-1 at pp. 7-10.

and, as such, the Court will limit its reliability review to those opinions.  STI claims that Fontana did not conduct any independent market analysis, surveys, or comparative analysis, nor did he use any scientific or mathematical methodologies in determining that SMART is a "valuable tool."[99]  STI also complains that Fontana did not interview anyone other than Menes.[100]  STI contends that courts often exclude expert opinions where the expert, like Fontana, failed to conduct any independent research to determine the reliability of his assumptions.[101]

While Fontana states that his opinions are based upon his prior years of experience assisting and representing clients in the government contracting field, STI asserts that Fontana has no experience purchasing products like SMART or PASS for government agencies.[102]  STI contends that while Fontana may have "familiarity with the use and management of security clearances by Government SMOs," he cites no experience or actual involvement therein and his belief that government agencies would find SMART a valuable tool is speculative.[103]  STI asserts that Fontana's opinions, particularly his opinion regarding the value of and market for SMART, are not reliable because he performed no independent research and did not employ any methods that are subject to empirical testing, peer review or publication, known or potential error rates, or general acceptance.[104]  STI contends that because Fontana did not run any surveys, perform any market studies, complete any comparative

---

[99] *Id.* at p. 8 (*citing* R. Doc. 92-3 at pp. 8-9, 10 & 19).

[100] R. Doc. 92-1 at p. 8 (*citing* R. Doc. 92-3 at pp. 6, 9, & 20).

[101] R. Doc. 92-1 at p. 8 (quoting *JRL Enterp., Inc. v. Procorp Associates, Inc.*, Civ. A. No. 01-2893, 2003 WL 21284020, at *8 (E.D. La. June 3, 2003) (Fallon, J.)) (internal quotation marks omitted).

[102] R. Doc. 92-1 at p. 9 (*citing* R. Doc. 92-2 at ¶¶ 2-3 & pp. 15-16).

[103] R. Doc. 92-1 at p. 9 (*citing* R. Doc. 92-2 at ¶¶ 21-22).

[104] R. Doc. 92-1 at p. 10.

analyses, conduct any interviews, or determine any appropriate price point for SMART, his report does not satisfy *Daubert* and his opinions must be excluded.[105]

In it Opposition brief, MGMTL seems to rely on the Supreme Court's decision in *Kumho Tire Co., Ltd. v. Carmichael* to assert that Fontana's opinions are reliable based upon his experience and qualifications, and urges the Court to focus on Fontana's experience, rather than his methodology.[106]   MGMTL asserts that Fontana's testimony that SMART would likely be sold in substantial or marketable quantities "is supported not only by his government contracting experience but also by his detailed personal knowledge of security management."[107]   MGMTL disputes STI's attempt to downplay Fontana's experience by referring to his "familiarity" with security management, and asserts that Fontana's industrial security and security management process experience "is significant," as set forth in Fontana's Declaration submitted with the Opposition brief.[108]   MGMTL argues that Fontana's opinions are rational deductions based on directly applicable and specific experience, as Fontana has personally been in the position of a potential customer for a security management tool like SMART.[109]   As such, MGMTL claims that Fontana is qualified by knowledge and experience to provide testimony regarding the value of a security management tool like SMART.[110]

---

[105] *Id.*
[106] R. Doc. 103-6 at pp. 8-10 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).
[107] R. Doc. 103-6 at p. 14.
[108] *Id.* at p. 16 (*citing* R. Doc. 103-2 at ¶ 2); R. Doc. 103-6 at p. 10 (citations omitted).
[109] R. Doc. 103-6 at pp. 16-17 (*quoting* R. Doc. 103-3 at ¶ 4) (internal quotation marks omitted).
[110] R. Doc. 103-6 at p. 17.

In response, STI urges the Court to ignore Fontana's new Declaration, which it contends was submitted to make it appear, contrary to his deposition testimony, that Fontana actually considered some financial factors to reach the opinions contained in his expert report.[111]   STI specifically takes issue with Fontana's assertion in his Declaration that he considered "savings in terms of financial outlay and personnel that would be made through [security management software]."[112]   STI claims that Fontana explicitly testified during his deposition that his opinion of SMART's value was "independent of price" and that costs were a factor that he did not consider when he opined that SMART was "valuable."[113]   Further, STI points out that Fontana's expert report does not discuss analyzing savings in terms of financial outlay and personnel in reaching his opinions.[114]   STI argues that these assertions in the Declaration contradict Fontana's prior testimony and seek to add new material that he did not consider and did not previously disclose.   STI contends that the Court should disregard Fontana's Declaration because "supplemental expert reports cannot be used to fix problems in initial reports."[115]   STI also argues that the Court should disregard Fontana's Declaration under the "sham-affidavit rule."[116]   STI maintains that Fontana has provided no methodology for his opinions, relying only on his

---

[111] R. Doc. 120 at p. 2.

[112] *Id.* (*quoting* R. Doc. 103-2 at ¶ 4) (internal quotation marks omitted).

[113] R. Doc. 120 at p. 2 (*quoting* R. Doc. 92-3 at pp. 8-13) (internal quotation marks omitted).

[114] R. Doc. 120 at p. 2 (*citing* R. Doc. 92-2).

[115] R. Doc. 120 at p. 2 (quoting *Simmons v. Johnson*, Civ. A. No. 06-325-A-M2, 2008 WL 474203, at *2 (M.D. La. Feb. 14, 2008) (Noland, M.J.)) (internal quotation marks omitted).

[116] R. Doc. 120 at p. 3 (citing *Hacienda Records, L.P. v. Ramos*, 718 Fed.Appx. 223, 235 (5th Cir. 2018)).

experience and materials provided to him by MGMTL, and that his lack of methodology is fatal to the reliability of his report.[117]

The Court finds that MGMTL has failed to carry its burden of establishing that Fontana's opinions regarding the value of, and the market for, the SMART software application are based upon reliable methods or principles, as required by *Daubert* and Fed. R. Evid. 702.  Regarding his opinion on the value of SMART to government agencies, Fontana testified during his deposition that he has never been retained as a software expert, that he is not a software expert, and that he did not apply any sort of scientific methodology or conduct any market study to arrive at his conclusion that a product like SMART "would likely be a valuable tool available to SMOs or other government personnel in managing security clearances, and that such agencies employing an SMO would likely purchase this tool."[118]  Fontana further testified that he did not contact any of his clients to inquire if they would be interested in licensing SMART or a product like SMART, and that he did not perform an analysis of the price point that he thought SMOs would likely pay to purchase SMART.[119]  Instead, Fontana stated that, "The analysis was really based on my experience."[120]  Fontana then gave conflicting testimony regarding whether he considered the price point of SMART in reaching his conclusion regarding the value of SMART, at first stating that he did not consider price, but later testifying that he compared the price at which MGMTL had attempted to sell a one-year license of SMART to the military ($30,000)

---

[117] R. Doc. 120 at pp. 3-4.
[118] R. Doc. 92-3 at pp. 6-7 & 8-9.  *See*, R. Doc. 92-2 at ¶ 21.
[119] R. Doc. 92-3 at pp. 9-13.
[120] *Id*. at p. 10.

to the $214,094 price of PASS "that is on STI's federal supply schedule - - GSA schedule."[121] Fontana likewise gave conflicting testimony regarding the importance of considering the price point in reaching his conclusion regarding the value of SMART, stating that, "price will always be a factor," and that the price "would certainly be a factor in the government's decision to buy a product or not buy a product," but also stating that he "was looking at the value of SMART to government agencies independent of price, although, as I said, price is always going to be a factor." [122]  Fontana subsequently testified that he reviewed Steve McMurtry's deposition transcript, and that McMurtry's testimony reinforced Fontana's opinion about "how agencies would look upon such a tool" like SMART.[123]

Fontana further testified that the basis for his opinion regarding the value of SMART to government agencies is contained in his expert report.[124]  According to the report, Fontana's opinion is based upon his "knowledge of the Government contracting industry and representation of such contractors both as an in-house general counsel and private law firm attorney in matters related to GSA Schedules," as well has his "experience representing contractors having security clearances at both the facility and personnel levels, my familiarity with the use and management of security clearances by Government SMOs and my general familiarity with JPAS."[125]  Although Fontana has repeatedly stated that his opinion is based upon his

---

[121] *Id.* at pp. 13-14.
[122] *Id.* at pp. 11-12.
[123] *Id.* at pp. 25-26.
[124] *Id.* at p. 9.
[125] *Id.*; *See*, R. Doc. 92-2 at ¶ 21.

experience, these conclusory statements were not supported by an explanation of how, specifically, his experience led him to the conclusion reached, or how that experience was applied to the facts of this case. For example, Fontana testified that his opinion regarding the value of SMART "was really based on my experience," but he did not expound upon that statement or explain what specific past experience he had in evaluating the value of computer software to government agencies and how his opinion in this case compared with his past experience.[126]

Moreover, while the evidence before the Court demonstrates that Fontana has extensive experience in the field of government contracting and related litigation,[127] neither his curriculum vitae nor his expert report mention any experience or knowledge regarding software valuation or purchasing software on behalf of government agencies. To the extent MGMTL asserts that Fontana has sufficient experience to render an opinion on the value of SMART because he has "been in the position of a potential customer for a security management tool like SMART,"[128] the Court is not persuaded that this conclusory statement, without more, shows that Fontana has any experience in software valuation or purchasing software on behalf of government agencies. The Court therefore finds that Fontana's opinion regarding the value of SMART to government agencies lacks a sufficiently reliable basis in the

---

[126] *See, GWTP Investment, L.P. v. SES Americom, Inc.*, Civ. A. No. 3:04-CV-1383-L, 2007 WL7630459, at *14 (N.D. Tex. Aug. 3, 2007) (Ramirez, M.J.) (excluding expert testimony where the expert's "conclusory statements were not supported by an explanation of how, specifically, his experience led him to the conclusion reached or how that experience was applied to the facts.").
[127] R. Doc. 92-2 at pp. 2 & 15.
[128] R. Doc. 103-6 at pp. 16-17 (*quoting* R. Doc. 103-3 at ¶ 4) (internal quotation marks omitted).

knowledge and experience of the relevant discipline and must be excluded.[129]  As explained by the Supreme Court, "Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'"[130]  MGMTL has failed to show that Fontana derived his opinion regarding the value of SMART from such specialized experience.

The Court recognizes that Fontana's experience-based testimony regarding the value of a software application to government agencies may not be subject to traditional scientific, peer-tested theories or techniques.  MGMTL, which bears the burden of proving that the opinions are based on reliable methods, however, has failed to address whether Fontana's methodology "is generally accepted in the relevant" government contracting community, or that "his preparation is of a kind that others in the field would recognize as acceptable."[131]  As STI points out, Fontana could have conducted a market analysis or contacted government agencies to determine their level of interest in the SMART software application.  Other courts, including this one, have excluded expert opinions where the expert failed to conduct any independent research to determine the reliability of his assumptions.[132]  Fontana also gave conflicting testimony regarding whether his opinion concerning the value of SMART is based upon a specific price point or some nebulous comparison between

---

[129] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)); *Looney Ricks Kiss Architects, Inc. v. Bryan*, Civ. A. No. 07-572, 2010 WL 5157874, at *3 (W.D. La. Dec. 7, 2010) (citing *Kumho Tire*, 526 U.S. at 149, 119 S.Ct. at 1175)).

[130] *Kumho Tire*, 526 U.S. at 148-49, 119 S.Ct. at 1174 (*quoting* Hand, *Historical and Practical Considerations Regarding Expert Testimony*, 15 Harv. L. Rev. 40, 54 (1901)).

[131] *Kumho Tire*, 526 U.S. at 151, 119 S.Ct. at 1176.

[132] *JRL Enterp., Inc. v. Procorp Associates, Inc.*, Civ. A. No. 01-2893, 2003 WL 21284020, at *8 (E.D. La. June 3, 2003) (citing authority).

the respective price to license SMART and PASS,[133] leaving the Court wondering whether, and to what extent, that comparison contributed to Fontana's opinion. To the extent MGMTL relies upon the new Declaration from Fontana to bolster the reliability of the methodology relied upon by Fontana in reaching his conclusion, the Court agrees with STI that the Declaration is merely an attempt by MGMTL to circumvent Fontana's deposition testimony that the opinions contained in his expert report are based solely upon his own personal experience.[134] The Court is not persuaded by the new Declaration that Fontana's opinion regarding the value of SMART is based upon sufficiently reliable methodology. Accordingly, the Court finds Fontana's opinion regarding the value of SMART to government agencies is not reliable and must be excluded under *Daubert* and Fed. R. Evid. 702.

The Court reaches the same conclusion regarding Fontana's opinion that SMART "would likely be marketable for purchase in substantial quantities by multiple Government agencies employing SMOs or similar type positions to manage and implement security clearances"[135] and that, "a Government contracting organization managing and implementing such security clearances would also benefit by using the SMART tool, and such a tool would likely be marketable for purchase in substantial quantities by such organizations."[136] During his deposition, Fontana testified that these opinions were not the product of any scientific methodology, but that he believed, based on his experience being in charge of industrial security

---

[133] R. Doc. 92-3 at pp. 9-14.
[134] R. Doc. 120 at p. 2.
[135] R. Doc. 92-2 at p. 4 & ¶ 22.
[136] *Id*. at p. 4 & ¶ 23.

matters for different companies and advising clients regarding security, that SMART would be a valuable tool for SMOs and that agencies "would be interested in that tool."[137]  As with his opinion regarding the value of SMART, Fontana testified that his opinion regarding its marketability was not based on "any market studies in terms of surveying agencies with regard to that issue," and that he did not undertake any analysis as to what a fair price might be for SMART that such an agency would actually pay.[138]  Fontana further testified that he did not assess whether there were any products that were the same or similar to SMART or PASS available on the GSA Schedule, but confirmed that he has knowledge about how a government agency would acquire a service or product.[139]

According to Fontana's expert report, his opinions that SMART "would likely be marketable for purchase in substantial quantities by multiple Government agencies employing SMOs or similar type positions to manage and implement security clearances" and that, "a Government contracting organization managing and implementing such security clearances would also benefit by using the SMART tool, and such a tool would likely be marketable for purchase in substantial quantities by such organizations" are based upon his knowledge of GSA Schedule contracts over 35 years of legal practice, his general familiarity of JPAS, his experience with defense agency purchasing practices, his familiarity with the use and management of security clearances by Government GMOs, and his knowledge of the Government contracting

---

[137] R. Doc. 92-3 at pp. 19-20.
[138] *Id.* at p. 20.
[139] *Id.* at pp. 21-22 & 27.

industry and representation of such contractors as an in-house general counsel and a private practice attorney in matters related to GSA Schedules.[140] The Court, again, finds that Fontana's assertions that his opinions are based upon his experience are conclusory statements without any support or explanation of how, specifically, his experience led him to reach those opinions, or how that experience was applied to the particular facts of this case. For instance, Fontana did not expound upon or explain, either in his report or during his deposition, what specific past experience he had in evaluating the market value of computer software to government agencies and how his opinion in this case compared with his past experience.[141] Moreover, neither his curriculum vitae nor his expert report mention any experience or knowledge regarding computer software marketability to government agencies or purchasing such software on behalf of government agencies. Thus, the Court finds that MGMTL has failed to show that Fontana will "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"[142] with respect to his opinions regarding the market for the SMART software application. The opinions regarding the market for the software must, therefore, be excluded as unreliable under *Daubert* and Fed. R. Evid. 702.

---

[140] R. Doc. 92-2 at ¶¶ 22 & 23.

[141] *See, GWTP Investment, L.P. v. SES Americom, Inc.*, Civ. A. No. 3:04-CV-1383-L, 2007 WL7630459, at *14 (N.D. Tex. Aug. 3, 2007) (excluding expert testimony where the experts "conclusory statements were not supported by an explanation of how, specifically, his experience led him to the conclusion reached or how that experience was applied to the facts.").

[142] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

**C. MGMTL Has Failed to Show That Fontana's Opinion Regarding STI's Competitive Advantage Is Relevant.**

At the outset, the Court notes that STI only challenges the relevance of Fontana's opinion that STI has a competitive advantage in being certified as a small disadvantaged business (a "SDB") in connection with its potential sales of PASS to government agencies and other GSA Schedule users.[143]  STI contends that this testimony is irrelevant because it is undisputed that STI has never sold PASS from its GSA Schedule contract.[144]  MGMTL does not address this argument in its Opposition brief.[145]  Instead, MGMTL asserts, generally, that Fontana's experience and qualifications make his opinions relevant and reliable.[146]  MGMTL claims that Fontana's testimony, "considered together with other evidence and testimony, will help MGMTL prove its case."[147]  MGMTL also asserts that Fontana's testimony would be insightful and useful to the jury, and that, "This helpfulness is apparent from his deposition testimony, in which he explained, among other things . . . competitive advantages of disadvantaged-business status . . ."[148]  MGMTL, however, does not cite to Fontana's deposition testimony to support this assertion, and cites instead to the two paragraphs in Fontana's expert report that address STI's certification as a small disadvantaged business.

---

[143] R. Doc. 92-1 at p. 4 (*citing* R. Doc. 92-2 at p. 4 & ¶¶ 18-19).

[144] R. Doc. 92-1 at p. 4 (*citing* http://www.fpds.gov/ezsearch/search.do?indexName=awardfull&templateName=1.5.1&s=FPDS.GOV&a=47ATCA19D009P ).  Although STI asserts that this web address shows "that there have been no purchases on the contract and that STI has made no revenue from the contract," as of the date of this Order, a search of the foregoing web address yields the following result: "ezSearch - Page Not Found."

[145] *See, generally,* R. Doc. 103-6.

[146] *Id.* at pp. 2, 9, & 11.

[147] *Id.* at p. 2.

[148] *Id.* at pp. 19-20 (*citing* R. Doc. 103-1 at pp. 8-9).

The Court finds that MGMTL has failed to carry its burden of proving that Fontana's testimony regarding STI's purported competitive advantage as a small disadvantaged business is relevant to the disputed facts of this case and that it will aid the jury in understanding and resolving such factual disputes.[149]   The Court surmises that this opinion may have some bearing on the issue of MGMTL's damages, as Fontana asserts in his report that, "A Government contractor with an SDB certification have [sic] access to certain procurements that are 'set aside' specifically for small businesses as well as a small business that are [sic] qualified as an SDB," and that, "STI, as an SDB, would have available to it more opportunities to participate in Government procurements that are set aside than other non-small or non-SDB concerns."[150]   Fontana further opines that STI would have an enhanced competitive position in the sale of its PASS software "because Government agencies are required to set aside a certain percentage of contract awards to targeted groups to include SDBs."[151]   Neither Fontana nor MGMTL, however, tie these opinions to any facts in dispute in this case.   Nor does MGMTL address STI's assertion that Fontana's testimony on this issue is irrelevant because "it is undisputed that STI has never sold PASS off its GSA Schedule contract."[152]   As such, the Court finds that MGMTL has failed to carry its burden of proving, by a preponderance of the evidence, that Fontana's testimony regarding STI's competitive advantage from its certification

---

[149] *Looney Ricks Kiss Architects, Inc. v. Bryan*, Civ. A. No. 07-572, 2010 WL 5157874, at *1 (W.D. La. Dec. 7, 2010) (Hicks, Jr., J.) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591, 113 S.Ct. 2768, 2796, 125 L.Ed.2d 469 (1993)).

[150] R. Doc. 92-2 at p. 9, ¶ 18.

[151] *Id*. at ¶ 19.

[152] R. Doc. 92-1 at p. 4 (citation omitted).

as a SDB should be excluded under the relevancy prong of *Daubert* and Fed. R. Evid. 702.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion *in Limine* to Preclude Expert Testimony of James C. Fontana [153] is **GRANTED in part** and **DENIED in part.**  The Motion is **GRANTED** to the extent that STI seeks to exclude Fontana's expert testimony regarding the value of, and the market for, the SMART software application to government agencies, as well as his opinion regarding STI's competitive advantage as a small disadvantaged business, as set forth in Fontana's January 28, 2021 expert report.[154]  The Motion is otherwise **DENIED.**

New Orleans, Louisiana, February 17, 2022.

**WENDY B. VITTER**
**United States District Judge**

---

[153] R. Doc. 92.
[154] R. Doc. 92-2 at p. 4 & ¶¶ 18-19 & 21-23.