UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MGMTL, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2138-WBV-MBN** |
| **STRATEGIC TECHNOLOGY** | **SECTION: D (5)** |

### ORDER AND REASONS

Before the Court is a Motion in Limine to Exclude Evidence of Actual Sales or Profits After the Date of Infringement and Misappropriation Began, filed by MGMTL, LLC ("MGMTL").[1] Strategic Technology Institute, Inc. ("STI") opposes the Motion,[2] and MGMTL has filed a Reply.[3]

After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED.**

I.   **FACTUAL AND PROCEDURAL BACKGROUND**[4]

This is copyright infringement case concerning MGMTL's Security Management and Reporting Tool ("SMART"), a "computer software application designed to streamline and efficiently manage the complex tasks and requirements

---

[1] R. Doc. 125. MGMTL moved for leave to file under seal its Memorandum in Support and several exhibits thereto because "STI has produced information related to the computer software programs at issue that it has designated as confidential pursuant to the protective order." R. Doc. 126. The Court granted that request. R. Doc. 131.
[2] R. Doc. 140.
[3] R. Doc. 157.
[4] In the interest of judicial economy, and because the Court set forth the factual and procedural background of this matter in great detail in its February 16, 2022 Order and Reasons regarding Defendant's Motion *In Limine* to Preclude Opinion Testimony of Jorge Menes (R. Doc. 173), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.

1

of United States Department of Defense security managers, government contracting companies, and other industries for which the management of personnel and their security clearance is a priority."[5]  In the instant Motion, MGMTL alleges that STI infringed and misappropriated its SMART software by making a copycat version of it, which STI named "PASS," and listing PASS for sale at the price of $214,094 per one-year license.[6]  MGMTL claims that STI seeks to introduce evidence and elicit testimony at trial that STI never made any sales of the PASS software and, as such, MGMTL suffered no damages.[7]  MGMTL argues that evidence of STI's actual sales or profits from the PASS software, or the lack thereof, after the date of infringement, which is April 2016, is irrelevant to the calculation of its damages.  MGMTL contends that its damages will be based on a reasonable royalty rate for SMART, as determined by the value of the intellectual property at the time the alleged infringement or misappropriation began.[8]  MGMTL also asserts that evidence of STI's actual sales or profits after the date of infringement, which is April 2016 in this case, is likely to confuse the issue before the jury and is substantially more prejudicial than probative.[9]

STI argues that evidence regarding its actual profits or sales of PASS after the alleged infringement began is relevant to its defense of MGMTL's two breach of contract claims, an essential element of which is proof of MGMTL's damages.[10]  STI

---

[5] R. Doc. 22 at ¶¶ 2 & 8.
[6] R. Doc. 125 at p. 1; R. Doc. 125-15 at p. 1.
[7] R. Doc. 125-15 at p. 1.
[8] R. Doc. 125 at p. 1; R. Doc. 125-15 at pp. 1-2 & 6-8.
[9] R. Doc. 125 at p. 1; R. Doc. 125-15 at pp. 2 & 8-11.
[10] R. Doc. 140 at pp. 1 & 7-10.

likewise asserts that the evidence is relevant to its "consent defense," which would limit MGMTL to a breach of contract claim if STI proves that MGMTL authorized STI to use SMART under the Distributor Agreement entered into between the parties.[11] STI also asserts that evidence of its lack of sales of PASS is relevant because MGMTL seeks a disgorgement of profits and MGMTL has alleged that STI sold PASS and that SMART has value.[12] STI contends that it should be allowed to provide evidence to support that there are no profits to disgorge.[13] To the extent MGMTL seeks to introduce expert testimony and evidence that STI's listed price of PASS on its GSA Schedule Contract "fair and reasonable,"[14] STI argues that it should be permitted to rebut that testimony with evidence that there have been no sales of PASS at any price, and that the listed price is not indicative of its value.[15]

STI further asserts that evidence of its actual sales or profits after the alleged infringement began is relevant for rebuttal purposes. Specifically, since MGMTL seeks to introduce evidence that STI retained a consultant to market PASS, STI claims that it must be allowed to introduce evidence that no one bought it.[16] STI asserts that the evidence is also relevant to rebut MGMTL's reasonable royalty calculation, made by Jorge Menes based upon certain assumptions he made regarding the price of a one-year license of SMART and the number of licenses that STI could have sold, and to rebut MGMTL's expert testimony from James Fontana that SMART

---

[11] *Id.* at pp. 10-11.
[12] *Id.* at pp. 11-14.
[13] *Id.* at p. 12.
[14] *Id.* (*citing* R. Doc. 92-2 at ¶¶ 13-17; R. Doc. 90 at pp. 20-22).
[15] R. Doc. 140 at p. 12.
[16] *Id.* at p. 13 (*citing* R. Doc. 90 at pp. 20-24; R. Doc. 99-9); R. Doc. 140 at p. 16.

is a valuable tool.[17] Finally, STI argues that evidence of its lack of sales after the date the alleged infringement began is relevant because using the word "royalty," which is commonly calculated with actual sales, will suggest to the jury that STI sold PASS.[18] Contrary to MGMTL's position, STI asserts that such evidence is necessary to avoid jury confusion on this issue.[19]

In response, MGMTL maintains that the evidence of STI's actual sales or profits from the PASS software after the alleged infringement is not relevant because it will not pursue a disgorgement of profits theory, and will instead seek a reasonable royalty rate for the misuse of its intellectual property.[20] MGMTL then asserts that STI's argument in in opposition to this motioncontradicts the relief sought by STI in its motions in limine.[21] MGMTL contends that if STI's motions are granted, STI's arguments regarding the relevance of this evidence will be rendered moot.[22] MGMTL further asserts that evidence of STI's actual sales or profits is not relevant to STI's purported "consent defense" because MGMTL's damages would not be limited to STI's actual sales or profits.[23] Finally, MGMTL argues that the word "royalty" will not confuse the jury and that STI has filed to show the likelihood of any such confusion.[24]

---

[17] R. Doc. 140 at pp. 14-16 (citations omitted).
[18] *Id.* at p. 17.
[19] *Id.* at pp. 14 & 17.
[20] R. Doc. 157 at pp. 2 & 7-9.
[21] *Id.* at pp. 2 & 3, apparently referencing STI's Motion in Limine, R. Doc. 129. The Court recognizes what MGMTL contends are contradictory positions made by STI in its Motion in Limine, R. Doc. 129, and its opposition to this motion, but also finds that the arguments are narrower and more nuanced in the briefs and can be reconciled.
[22] *Id.* at pp. 2 & 4.
[23] *Id.* at pp. 5-7.
[24] R. Doc. 157 at pp. 2 & 9.

## II. LEGAL STANDARD

According to the Fifth Circuit, the purpose of a motion in limine is to prohibit opposing counsel "from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."[25] Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, or if the fact it seeks to prove is of consequence in determining the action.[26] While all relevant evidence is admissible, the Court may exclude relevant evidence if its probative value is substantially outweighed by danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[27] However, the Fifth Circuit has held that, "The exclusion of evidence under Rule 403 should occur only sparingly."[28] District courts are afforded wide discretion in determining the relevance and admissibility of evidence under Fed. R. Evid. 401 and 402.[29] A district court's ruling on evidentiary issues is reviewed by an appellate court for an abuse of discretion.[30] Thus, when the district court conducts "a carefully

---

[25] *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quotation and internal quotation marks omitted).
[26] Fed. R. Evid. 401.
[27] Fed. R. Evid. 403.
[28] *United States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir. 1993); *See United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (same).
[29] *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384, 128 S.Ct. 1140, 1144-45, 170 L.Ed.2d 1 (2008).
[30] *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 356 (5th Cir. 1995).

detailed analysis of the evidentiary issues and the court's own ruling, appellate courts are chary about finding an abuse of discretion."[31]

### III. ANALYSIS

The Court agrees with STI that evidence regarding its actual sales or profits from the PASS software after the date of alleged infringement, which MGMTL asserts is April 2016, is relevant to the claims and defenses of the parties in this case and, therefore, admissible. The Court recognizes that the parties seem to agree that the reasonable royalty rate of an unrestricted license to use MGMTL's SMART software is measured by its value at the time the alleged infringement began.[32] While MGMTL argues that evidence of STI's actual sales or profits from the PASS software after the infringement began is not relevant to its copyright claim and, specifically, its request for the reasonable royalty rate for STI's use of the SMART software, MGMTL ignores the fact that it has asserted other claims against STI, including two claims for breach of contract.[33] As STI points out, MGMTL has failed to cite any cases where evidence of actual sales were excluded in a breach of contract case, relying instead on a case involving only a claim for misappropriation of trade secrets.[34] Further, the court in that case specified in a footnote that, "This opinion only addresses the measure of damages for misappropriation of trade secrets."[35] As such, that case is distinguishable from facts before this Court.

---

[31] *Id.*
[32] R. Doc. 125 at p. 1; R. Doc. 125-15 at pp. 1-2 & 6-8; R. Doc. 140 at p. 15.
[33] R. Doc. 22 at ¶¶ 50-55.
[34] R. Doc. 140 at pp. 9-10; *See*, R. Doc. 125-15 at p. 9 (citing *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 185, 190 (S.D.N.Y. 2002)).
[35] *LinkCo,* 232 F. Supp. 2d at 185, n.5.

6

The Court further finds that MGMTL has failed to address the fact that for one of its breach of contract claims, it specifically seeks "all damages, foreseeable and unforeseeable, including, but not limited to, any lost deals or business opportunities of which MGMTL may have been deprived, in an amount to be proven at trial."[36] The Court finds that evidence of STI's actual sales or profits from its PASS software after the date of its alleged infringement are directly relevant to whether MGMTL lost out on any opportunities or sales. The Court likewise finds that evidence regarding STI's actual sales or profits from the PASS software after the date of alleged infringement is relevant to STI's defense of MGMTL's request in its Amended Complaint, "For an order requiring STI to account for and disgorge to MGMTL all gains, profits, and advantages derived by its copyright infringement pursuant to 17 U.S.C. § 504(b)."[37] While MGMTL claims in its Reply brief that it "will not pursue a disgorgement of profits theory"[38] and that it "now focuses on a reasonable royalty as the measure of damages,"[39] MGMTL's request for the disgorgement of STI's profits remains included in its Amended Complaint. To the extent that MGMTL introduces evidence in support of its disgorgement of profits theory, introduction of rebuttal evidence regarding STI's actual sales of profits, or lack of sales or profits is relevant. As such, evidence of STI's actual sales or profits from the PASS software after the date that the alleged infringement began are relevant to this request, and to STI's defense thereto.

---

[36] R. Doc. 22 at ¶ 55.
[37] *Id.* at p. 16.
[38] R. Doc. 157 at p. 2.
[39] *Id.* at p. 7 (*citing* R. Doc. 99 at pp. 10-11).

7

Having determined that the evidence is relevant, the Court turns to MGMTL's argument that evidence of STI's actual sales or profits from its PASS software after the date the infringement began should be excluded under Fed. R. Evid. 403 because any probative value is substantially outweighed by the risk of prejudice and jury confusion.[40] The Court disagrees. Although MGMTL worries that STI will use evidence of the lack of sales or profits from its PASS software to suggest that MGMTL's SMART software has no value, the Court does not find that the probative value of the evidence, as set forth above, is "substantially outweighed" by such risk of prejudice so as to require its exclusion under Rule 403. As aptly pointed out in MGMTL's Motion, there could be several reasons why STI was unable to sell PASS, which remains a disputed fact.[41] Counsel for MGMTL will have the opportunity to address these issues at trial. The Court similarly finds that the probative value of evidence regarding STI's actual sales or profits from its PASS software after the date of infringement is not substantially outweighed by the risk of confusing the jury in its determination of a reasonable royalty rate for the SMART software.[42] Moreover, the Court finds that any potential jury confusion can be cured with a limiting jury instruction. The Court therefore concludes that evidence and testimony regarding STI's actual sales or profits from its PASS software after April 2016, the date the alleged infringement began, is admissible at trial.

---

[40] R. Doc. 125-15 at pp. 8-11.
[41] *Id.* at pp. 9-11.
[42] R. Doc. 125-15 at pp. 8-9 & 11.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that MGMTL's Motion in Limine to Exclude Evidence of Actual Sales or Profits After the Date of Infringement and Misappropriation Began[43] is **DENIED.**

New Orleans, Louisiana, February 28, 2022.

*Wendy B Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[43] R. Doc. 125.