# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**MGMTL, LLC**                                 **CIVIL ACTION**

**VERSUS**                                        **NO. 20-2138-WBV-MBN**

**STRATEGIC TECHNOLOGY**              **SECTION: D (5)**

## <u>ORDER AND REASONS</u>

Before the Court is Defendant's Motion in Limine to Preclude Evidence, Testimony, or References Related to Other Alleged Wrongdoing, filed by Strategic Technology Institute, Inc. ("STI").[1]  MGMTL, LLC ("MGMTL") opposes the Motion,[2] and STI has filed a Reply.[3]

After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED in part, and DENIED in part.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND[4]

This is copyright infringement case concerning MGMTL's Security Management and Reporting Tool ("SMART"), a "computer software application designed to streamline and efficiently manage the complex tasks and requirements

---

[1] R. Doc. 128.

[2] R. Doc. 139.  On June 14, 2021, MGMTL moved for leave to file under seal its Memorandum in Support and several exhibits thereto because "STI has produced information related to the computer software programs at issue that it has designated as confidential pursuant to the protective order."  R. Doc. 141.  The Court granted the Motion on June 15, 2021.  R. Doc. 144.

[3] R. Doc. 156.

[4] In the interest of judicial economy, and because the Court set forth the factual and procedural background of this matter in great detail in its February 16, 2022 Order and Reasons regarding Defendant's Motion *In Limine* to Preclude Opinion Testimony of Jorge Menes (R. Doc. 173), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.

of United States Department of Defense security managers, government contracting companies, and other industries for which the management of personnel and their security clearance is a priority."[5]  In the instant Motion, STI asserts that this case concerns breach of contract, copyright infringement, and trade secret misappropriation claims, all in connection with STI's creation of a web-based software called PASS. [6]  Although MGMTL alleges that STI created PASS by copying MGMTL's SMART software, STI contends that while the software programs perform similar functions, PASS is not a copy of the SMART software.[7]  STI asserts that at some point in this litigation, MGMTL realized several critical facts, including that STI never sold PASS, rendering MGMTL's damages minimal, and that MGMTL's software expert opined that STI did not copy the SMART source code.[8]  STI alleges that, instead of dismissing this case or attempting to negotiate a reasonable settlement, MGMTL "attempted to pressure STI through allegations that STI had engaged in unlawful conduct unrelated to the core issues in this lawsuit."[9]

On June 7, 2021, STI filed the instant Motion, seeking to preclude MGMTL from introducing evidence and testimony at trial concerning the following five allegations of unlawful conduct: (1) the ongoing criminal investigation conducted by the Naval Criminal Investigative Service ("NCIS") involving STI, including but not limited to the existence of the investigation and any testimony or evidence related to

---

[5] R. Doc. 22 at ¶¶ 2 & 8.
[6] R. Doc. 128-1 at p. 1.
[7] *Id.*
[8] *Id.*
[9] *Id.*

communications with NCIS or the Government in connection with the investigation; (2) that STI has improperly employed family members of Marine Forces Reserve officials, including but not limited to MGMTL's Exhibit Nos. 241 and 294, the responses to Interrogatory No. 23 in MGMTL's Exhibit Nos. 304 and 306, and any testimony discussing the issue; (3) that STI misstated its sales information in submissions to the United States Government General Services Administration ("GSA"), including but not limited to MGMTL's Exhibit Nos. 247 and 250 and any testimony, including from James Fontana, or argument on this issue; (4) that any STI official, particularly STI's CEO, had security clearance issues; and (5) that loading software developed in a foreign country (such as India) onto a military computer is illegal, and implying that STI's demonstration of PASS for the Marine Forces Reserve office in New Orleans, Louisiana (sometimes referred to as "MARFORRES") was illegal.[10]   STI argues that the foregoing evidence is not relevant and that any probative value of the evidence is substantially outweighed by the risk of prejudice and jury confusion if it is introduced at trial.

MGMTL argues that all of the foregoing evidence is relevant, highly probative, and admissible in this case.[11]  MGMTL further asserts that any risk of prejudice from the introduction of this evidence is outweighed by the significant probative value of the evidence.  As such, MGMTL argues that STI's Motion should be denied.  In its Reply brief, MGMTL maintains that the evidence at issue is not relevant to the claims or defenses in this case, and that MGMTL failed to address the substantial prejudice

---

[10] R. Doc. 128 at p. 1.
[11] R. Doc. 139-16 at pp. 6-24.

that STI will suffer if MGMTL is permitted to insinuate that STI has engaged in criminal conduct.[12]  STI also maintains that any probative value of the evidence is substantially outweighed by its risk of prejudice to STI.

## II.    LEGAL STANDARD

According to the Fifth Circuit, the purpose of a motion in limine is to prohibit opposing counsel "from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."[13]  Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, or if the fact it seeks to prove is of consequence in determining the action.[14]  While all relevant evidence is admissible, the Court may exclude relevant evidence if its probative value is substantially outweighed by danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." [15] However, the Fifth Circuit has held that, "The exclusion of evidence under Rule 403 should occur only sparingly." [16]  District courts are afforded wide discretion in determining the relevance and admissibility of evidence under Fed. R. Evid. 401 and

---

[12] R. Doc. 156 at pp. 1-2.
[13] *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quotation and internal quotation marks omitted).
[14] Fed. R. Evid. 401.
[15] Fed. R. Evid. 403.
[16] *United States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir. 1993); *See United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (same).

402.[17]  A district court's ruling on evidentiary issues is reviewed by an appellate court for an abuse of discretion.[18]  Thus, when the district court conducts "a carefully detailed analysis of the evidentiary issues and the court's own ruling, appellate courts are chary about finding an abuse of discretion."[19]

## III.   ANALYSIS

### A. Evidence and Testimony Regarding the Ongoing NCIS Criminal Investigation.

STI asserts that Jorge Menes, the co-creator of SMART, testified during his deposition regarding conversations between himself and NCIS, and that MGMTL's counsel asked questions about the NCIS criminal investigation during the deposition of STI's employees.[20]  STI argues that MGMTL cannot demonstrate that the criminal investigation is relevant because there is no testimony from the government on the issue, Menes testified that NCIS could not tell him whether its investigation is about software, and Menes claims to "know very little to nothing about any kind of investigation into STI on the federal side."[21]  STI claims that the existence of this investigation does not assist MGMTL in proving any of its claims, as there is no evidence of any final conclusions or findings from the investigation.[22]  STI contends that any probative value in this evidence is substantially outweighed by the danger

---

[17] *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384, 128 S.Ct. 1140, 1144-45, 170 L.Ed.2d 1 (2008).

[18] *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 356 (5th Cir. 1995).

[19] *Id*.

[20] R. Doc. 128-1 at p. 4 (*citing* R. Doc. 128-2 at pp. 3, 10-12, 13-18, & 19-20; R. Doc. 128-3 at p. 5; R. Doc. 128-7 at pp. 71-72; R. Doc. 128-8 at p. 3).

[21] R. Doc. 128-1 at pp. 4-5 (*quoting* R. Doc. 128-2 at pp. 11-12) (internal quotation marks omitted).

[22] R. Doc. 128-1 at p. 5 (citing *Park West Galleries, Inc. v. Global Fine Art Registry, LLC*, Civ. A. Nos. 2:08-cv-12247, 2:08-cv-12274, 2010 WL 848689, at *1 (E.D. Mich. Mar. 8, 2010) (Zatkoff, J.)).

of unfair prejudice, confusing the issues, and misleading the jury, since the jury is likely to attach great significance to the mere existence of the investigation and believe that it supports MGMTL's claims.[23]   STI further asserts that the alleged statement by an NCIS agent to Menes that STI "f*cked" MGMTL, and any other alleged communication with Menes, is inadmissible hearsay under Fed. R. Evid. 801(c).[24]   STI claims that it is not aware of any reason MGMTL could offer this statement other than for its truth, but if it does, its minimal probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury, for the same reasons set forth above and because the jury is likely to consider the statement for its truth.[25]

MGMTL asserts that evidence regarding the NCIS criminal investigation is relevant to STI's statute of limitations defense, asserted in STI's Motion for Summary Judgment, and to MGMTL's defense thereto.[26]   MGMTL claims that NCIS's investigation is what confirmed for MGMTL that STI had stolen its software and prompted MGMTL to file this suit.[27]   MGMTL points out that STI previously argued that all communications between MGMTL and NCIS were relevant and that Magistrate Judge Michael B. North agreed with STI, such that, "The relevance of communications with NCIS has already been decided."[28]   MGMTL further asserts that communications with NCIS explains what MGMTL learned and when it learned

---

[23] R. Doc. 128-1 at p. 5.
[24] *Id.*
[25] *Id.*
[26] R. Doc. 139-16 at pp. 6-7.
[27] *Id.* at p. 6.
[28] *Id.* (*citing* R. Docs. 73 & 82).

about STI's conduct, which contributed to the triggering of the accrual of MGMTL's claims against STI and prompted the filing of this suit.[29]  Finally, MGMTL contends that the NCIS investigation is relevant because it explains why the computer containing PASS could not be located at MARFORRES during discovery, as NCIS had seized it.[30]  MGMTL asserts this fact is relevant because STI will try to argue to the jury, as it has throughout the litigation, that MARFORRES ran a search for PASS and could not locate PASS or a computer containing PASS.[31]

In response, STI disputes MGMTL's assertion that evidence regarding the NCIS investigation is relevant to the accrual of its claims because MGMTL alleged in the Amended Complaint that it first learned about the alleged infringement from a colleague, later identified as John Zimmer, in November 2017, and that MGMTL was unaware of STI's infringing conduct until "at the very earliest November 2017."[32] STI reiterates that Menes stated during his deposition that NCIS told him "little to nothing" about its investigation, and that MGMTL did not provide any statements from the government, during discovery or in its Opposition brief, supporting its position that what MGMTL learned through the conversations and when even pertained to PASS, "much less details of infringement."[33]  As such, STI argues that MGMTL's argument for relevance is a *post hac* justification unsupported by the evidence.

---

[29] R. Doc. 139-16 at pp. 6-7.

[30] *Id*. at p. 7.

[31] *Id*. (*citing* R. Doc. 49 at ¶¶ 10-11).

[32] R. Doc. 156 at p. 2 (*citing* R. Doc. 22 at ¶ 35; *quoting* R. Doc. 101-22 at p. 12) (internal quotation marks omitted).

[33] R. Doc. 156 at p. 2 (*citing* R. Doc. 128-2 at pp. 11-12) (internal quotation marks omitted).

To the extent MGMTL asserts that Judge North has already determined that evidence regarding the NCIS investigation is relevant, it is clear that MGMTL misunderstands the broader nature of relevance during discovery as opposed to trial.[34]  As this Court previously explained, "The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage."[35]  Thus, "what might be relevant *as to discovery* leading up to trial is *not* the standard for determining *relevancy and admissibility* at trial."[36] Importantly, Federal Rule of Civil Procedure 26 specifies that, "Information within the scope of discovery need not be admissible in evidence to be discoverable."[37]  While Judge North concluded that information and documents regarding, "All communications between the Government and MGMTL, Menes, Himel, or MGMTL's attorneys regarding STI," was relevant for purposes of discovery,[38] the Magistrate Judge made no ruling on whether the evidence is relevant and admissible at trial. The Court therefore rejects MGMTL's argument that the relevance of its communications with NCIS has already been decided in this case.

While MGMTL asserts that evidence regarding the NCIS investigation is relevant because the investigation prompted MGMTL to file this suit,[39] that position

---

[34] *Tomlinson v. Allstate Indemn. Co.,* Civ. A. No. 06-617, 2007 WL 430642, at * 2 (E.D. La. Feb. 5, 2007) (Roby, M.J.).

[35] *Banks v. St. James Parish School Board*, Civ. A. No. 65-16173, 2021 WL 2070132, at *3 (E.D. La. May 14, 2021) (Currault, M.J.) (citing *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011)).

[36] *Brown v. Wal-Mart Louisiana, LLC,* Civ. A. No. 10-1402, 2012 WL 31098785, at *8 (W.D. La. July 2, 2012) (Doherty, J.) (emphasis in original).

[37] Fed. R. Civ. P. 26(b)(1).

[38] *See,* R. Doc. 73 at p. 1; R. Doc. 82.

[39] R. Doc. 139-16 at pp. 6 & 9.

is contradictory to the allegations in its Amended Complaint.  In the Amended Complaint, MGMTL alleges that it first learned that STI may have copied its SMART software in November 2017, when Menes was informed by a colleague that he believed he saw STI install "a repackaged or altered version of MGMTL's SMART software" at the Marine Forces Reserve office in New Orleans.[40]  MGMTL then alleges that Menes "independently heard about STI's altering, repackaging, and renaming of MGMTL's software when he received an anonymous email dated September 6, 2018, from an individual identified as an 'STI employee.'"[41]  The Amended Complaint contains no reference to the NCIS investigation.  Thus, the Court is not persuaded that the NCIS communications are what prompted MGMTL to file this suit.  The arguments raised in opposition to STI's Motion for Summary Judgment likewise belie MGMTL's assertion that the NCIS communications triggered this suit.[42]  In that pleading, MGMTL argued that its copyright and trade secret claims are not time-barred because it first learned of STI's alleged infringement in November 2017 and "MGMTL timely sued in July 2020, well within three years of having learned of STI's misconduct with respect to distribution to MARFORRES."[43]  Based on this evidence, the Court finds that the NCIS investigation has minimal relevance to MGMTL's defense regarding the timeliness of its claims.

---

[40] R. Doc. 22 at ¶ 35.
[41] *Id*. at ¶ 36.
[42] *See*, R. Doc. 101-22.
[43] R. Doc. 101-22 at p. 12 (*citing* R. Doc. 1 at ¶¶ 30 & 37).

The Court further finds that MGMTL has failed to show how the NCIS communications "explain what MGMTL learned and when about STI's conduct."[44] MGMTL has not provided the Court with those details, despite asserting that the communications "are critical to MGMTL's effort to refute the allegations that its claims are untimely."[45]  In fact, the evidence before the Court indicates just the opposite – that Menes's communications with NCIS regarding the investigation did *not* provide Menes or MGMTL with any information regarding STI's conduct.  During his deposition, Menes testified as follows:

> A  I mean NCIS never told me anything.
>
> . . . .
>
> A  [I]t was never offered to me why they were asking me these questions. I was never brought in on any kind of -- I have -- I still to this day don't know what they want with me.  I know it's not about software or recouping any kind of losses but, again, like, he can't tell me whether it's about software, not about software.  I know very little to nothing about any kind of investigation into STi on the federal side.  I just know that Brent Schroeder from NCIS asked me a bunch of questions.  And as an intelligence analyst in the Marine Corps, I'm able to sort of understand when someone is trying to solicit information from me.[46]

Although STI specifically referenced this testimony in its Motion,[47] MGMTL did not address it in its Opposition brief.[48]  While MGMTL claims that NCIS's statement to Menes that STI had "f*cked" MGMTL is relevant to rebut STI's statute of limitations defense and will be offered to show only that the statement was made,[49] the Court

---

[44] R. Doc. 139-16 at pp. 6-7.
[45] *Id*. at p. 7.
[46] R. Doc. 128-2 at p. 11.
[47] R. Doc. 128-1 at pp. 4-5.
[48] *See*, R. Doc. 139-16 at pp. 6-13.
[49] R. Doc. 139-16 at pp. 11-12.

finds this argument disingenuous.  The Court agrees with STI that the only purpose of introducing this statement is to show the truth of the matter asserted and, as such, it constitutes inadmissible hearsay under Fed. R. Evid. 801(c).

To the extent MGMTL asserts that evidence of the NCIS investigation is relevant to show why PASS could not be located on a computer at MARFORRES during discovery – because NCIS had seized it – the Court agrees that the evidence is relevant for that narrow purpose.  As previously discussed, MGMTL has alleged in the Amended Complaint that it first learned of STI's alleged infringement of its SMART software when a former colleague advised Menes in November 2017 that he saw STI install security management software at MARFORRES, which he believed was a repackaged version of SMART.[50]  MGMTL has also alleged that Menes received an anonymous email in September 2018 from an "STI employee" who advised that STI had repackaged SMART as PASS and had sold it to the Marine Forces Reserve, and that PASS had been installed "on 5 standalone machines at the security office at MFR [Marine Forces Reserve] . . . ."[51]  Additionally, MGMTL has provided the Court with a portion of the deposition transcript of Donald Washington who seemed to testify that PASS was loaded onto an STI computer in the "security office" of the Marine Forces Reserve, but that PASS could not be located on any of their computers because the computer had been seized by NCIS.[52]  Thus, if STI argues at trial that the Marine Forces Reserve office in New Orleans ran a search for PASS and could

---

[50] R. Doc. 22 at ¶ 35.
[51] *Id*. at ¶ 36.
[52] R. Doc. 139-7 at pp. 2-5.

not locate PASS or a computer containing PASS, as it has argued in at least one prior pleading,[53] evidence of the NCIS's seizure of the computer allegedly containing PASS will be relevant to MGMTL's defense to that argument.

The Court turns to whether the probative value of evidence regarding the NCIS investigation, including NCIS communications with Menes and the NCIS's seizure of a computer containing PASS, is substantially outweighed by the potential for prejudice.[54] Admitting evidence regarding the NCIS investigation of these claims and the NCIS investigator's communications with Menes will undoubtedly confuse the issues and mislead the jury, as the jury is likely to attach significance to the mere existence of a criminal investigation even though Menes testified that he knows "very little to nothing about the investigation into STI," and, more importantly, that he, "know[s] it's not about software."[55] The Court agrees with STI that the case cited by MGMTL, *Price v. PCS Nitrogen Fertilizer,* is distinguishable from the facts of this case, as that case involved a claim for retaliation and the criminal investigation was relevant to establishing an element of that claim.[56] Unlike in *Price*, none of MGMTL's claims, which include copyright infringement, breach of contract, and misappropriation of trade secrets, [57] require proof of a criminal investigation. Further, the court in *Price* found that there was little risk of jury confusion because, "The proceedings concern two very distinct issues – the first concerns criminal

---

[53] *See*, R. Doc. 49 at ¶¶ 10-11.  *See also,* R. Doc. 166 at pp. 15-16, 28, & 29.
[54] *Harrell v. DCS Equipment Leasing Corp.*, 951 F.2d 1453 (5th  Cir. 1992).
[55] R. Doc. 128-2 at pp. 11-12.
[56] R. Doc. 139-16 at p. 8, n.26 (citing *Price*, Civ. A. No. 03-153-RET-DLD, 2010 WL 11538362, at *2 (M.D. La. Feb. 17, 2010) (Tyson, C.J.); *See*, R. Doc. 156 at p. 3.
[57] R. Doc. 22 at ¶¶ 41-61.

violations of environmental regulations, and the second concerns alleged employment retaliation. The jury will be instructed in such a manner that there will be little to no risk of unfair prejudice, confusion of the issues, or misleading the jury."[58] The same cannot be said of the NCIS investigation in this matter, as MGMTL claims that the investigation arose as a direct result of Menes forwarding the 2018 whistleblower email to the Inspector General of the United States Marine Corps.[59] Thus, the NCIS investigation in this matter is not a distinct issue. The Court further finds that evidence regarding the NCIS investigation should be excluded because there is a real risk that it will create a trial within a trial and confuse the issues or mislead the jury that any findings of the investigation are relevant, or even necessary, to address these claims.[60] Finally, the Court finds that evidence regarding the NCIS investigation, without context or clarification from any witness, may create unfair prejudice to STI.

The Court finds differently in the event that STI "opens the door" on the failure to find PASS on the MARFORRES computers. While the Court has determined that introduction of the relevant evidence of the NCIS investigation and testimony regarding what an NCIS investigator may have communicated to Menes may lead to jury confusion and misleading the jury, and thus should be excluded, the Court finds that *precluding* evidence that the computers were seized as part of an investigation in an effort to explain the failure to find PASS on the computers, should that issue be raised, is also misleading and confusing. In one case cited by STI in support of its

---

[58] *Price*, Civ. A. No. 03-153-RET-DLD, 2010 WL 11538362 at *2.
[59] R. Doc. 139-16 at p. 3 (*citing* R. Doc. 73-4).
[60] *In re Oil Spill by Oil Rig DEEPWATER HORIZON in Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2012 WL 413860, at *3 (E.D. La. Feb. 9, 2012) (Barbier, J.) (citation omitted)

motion, the court excluded evidence that one of the named defendants was the subject of an ongoing criminal investigation.[61] Such is not the case here. In the other case cited by STI, the court excluded evidence of criminal investigations based on finding that that evidence did not assist the defendants in their truth defense.[62] MGMTL asserts that allowing STI to argue that PASS was not found on any MARFORRES computer gives "an incomplete picture."[63] The Court agrees. That said, the Court also stresses and agrees with MGMTL's acknowledgement that this evidence would only come in if STI "opens the door."[64] In its reply brief, STI does not address MGMTL's acknowledgement that this evidence would come in only if STI opens the door.  The Court finds that, should STI open the door and claim that PASS could not be located on any MARFORRES computer, MGMTL will be allowed to introduce evidence of the NCIS seizure of the computers explaining why PASS could not be found on the computers.[65] Such a holding recognizes that the basis of any introduction of evidence should be to aid in the search of the truth. Allowing STI to open the door and introduce evidence that PASS was not located on the MARFORRES computers, without allowing introduction of evidence explaining why, would be an affront to this basic premise.

---

[61] *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, No. 00C5658, ooC7086, 2003 WL 2005233 (N.D. Ill. Apr. 30, 2003).
[62] *Park West Galleries, Inc. v. Global Fine Art Registry, LLC*, Civ. A. Nos. 2:08-cv-12247, 2:08-cv-12274, 2010 WL 848689, at *1 (E.D. Mich. Mar. 8, 2010) (Zatkoff, J.).
[63] R. Doc. 139 at p. 7.
[64] R. Doc. 139 at p. 10.
[65] If and when appropriate, the Court will discuss with counsel issuing a limiting instruction to the jury.

Accordingly, the Court finds that evidence and testimony regarding the NCIS investigation, including communications between Menes and NCIS, are inadmissible under Fed. R. Evid. 403 except under the limited circumstances as described above.

## B. Evidence or Testimony Regarding Allegations that STI Has Improperly Employed Family Members of Marine Forces Reserve Officials.

STI next seeks to preclude evidence or testimony at trial regarding STI's employment of family members of Marine Forces Reserve officials, elicited by Menes during his deposition, on the basis that such evidence is based upon hearsay and Menes's speculation regarding the NCIS investigation.[66]  STI argues the evidence is irrelevant and unfairly prejudicial under Fed. R. Evid. 403.  STI further asserts that MGMTL cannot prove that STI improperly hired family members of any Marine Forces Reserve officials for "no show jobs," as MGMTL relies on hearsay and rumor.[67]

MGMTL asserts that it is undisputed that STI employed the wife of Donald Washington, the former deputy security manager for the Marine Forces Reserve, and the son of Ed Maguire, the deputy chief of staff for facilities.[68]  According to MGMTL, STI provided Washington access to PASS and corresponded with him about PASS and its use at the Marine Forces Reserve, and STI corresponded with Maguire "via exchanging proposed statements of work in contemplation of STI's providing products and services (including PASS) to MARFORRES."[69]  MGMTL argues that Judge North has already determined that this evidence is relevant in ruling on its prior motion to

---

[66] R. Doc. 128-1 at p. 6 (*citing* R. Doc. 128-2 at pp. 4, 6, 7, 8, 9, & 10-12 ).
[67] R. Doc. 128-1 at p. 7.
[68] R. Doc. 139-16 at p. 13 (*citing* R. Doc. 139-10).
[69] R. Doc. 139-16 at p. 13 (*citing* R. Docs. 139-11 & 139-12).

compel.[70]   MGMTL next assert that the evidence is not hearsay or speculation because it will come from STI's witnesses and records produced by STI as business records in this case.[71]   On the issue of undue prejudice, MGMTL asserts that STI would not be prejudiced by this evidence under Fed. R. Evid. 404(b)(1) because MGMTL does not intend to use it as character evidence.[72]   Finally, MGMTL repeats an argument made in its prior motion to compel that, "The circumstances of STI providing PASS to MARFORRES and the exchange of any payment in relation to providing MARFORRES with PASS (or to turn a blind eye to STI's use of MGMTL's copyrighted intellectual property and, instead, favor STI's PASS) are relevant to the allegations in the complaint."[73]

The Court fails to see how evidence regarding STI's alleged employment of family members of Marine Forces Reserve officials is relevant to MGMTL's claims for copyright infringement, breach of contract, and misappropriation of trade secrets. MGMTL's sole argument regarding relevance is that, "the issue has already been decided: it is relevant,"[74] relying solely upon Judge North's prior order requiring the production of this information during discovery.   As previously explained, the threshold for relevance at the discovery stage is lower than the threshold for relevance at the trial stage,[75] and evidence is not relevant and admissible at trial

---

[70] R. Doc. 139-16 at pp. 13-14 (*citing* R. Doc. 62).  *See*, R. Doc. 45.
[71] R. Doc. 139-16 at p. 14 (*citing* Fed. R. Evid. 803(6)).
[72] R. Doc. 139-16 at pp. 14-15.
[73] R. Doc. 139-16 at p. 15 (*quoting* R. Doc. 45-1 at p. 16) (internal quotation marks omitted).
[74] R. Doc. 139-16 at p. 13.
[75] *Banks v. St. James Parish School Board*, Civ. A. No. 65-16173, 2021 WL 2070132, at *3 (E.D. La. May 14, 2021) (Currault, M.J.) (citing *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011)).

merely because it is relevant for discovery purposes.  The Court therefore rejects, as meritless, MGMTL's argument regarding the relevance of this evidence.

To the extent MGMTL asserts that this evidence is relevant to whether STI provided PASS to MARFORRES for any exchange of payment, which is "relevant to the allegations in the complaint," MGMTL fails to explain how such evidence is relevant to the allegations in its Amended Complaint.  The Court is cognizant of arguments asserted by MGMTL in a prior motion to compel that information regarding whether STI had ever directly or indirectly paid Washington or Maguire, or their respective spouses or children, any sum of money is relevant based on the 2018 whistleblower email that MGMTL received.[76]  MGMTL also argued that the letter stated that STI had repackaged SMART as PASS and sold it to the Marine Forces Reserve, that Maguire and Washington allegedly funded STI's conduct, and that, as a result, STI allegedly awarded them by hiring family members.[77]  The Court notes that MGMTL referenced the 2018 email in its Opposition brief,[78] but not in the section addressing STI's request to exclude evidence regarding its employment of family members of Marine Forces Reserve officials.[79]  The Court agrees with MGMTL that the jury is entitled to hear that STI pitched PASS to Washington and Maguire,[80] as that information is relevant to MGMTL's allegation that STI sold PASS to the Marine Forces Reserve[81] and MGMTL's claims for copyright infringement[82] and

---

[76] R. Doc. 45-1 at pp. 16-17.
[77] *Id.*
[78] R. Doc. 139-16 at p. 3, n.6 (*citing* R. Doc. 134-2 "anonymous email").
[79] *See*, R. Doc. 139-16 at pp. 13-15.
[80] R. Doc. 139-16 at p. 15.
[81] R. Doc. 22 at ¶ 36.
[82] *Id.* at ¶¶ 44, 46, & 48.

breach of contract.[83]  The Court concludes, however, that MGMTL has failed to show that evidence regarding STI's alleged employment of family members of Marine Forces Reserve officials has any relevance to its claims or defenses in this matter.  As such, MGMTL is precluded from introducing at trial evidence or testimony related to, and from otherwise referencing or alleging that, STI improperly employed family members of Marine Forces Reserve officials.

### C. Evidence or Testimony Related To STI's Application For a GSA Schedule for PASS.

STI next seeks to preclude MGMTL from introducing evidence or testimony related to, or from otherwise referencing or raising, allegations that STI has made inconsistent representations regarding its sales of PASS and has possibly misrepresented such sales to the GSA, including MGMTL's Exhibit Nos. 247 and 250.[84]  While MGMTL argues that STI misrepresented to the GSA that it sold PASS, STI contends that MGMTL's argument is based on a false premise, as MGMTL's expert, James Fontana, testified that the GSA submission does not show that STI sold PASS.[85]  STI further asserts that the probative value of this incorrect evidence is minimal and that it should be excluded because it will confuse and mislead the jury and unfairly prejudice STI.[86]

MGMTL argues that in its submissions to list PASS on the GSA Schedule (STI's CSP-1 form), which STI submitted three years ago, STI represented that it had

---

[83] *Id*. at ¶¶ 52 & 55.
[84] R. Doc. 128-1 at pp. 8-9 (*citing* R. Doc. 90 at p. 20).
[85] R. Doc. 128-1 at p. 8 (*citing* R. Doc. 101-27 at p. 7).
[86] R. Doc. 128-1 at p. 8.

past sales of $7.9 million.[87]   MGMTL claims that in the heat of litigation, after MGMTL's government contract expert offered deposition testimony harmful to STI's position, STI sent correspondence to the federal government asserting that its prior representation to the government was "inadequately supported."[88]   MGMTL argues that there is no basis to exclude this evidence because the document is an STI business record that was submitted to the federal government, and the significance of STI's representation in getting PASS listed on its GSA Schedule has not been proven false.[89]   MGMTL further asserts that STI took Fontana's testimony out of context, pointing out that while he testified that the CSP-1 submission entry of $7.8 million could have related to PASS and two other STI products, Fontana also testified that the CSP-1 suggests that there were past sales of PASS.[90]   MGMTL points out that the day after Fontana's deposition, STI "scrambled to write the GSA" regarding its prior CSP-1 submission.   MGMTL contends that the jury should decide whether STI was candid to the government when it submitted its CSP-1 form and listed $7.8 million[91] in historical sales or in April 2021, when it told the government that its submission was unsupported. [92]   MGMTL further argues that this evidence is relevant to rebut STI's allegation that MGMTL has suffered no damages in this case. [93]   MGMTL asserts that the CSP-1 form should not be excluded from trial

---

[87] R. Doc. 139-16 at pp. 15-16.
[88] *Id*. at p. 16 (*quoting* R. Doc. 139-13) (internal quotation marks omitted).
[89] R. Doc. 139-16 at p. 16 (citation omitted).
[90] R. Doc. 139-16 at pp. 17-18 (*quoting* R. Doc. 139-3 at pp. 3-4, 5, & 6-7).
[91] The Court notes that the parties refer to the CSP-1 form as including $7.8 million in sales and $7.9 million in sales. The distinction does not matter for purposes of this analysis.
[92] R. Doc. 139-16 at p. 18.
[93] *Id*. at p. 19.

because STI intends to introduce it as a trial exhibit, and MGMTL has agreed to its introduction as a joint/unobjected-to trial exhibit.[94]

In response, STI reiterates the arguments made in its Motion, and further asserts that, "This is not an issue of fact but rather an issue of rampant speculation for which MGMTL has no foundation."[95]

The Court agrees with MGMTL that evidence and testimony regarding STI's application to list PASS on a GSA Schedule is relevant to the claims and defenses in this matter, including MGMTL's alleged damages. Further, STI has failed to demonstrate that the evidence should be excluded on the basis that it is "incorrect."[96] For the same reason, the Court finds that STI has failed to show that the probative value of this "incorrect evidence" is substantially outweighed by the risk of prejudice or jury confusion, or that it should otherwise be excluded under Fed. R. Evid. 403.[97] The Court agrees with MGMTL that the jury must be able to consider and weigh this evidence and make credibility determinations regarding Fontana's testimony. Accordingly, STI's Motion is denied to the extent that it seeks to exclude evidence or testimony, including MGMTL's Exhibit Nos. 247 and 250 and the testimony of Fontana, regarding STI's application for a GSA Schedule.

---

[94] *Id.* (*citing* R. Doc. 87 at p. 6 (Exh. No. 66)).
[95] R. Doc. 156 at p. 3.
[96] R. Doc. 128-1 at p. 8.
[97] *Id.*

### D. Evidence or Testimony Related to Allegations that any STI Official, Including Its CEO, Had Security Clearance Issues.

STI next seeks to preclude MGMTL from introducing evidence at trial or otherwise referencing the security clearances of STI employees.[98]  STI claims that MGMTL has, on several occasions, alleged and sought to elicit testimony about security clearances, but that such evidence has no relevance in this case.[99]  STI claims that there is no allegation, much less evidence, that STI's employees had a security clearance revoked or temporarily suspended in connection with the SMART software.[100]  Because the evidence has no probative value, STI contends the potential for prejudice substantially outweighs any probative value in this evidence.  STI further asserts that this evidence should be excluded because it is likely to distract the jury, inject extraneous issues into the trial, and prejudice the jury against STI.[101]

MGMTL first points out that members of STI's staff, including former employee, Anil Augustin, and CEO, Rakesh Chopra, hold United States security clearances that allow access to classified information.[102]  MGMTL then asserts that Augustin testified that he believed he was fired from STI because he refused to install the PASS software at MARFORRES, believing that doing so could jeopardize his security clearance.[103]  MGMTL claims this testimony has "significant relevance and probative value" because it "is linked to the core issues in this case where the

---

[98] R. Doc. 128-1 at pp. 9-10.
[99] *Id.* (*citing* R. Doc. 128-3 at pp. 3-4; R. Doc. 128-4 at p. 4).
[100] R. Doc. 128-1 at p. 9.
[101] R. Doc. 128-1 at p. 9 (quoting *Jones v. S. Pacific R.R.*, 962 F.2d 447, 449-50 (5th Cir. 1992)) (internal quotation marks omitted).
[102] R. Doc. 139-16 at p. 19.
[103] R. Doc. 139-16 at p. 20 (*citing* R. Doc. 139-8 at pp. 2-3, 4, & 5).

allegations are that STI copied SMART, created PASS, and distributed PASS to MARFORRES."[104]   MGMTL asserts that evidence regarding security clearances is also relevant under Fed. R. Evid. 608 and MGMTL's ability to cross-examine STI's president and CEO, Chopra, regarding a revocation of his security clearance premised on misrepresentations to the government. [105]   MGMTL contends that Chopra's deposition testimony, in which he could not recall whether his security clearance had previously been withdrawn or whether he had ever submitted false or fraudulent information to the government, is probative of Chopra's character for truthfulness or untruthfulness in a case that centers on allegations of STI's misappropriation and deceit.[106]  MGMTL further asserts that any prejudice claimed by STI is outweighed by the significant probative value of this testimony.[107]

In response, STI asserts that MGMTL's reliance on Rule 608 fails because it only authorizes inquiry into instances of misconduct that is "clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery and embezzlement.[108]  STI argues that testimony regarding whether its employees faced investigations pertaining to their security clearance or "felt" that their security clearance was jeopardized does not clear this hurdle.[109]

---

[104] R. Doc. 139-16 at p. 20.
[105] *Id*. at pp. 20-21.
[106] *Id*. at p. 22.
[107] *Id*.
[108] R. Doc. 156 at p. 4 (quoting *United States v. Crinel*, Crim. A. No. 15-61, 2017 WL 490635 (E.D. La. Feb. 7, 2017) (Morgan, J.) (internal quotation marks omitted).
[109] R. Doc. 156 at p. 4 (citing *EEOC v. Bobrich Enterprises*, No. 08-10162, 2009 WL 577738 (5th Cir. Mar. 6, 2009)).

Although STI is correct that the Amended Complaint contains no allegations regarding the security clearances of STI employees, the Court finds that such evidence, including Augustin's testimony, is relevant to MGMTL's allegation that STI repackaged its software, sold it to the Marine Forces Reserve, and installed it on a computer at the Marine Forces Reserve office in New Orleans.[110]  While Augustin did not install PASS on a Marine Forces Reserve computer, the Court finds that his testimony regarding his refusal to do so is relevant to MGMTL's assertion that STI sold PASS to the Marine Forces Reserve.

The Court further finds that evidence regarding STI's security clearance issues is relevant and admissible under Fed. R. Evid. 608(b) for purposes of MGMTL's cross-examination of STI's CEO, Chopra, regarding a revocation of his security clearance premised on misrepresentations to the government.  Rule 608(b) "permit[s] inquiry on cross-examination into specific instances of conduct which may bear on a witness' credibility in order to impeach the credibility of the witness."[111]  The Fifth Circuit has clarified that to be admissible under Rule 608(b), "the alleged bad act must have a basis in fact and . . . the incidents inquired about must be relevant to the character traits at issue in the trial."[112]  MGMTL claims that STI's former CEO's veracity is at issue in this matter as the case centers on STI's misrepresentations to MGMTL and intentional and secretive infringement and misappropriation of MGMTL's software.[113]

---

[110] R. Doc. 22 at ¶¶ 44 & 46.

[111] *United States v. Skelton*, 514 F.3d 433, 443 (5th Cir. 2008) (quoting *United States v. Farias-Farias*, 925 F.2d 805, 809 (5th Cir. 1991)) (internal quotation marks omitted).

[112] *Skelton*, 514 F.3d at 444 (quoting *United States v. Nixon*, 777 F.2d 958, 970 (5th Cir. 1985)) (internal quotation marks omitted).

[113] R. Doc. 139-1.

To bolster its argument, it has provided excerpts from Chopra's deposition in which it alleges that questions regarding the former CEO's truthfulness are raised.[114] The Court concludes that MGMTL's cross-examination of Chopra regarding a prior revocation of his security clearance based upon his misrepresentations to the government satisfy these requirements of having a basis in fact and relevance to the character trait of truthfulness and that the jury is entitled to consider the evidence in assessing Chopra's credibility.

Although STI argues in its Reply brief that the prior incident does not fall within the parameters of Rule 608(b) because it does not constitute "perjury, fraud, swindling, forgery, bribery and embezzlement,"[115] at least two courts in this Circuit, including this one, have held that, "The classic example of a permissible inquiry would be an incident in which the witness had lied."[116]  As explained by the Fifth Circuit, "federal evidence law allows questioning on collateral instances of misconduct that go to credibility," subject to the balancing of Fed. R. Evid. 403.[117] The Court finds that STI has failed to show that the probative value of this evidence is substantially outweighed by the risk of unfair prejudice, jury confusion, misleading the jury, or delay.  The Court, exercising its "substantial discretion in determining

---

[114] R. Doc. 139-9.

[115] R. Doc. 156 at p. 4 (quoting *United States v. Crinel*, Crim. A. No. 15-61, 2017 WL 490635 (E.D. La. Feb. 7, 2017).

[116] *United States v. Wen Chyu Liu*, Crim. A. No. 05-85-C, 2011 WL 62542, at *2 (M.D. La. Jan. 7, 2011) (Tyson, C.J.) (quoting *Skelton*, 514 F.3d at 443-44) (internal quotation marks omitted); *King v. University Healthcare System, L.C.*, Civ. A. No. 08-1060, 2009 WL 2222700, at *1 (E.D. La. July 24, 2009) (Wilkinson, M.J.) (quoting *Skelton*, 514 F.3d at 443-44) (internal quotation marks omitted).  The Court notes that while both *Wen Chyu Liu* and *King* quote *Skelton* for this assertion, that language is not contained anywhere in the *Skelton* opinion.  *See, Skelton*, 514 F.3d 433.

[117] *Sanchez v. Davis*, 888 F.3d 746, 750 & n.1 (5th Cir. 2018).

the admissibility of impeachment evidence under Rule 608(b),"[118] finds that the evidence is relevant and admissible under Rule 608(b).  As such, STI's Motion is denied to the extent that STI seeks to exclude evidence and testimony regarding allegations that any STI official, particularly its CEO, had security clearance issues.[119]

### E. Evidence and Testimony Regarding Allegations that Loading Software Developed in a Foreign Country, Such as India, Onto a Military Computer Is Illegal.

Finally, STI seeks to exclude from trial any evidence or testimony regarding MGMTL's allegations that loading software developed in a foreign country, specifically India, onto a military computer is illegal and implying that STI's demonstration of PASS for the Marine Forces Reserve was, therefore, illegal.[120]  STI claims that such evidence is irrelevant, unduly prejudicial and will confuse the issues. STI argues the legality of using a developer in India to develop software is irrelevant to whether the software was copied or violates MGMTL's other contractual rights.[121] STI asserts that it is also undisputed that PASS was never loaded onto any government computer and that the STI computer on which STI demonstrated PASS for the Marine Forces Reserve was never connected to the government's network.[122] STI further claims that MGMTL's theory of illegality is incorrect, relying upon testimony from a former STI employee regarding the approval process for using

---

[118] *EEOC v. Bobrich Enterprises*, No. 08-10162, 2009 WL 577738, at *4 (5th Cir. Mar. 6, 2009) (quoting *Skelton*, 514 F.3d at 443-44) (internal quote and quotation marks omitted).
[119] R. Doc. 128 at p. 1.
[120] *Id.*; R. Doc. 128-1 at p. 10 (*citing* R. Doc. 128-2 at pp. 19-20; R. Doc. 128-6 at pp. 3-5 & 6; R. Doc. 128-4 at p. 3; R. Doc. 128-5 at pp. 3-7).
[121] R. Doc. 128-1 at p. 10.
[122] *Id.* (*citing* R. Doc. 128-9 at pp. 3 & 4-5; R. Doc. 128-7 at p. 73).

software developed abroad on military computers.[123]  Finally, STI asserts that the evidence should be excluded because its probative value is substantially outweighed by the risk of prejudice "because MGMTL would confuse the jury with a side issue and make it more likely that the jury would find against STI in this case."[124]

MGMTL asserts that STI's argument is partially moot because it will not elicit testimony or suggest, generally, that it is illegal to develop software in a foreign country. [125]  MGMTL further claims, however, that evidence regarding STI's development of PASS in India is relevant to its breach of contract claim because the software evaluation agreement entered into by MGMTL and STI specifically prohibited STI from disclosing the SMART software to any persons outside of STI.[126] MGMTL points out that the STI executive who signed the agreement, Barry Levin, testified that nothing in the agreement allowed STI to share the SMART software with a non-employee like the Indian software developer, Gokul Palani.[127]  Thus, MGMTL argues STI's provision of its SMART software to an Indian software developer is relevant to its breach of contract claim.[128]  MGMTL then seeks to clarify that it does not view STI's Motion as seeking to broadly exclude all evidence or testimony related to STI's use of the Indian software developer, and seeks only to exclude testimony suggesting that it is unlawful to develop or present software developed in a foreign country.[129]  In a footnote, MGMTL claims that evidence and

---

[123] R. Doc. 128-1 at p. 11 (*citing* R. Doc. 128-5 at pp. 3-4).
[124] R. Doc. 128-1 at p. 11.
[125] R. Doc. 139-16 at p. 23.
[126] *Id*. (*citing* R. Doc. 139-1 at ¶ 2).
[127] R. Doc. 139-16 at p. 23 (*citing* R. Doc. 139-26 at pp. 2, 3-4 & 5).
[128] R. Doc. 139-16 at pp. 23-24.
[129] *Id*. at p. 24.

testimony regarding STI's use of an Indian software developer is clearly relevant to its claims for breach of contract and copyright infringement because they "go to the core tenants of proving MGMTL's case" and STI's efforts to copy, repackage, and rename the SMART software.[130]

As an initial matter, the Court notes that MGMTL does not contest STI's request to exclude evidence or testimony regarding allegations that it was unlawful for STI to load software developed in India onto a military computer.[131]  The Court therefore concludes that such evidence and testimony will be excluded at trial.  The Court further finds, however, that evidence and testimony regarding STI providing an Indian software developer with MGMTL's SMART software is directly relevant to MGMTL's breach of contract claims, for the reasons asserted by MGMTL in the Opposition brief.  The Court is not persuaded by STI's conclusory statement that the probative value of this evidence is substantially outweighed by any risk of prejudice or jury confusion, or that such confusion could not be cured with a limiting jury instruction, if necessary.  Accordingly, the Court finds that evidence and testimony regarding whether STI provided the SMART software to an Indian software developer is relevant and admissible at trial.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion in Limine to Preclude Evidence, Testimony, or References Related to Other

---

[130] *Id.* at n. 83.
[131] *See, generally*, R. Doc. 139-16 at pp. 23-24.

Alleged Wrongdoing[132] is **GRANTED in part and DENIED in part.**  The Motion is **GRANTED** to the extent that STI seeks to exclude evidence and testimony regarding: (1) the ongoing NCIS criminal investigation except in the limited circumstances as described herein; (2) allegations that STI has improperly employed family members of Marine Forces Reserve officials; and (3) allegations that loading software developed in a foreign country onto a military computer is illegal, and MGMTL is precluded from introducing such evidence or testimony at trial.  The Motion is otherwise **DENIED.**

New Orleans, Louisiana, February 28, 2022.

**WENDY B. VITTER**
**United States District Judge**

---

[132] R. Doc. 128.