UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MGMTL, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2138-WBV-MBN** |
| **STRATEGIC TECHNOLOGY** | **SECTION: D (5)** |

### ORDER AND REASONS

Before the Court is Defendant's Motion *in Limine* to Preclude Evidence or Testimony Irrelevant to the Determination of Damages, filed by Strategic Technology Institute, Inc. ("STI").[1] MGMTL, LLC ("MGMTL") opposes the Motion.[2]

After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED.**

I. **FACTUAL AND PROCEDURAL BACKGROUND**[3]

This is copyright infringement case concerning MGMTL's Security Management and Reporting Tool ("SMART"), a "computer software application designed to streamline and efficiently manage the complex tasks and requirements of United States Department of Defense security managers, government contracting companies, and other industries for which the management of personnel and their

---

[1] R. Doc. 129.
[2] R. Doc. 136. On June 14, 2021, MGMTL moved for leave to file under seal its Memorandum in Support and several exhibits thereto because "STI has produced information related to the computer software programs at issue that it has designated as confidential pursuant to the protective order." R. Doc. 137. The Court granted the Motion on June 15, 2021. R. Doc. 144.
[3] In the interest of judicial economy, and because the Court set forth the factual and procedural background of this matter in great detail in its February 16, 2022 Order and Reasons regarding Defendant's Motion *In Limine* to Preclude Opinion Testimony of Jorge Menes (R. Doc. 173), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.

security clearance is a priority."[4] MGMTL alleges that STI copied its SMART software, renamed it as Personnel Administrative Security System ("PASS") and attempted to sell it to third parties, including the Marine Forces Reserve Office in New Orleans (sometimes referred to as "MARFORRES") and by listing it for sale on STI's United States Government General Services Administration ("GSA") Schedule for $214,094.[5]

In the instant Motion, STI seeks to preclude MGMTL from introducing evidence or testimony at trial concerning: (1) STI's GSA Schedule contract and PASS's inclusion on that Schedule, including MGMTL's Exhibit Nos. 245-250, 252, 253, 255, 256, 258-266, and any testimony on this issue, including the testimony of James Fontana; (2) the contention that MGMTL sold a license to SMART to the Marine Forces Reserve; and (3) STI's work with third parties, including the work performed and costs incurred, from 2019 to 2020 related to PASS, including MGMTL's Exhibit Nos. 251, 254, 257, 267-272, 274, 275, and 277-292.[6] Although STI claims that it is undisputed that STI never sold the SMART software or the PASS software, STI anticipates that MGMTL will seek to introduce the foregoing evidence in an attempt to convince the jury to reach a contrary conclusion.[7] STI argues that the evidence is not relevant to the determination of MGMTL's damages, which is based upon a reasonable royalty rate or licensing fee for SMART at the time the infringement began in 2016, and that any probative value is substantially outweighed

---

[4] R. Doc. 22 at ¶¶ 2 & 8.
[5] *Id.* at ¶¶ 35-39.
[6] R. Doc. 129 at p. 1.
[7] R. Doc. 129-1 at p. 1.

by the risk of prejudice and jury confusion. In response, MGMTL argues that the evidence is relevant to the reasonable royalty rate for SMART, as it sheds light on the value STI placed on SMART at the time the infringement began, and that its probative value is not substantially outweighed by any risk of prejudice or jury confusion.[8]

## II. LEGAL STANDARD

According to the Fifth Circuit, the purpose of a motion in limine is to prohibit opposing counsel "from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."[9] Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, or if the fact it seeks to prove is of consequence in determining the action.[10] While all relevant evidence is admissible, the Court may exclude relevant evidence if its probative value is substantially outweighed by danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[11] However, the Fifth Circuit has held that, "The exclusion of evidence under Rule 403 should occur only sparingly."[12] District courts are afforded wide discretion in

---

[8] R. Doc. 136 at pp. 1-3.
[9] *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quotation and internal quotation marks omitted).
[10] Fed. R. Evid. 401.
[11] Fed. R. Evid. 403.
[12] *United States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir. 1993); *See United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (same).

determining the relevance and admissibility of evidence under Fed. R. Evid. 401 and 402.[13] A district court's ruling on evidentiary issues is reviewed by an appellate court for an abuse of discretion.[14] Thus, when the district court conducts "a carefully detailed analysis of the evidentiary issues and the court's own ruling, appellate courts are chary about finding an abuse of discretion."[15]

### III. ANALYSIS

#### A. Evidence and Testimony Regarding STI's GSA Schedule Contract and PASS's Inclusion On That Schedule.

STI asserts that evidence regarding its GSA Schedule contract has little probative value because it is not a contract reflecting the purchase or use of any service, including PASS, by a customer, and instead is simply a listing of products for sale.[16] STI claims that it has not obtained any revenue from listing PASS on its GSA Schedule, and that there is no genuine dispute that it has never sold PASS, a license to use PASS, or any services related to PASS.[17] As such, STI contends that its GSA Schedule contract is not relevant to the determination of MGMTL's damages or of any unjust enrichment gained by STI, both of which there are none.[18] STI argues that its GSA Schedule contract, including the listing price for PASS, does not support

---

[13] *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384, 128 S.Ct. 1140, 1144-45, 170 L.Ed.2d 1 (2008).
[14] *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 356 (5th Cir. 1995).
[15] *Id.*
[16] R. Doc. 129-1 at p. 3.
[17] *Id.* (*citing* R. Doc. 93-3 at ¶¶ 18-21; R. Doc. 129-2 at ¶ 28, n.42; http://www.fpds.gov/ezsearch/search.do?indexName=awardfull&templateName=1.5.1&s=FPDS.GOV&q=47QTCA19D009P ). Although STI asserts that this web address is "a search report from FPDS.gov for STI's GSA Schedule Contract No. 47QTCA19D009P, which lists PASS, showing there have been no purchases on the contract and no revenue on the contract," as of the date of this Order, a search of the foregoing web address yields the following result: "ezSearch - Page Not Found."
[18] R. Doc. 129-1 at p. 4.

MGMTL's calculation of the reasonable royalty or licensing fee for SMART because: (1) the two programs use different platforms and different programming languages and, therefore, are unlikely to share the same price; (2) STI listed PASS on its GSA Schedule in 2019 and the relevant time period is 2016, the date the alleged infringement began; and (3) the GSA Schedule contract is several years removed from the relevant time period, which is 2016; and (3) no one purchased PASS, so the GSA Schedule contract does not demonstrate that the listed price of $214,094 is an acceptable price for PASS or that there is any market for the software at that price.[19] STI claims that the slight probative value of this evidence is substantially outweighed by the risk of unfair prejudice and that, "STI's GSA Schedule Contract is a side show with nothing to add to a legitimate determination of the issues."[20]

MGMTL asserts that while the parties agree that the value of a reasonable royalty rate for the use of the intellectual property is calculated as of the time the misappropriation or infringement began, STI's GSA Schedule is relevant to show the value that STI placed on the intellectual property it took from MGMTL.[21] MGMTL contends that STI's listing of its copycat PASS program for $214,094 per one-year license sheds light on STI's thinking and prior beliefs about the value of that intellectual property.[22] MGMTL asserts that by listing PASS on its GSA Schedule for that price, STI represented, and the federal government agreed, that it was a "fair

---

[19] R. Doc. 129-1 at pp. 4-5.
[20] *Id.* at p. 5.
[21] R. Doc. 136-21 at p. 7 (*citing* R. Doc. 129-1 at p. 4; *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182 (S.D.N.Y. 2002)); R. Doc. 136-21 at pp. 8-10.
[22] R. Doc. 136-21 at p. 9.

and reasonable" price for the product. MGMTL contends that the $214,094 price point shows that STI believed MGMTL's intellectual property – from which PASS is directly copied – was valuable.[23] In a footnote, MGMTL asserts the fact that STI was charging $214,094 for a one-year license corroborates the validity and reasonableness of MGMTL's assumption of a $30,000 per license of SMART in its damages calculation.[24]

MGMTL further asserts that the GSA Schedule is relevant, probative, and critical to essential aspects of its claims, including that STI copied SMART, renamed it and repackaged it as PASS, distributed it for use at MARFORRES, and then listed it on its GSA Schedule and represented to the world that MGMTL's intellectual property was its own.[25] MGMTL claims that the evidence is relevant to its breach of contract claims and STI's breach of its promise to never claim a proprietary right to SMART.[26] MGMTL asserts that its expert, James Fontana, will also testify about the significance of STI's representations to GSA and the resulting price point contained in its GSA Schedule.[27] MGMTL argues that any speculation regarding the potential risk of prejudice or jury confusion caused by referring to the GSA Schedule as a "contract" does not substantially outweigh the significant probative value of this evidence.[28] MGMTL points out that STI can cross-examine Fontana and clarify what a GSA Schedule represents, and that STI's witnesses can also explain what a GSA

---

[23] R. Doc. 136-21 at p. 9.
[24] *Id*. at n. 32.
[25] *Id*. at pp. 10-11 (*citing* R. Doc. 22 at ¶¶ 35-39).
[26] R. Doc. 136-21 at p. 11 (*citing* R. Doc. 22-3).
[27] R. Doc. 136-21 at p. 11.
[28] *Id*.

schedule is, why it listed PASS on the schedule and at what price, and whether STI made any sales.[29] As such, MGMTL asserts that STI's Motion should be denied.

The Court agrees with MGMTL that evidence regarding STI's GSA Schedule contract and PASS's inclusion on that schedule are relevant to the determination of damages in this case. The Court specifically finds that this evidence is relevant to a determination of the reasonable royalty rate for SMART and the value STI placed on SMART at the time the infringement began. The Court further finds, contrary to STI's assertion, that the probative value of this evidence is not substantially outweighed by any risk of unfair prejudice or jury confusion. The Court notes that it has already determined on two prior occasions that evidence regarding STI's GSA Schedule, including Fontana's testimony regarding the GSA Schedule, is relevant and admissible to the claims and defenses in this matter.[30] STI has again failed to convince the Court that this evidence should be excluded from trial. As such, and for the same reasons as expressed in its previous orders,[31] the Motion is denied to the extent that STI seeks to preclude evidence and testimony regarding its GSA Schedule contract and PASS's inclusion thereon.

### B. Evidence or Testimony Related to the Contention That MGMTL Sold a License to SMART to the Marine Forces Reserve.

STI next seeks to preclude evidence or testimony related to MGMTL's contention that it sold a SMART license to the Marine Forces Reserve for $30,000 because it is undisputed that a sale did not occur. STI asserts that Jorge Menes, the

---

[29] *Id.*
[30] *See*, R. Doc. 175 at pp. 12-14; R. Doc. 187.
[31] *Id.*

7

co-creator of SMART, admitted during his deposition that the Marine Forces Reserve did not license the SMART software for $30,000.[32] STI contends that it is also undisputed that the Marine Forces Reserve never executed an agreement with MGMTL for a SMART license,[33] and that Menes conceded that the Marine Forces Reserve never breached any contract by not paying MGMTL.[34] STI claims that, although MGMTL believes that it sold a SMART license to the Marine Forces Reserve, no sale occurred. STI argues that the probative value of this evidence is minimal and that it will mislead and confuse the jury. As such, STI argues that the Court should exclude from trial any testimony or argument that MGMTL sold a SMART license to the Marine Forces Reserve.

MGMTL points out that STI does not argue that this evidence is irrelevant, as the evidence bolsters the value of SMART as a product and Menes's underlying assumption of $30,000 per one-year license in MGMTL's damages calculations.[35] MGMTL argues that although funds were not exchanged, Menes's testimony shows that MGMTL and the Marine Forces Reserve agreed on a thing (a one-year license of SMART) and price ($30,000), which constitutes a sale under Louisiana law.[36] According to MGMTL, the fact that the Marine Forces Reserve never released the funds does not render Menes's testimony false, nor will it confuse the or mislead the jury.[37] MGMTL claims that STI fails to explain how Menes's testimony will confuse

---

[32] R. Doc. 129-1 at p. 5 (*citing* R. Doc. 91-3 at p. 29).
[33] R. Doc. 129-1 at p. 6 (*citing* R. Doc. 99-6 at p. 4; R. Doc. 121-3 at pp. 3-4 & 6; R. Doc. 121-4).
[34] R. Doc. 129-1 at p. 6 (*citing* R. Doc. 121-1 at p. 3).
[35] R. Doc. 136-21 at pp. 12-13 (*citing*. Doc. 136-1; R. Doc. 136-12; R. Doc. 99 at pp. 18-19).
[36] R. Doc. 136-21 at pp. 13-15 (*citing* La. Civ. Code arts. 2439 & 2456; R. Doc. 136-3 at p. 3).
[37] R. Doc. 136-1 at p. 15.

the jury, especially when he will be subject to cross-examination by STI.[38] MGMTL further asserts that testimony regarding MGMTL's past sales of SMART will not confuse the jury regarding whether STI ever sold SMART or PASS.[39]

The Court has already had an opportunity to review the pertinent evidence and testimony regarding MGMTL's purported sale of a one-year license of the SMART software to the Marine Forces Reserve for $30,000 in connection with a prior motion *in limine* filed by STI.[40] After reviewing the evidence, the Court concluded that it was clear that a sale of the one-year license of SMART was never effectuated between MGMTL and the Marine Forces Reserve for $30,000.[41] Thus, for the reasons set forth in that Order, the Court agrees with STI that it is undisputed that MGMTL never effectuated a sale of a one-year license of SMART to the Marine Forces Reserve.[42] Nonetheless, as in the prior Order, the Court finds that evidence regarding MGMTL's negotiations with the Marine Forces Reserve for the sale of a one-year license of SMART is relevant to the value of SMART at the time that the alleged infringement began and, as a result, is relevant to MGMTL's damages calculation. STI has failed to show that the probative value of the evidence is substantially outweighed by any risk of unfair prejudice or jury confusion. The Court is confident that STI will thoroughly cross-examine Menes or any other witness on this topic and make it clear that no sale was effectuated between MGMTL and the Marine Forces Reserve.

---

[38] *Id.* at pp. 15-16.
[39] *Id.* at p. 16.
[40] R. Doc. 173.
[41] *Id.* at pp. 18-20.
[42] *Id.* at pp. 17-24.

9

Accordingly, STI's Motion is denied to the extent that it seeks to preclude evidence or testimony regarding whether MGMTL sold a license of SMART to the Marine Forces Reserve.

### C. Evidence or Testimony Regarding STI's Work With Third Parties From 2019 to 2020 Related to PASS, Including The Work Performed and Costs Incurred.

Finally, STI seeks to preclude MGMTL from introducing at trial evidence or testimony regarding STI's engagement of third parties in 2019 and 2020 to help develop or market PASS, including the work performed and costs incurred.[43] STI contends that this evidence is not relevant to liability or damages in this case and is likely to confuse the issues, mislead the jury, and waste time.[44] STI asserts that the efforts by its consultant, Steve McMurtry, to market PASS in 2019 are not relevant to the market for SMART in 2016, which is when the infringement began and is the relevant time for determining a reasonable royalty for SMART.[45] STI points out that McMurtry's attempts to market PASS in 2019 did not result in any sales or even any interest from prospective customers and, as such, evidence regarding his efforts are irrelevant and of little probative value.[46]

STI next asserts that the costs it incurred in 2019 and 2020 are likewise irrelevant to any reasonable royalty that the parties would have agreed to in 2016, when the infringement began, because these events took place over three years

---

[43] R. Doc. 129 at p. 1; R. Doc. 129-1 at p. 6.
[44] R. Doc. 129-1 at p. 6.
[45] R. Doc. 129-1 at p. 7 (*citing* R. Doc. 99 at p. 6).
[46] R. Doc. 129-1 at p. 7 (*citing* R. Doc. 93-3 at ¶¶ 18-21; R. Doc. 129-2 at p. 3; Fed. R. Evid. 401).

later.[47] STI claims that the parties never agreed that STI would pay MGMTL for any services like those provided by these third parties, so these costs are not any measure of damages to MGMTL.[48] STI further asserts that while it retained third parties to further develop and troubleshoot the PASS software in 2019 and 2020, it is undisputed that STI no longer had access to the SMART software at that time because its access to SMART expired on June 27, 2016.[49] As such, STI argues neither it nor any retained third party could have copied SMART. STI contends that any work performed by these third parties on the software itself is irrelevant and of no probative value in this case.

MGMTL disagrees with STI's position, asserting that the jury is entitled to hear evidence that STI solicited McMurtry as a consultant due to his familiarity with SMART.[50] MGMTL claims that evidence regarding STI's work with third parties in 2019 and 2020 is relevant because it shows the value STI placed on MGMTL's intellectual property when it began its infringement of SMART in 2016.[51] MGMTL contends that STI saw potential and high value in SMART in 2016 and continued to do so through 2019, as evidenced by the amount of money it spent to further develop PASS, which MGMTL describes as "thousands to McMurtry and thousands more to software company ISSI."[52] MGMTL asserts that this evidence is also relevant to dispute STI's contention that its use for PASS was limited to one unsuccessful

---

[47] R. Doc. 129-1 at p. 7.
[48] *Id.*
[49] R. Doc. 129-1 at pp. 7-8 (*citing* R. Doc. 93-5).
[50] R. Doc. 136-21 at pp. 17-18 (*citing* R. Doc. 136-10).
[51] R. Doc. 136-21 at p. 18.
[52] *Id.*

11

demonstration to the Marine Forces Reserve several years ago.[53] MGMTL argues that STI did not engage in an isolated act of infringement, and that the jury should be allowed to hear evidence that STI remained active with PASS in 2019 and 2020 by listing PASS on its GSA Schedule, hiring a consultant familiar with SMART to assist its efforts with PASS, and by refining and promoting the software as a "value add" to third parties through 2020.[54] MGMTL also claims the evidence is relevant to dispute STI's assertion that MGMTL's claims of misappropriation and infringement are time-barred, as the evidence shows that STI's infringing conduct continued well into 2020, including when it distributed access to PASS to McMurtry, ISSI, and others "well within the last three years."[55] MGMTL claims the fact that STI no longer had access to SMART in 2019 does not undermine the relevance or probative value of this evidence. Instead, MGMTL asserts that STI's willingness to invest in consultants to promote and refine PASS ascribe the value STI placed on the MGMTL intellectual property from which PASS derives and shows that STI's efforts related to PASS did not cease years ago, as STI has wrongly asserted.[56] As such, MGMTL asserts STI's Motion to exclude this evidence should be denied.

The Court agrees with MGMTL that evidence and testimony regarding STI's work with third parties in 2019 and 2020 regarding its PASS software, including the work performed and costs incurred, is relevant to both the value STI placed on the SMART software at the time the infringement began in 2016 and to STI's argument

---

[53] *Id.* at p. 19.
[54] *Id.* (*citing* R. Doc. 136-18).
[55] R. Doc. 129-1 at p. 19 (*citing* R. Doc. 101).
[56] R. Doc. 129-1 at p. 20.

12

that MGMTL's claims for copyright infringement and misappropriation of trade secrets are time-barred. The Court agrees with MGMTL that the evidence is probative of STI's valuation of SMART and what STI and MGMTL would have agreed to as a fair price for STI's unrestricted use of MGMTL.[57] The evidence also shows STI's ongoing efforts to market and develop the PASS software in 2019 and 2020, which is relevant to MGMTL's allegations regarding when STI allegedly infringed its intellectual property rights, STI's arguments regarding whether MGMTL's claims are time-barred, and STI's use of PASS. The Court is not persuaded that this evidence will confuse the issues, mislead the jury, or waste time, as suggested by STI. Instead, the Court finds that the evidence will help the jury understand the extent of STI's alleged infringement of MGMTL's intellectual property rights and, as such, is admissible at trial. Further, the evidence is clearly probative to several issues in this case and appears fairly straightforward. The Court fails to see any waste of time in the introduction of this relevant evidence. Accordingly, STI's Motion is denied to the extent that it seeks to exclude evidence and testimony at trial regarding STI's work with third parties in 2019 and 2020 related to PASS, including the work performed and costs incurred.

---

[57] R. Doc. 136-21 at p. 10 (citing *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974)).

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion *in Limine* to Preclude Evidence or Testimony Irrelevant to the Determination of Damages[58] is **DENIED.**

New Orleans, Louisiana, February 28, 2022.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[58] R. Doc. 129.