# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MGMTL, LLC** | * | **CIVIL ACTION NO.: 20-2138** |
| | * | |
| | * | **JUDGE: WENDY B. VITTER** |
| **VERSUS** | * | |
| | * | **SECTION: D** |
| | * | |
| **STRATEGIC TECHNOLOGY INSTITUTE, INC.** | * | **MAGISTRATE JUDGE: NORTH** |
| | * | |
| | * | **DIVISION: 5** |

**************************************

## MGMTL'S MEMORANDUM ON COPYRIGHTABILITY
## PER REC. DOC. 216

Thomas M. Flanagan (#19569)
Harold J. Flanagan (#24091)
Camille E. Gauthier (#34558)
Dennis O. Durocher, Jr. (#36441)
FLANAGAN PARTNERS LLP
201 St. Charles Ave. Suite 3300
New Orleans, Louisiana 70170
Telephone: (504) 569-0235
Facsimile: (504) 529-0251
tflanagan@flanaganpartners.com
cgauthier@flanaganpartners.com
hflanagan@flanaganpartners.com
ddurocher@flanaganpartners.com

Attorneys for MGMTL, LLC

I.   **INTRODUCTION**

This brief was prompted by STI's extraordinary request: an oral contention at the pre-trial conference (after no reference in the pre-trial order) that questions of copyrightability are questions of law that should be parsed by the Court, line-by-line, word-by-word, and screen-by-screen in a hearing. That untimely and procedurally improper request should be rejected.

STI should have asked the Court to decide what it now contends are questions of law in a timely motion. Indeed, STI tried but failed to convince the Court on summary judgment that none of SMART's nonliteral elements were copyrightable. Since its previous effort failed, STI tries again on the eve of trial. It blindsided MGMTL—and the Court—by citing non-binding authorities where select courts (*when timely asked to do so*) reviewed aspects of material for copyrightability, on summary judgment or other motion practice.

There is no requirement in the Fifth Circuit for what STI seeks. And there is no motion on the table. It would be extraordinary for the Court to—after five trial dates have come and gone—entertain STI's untimely and unprecedented request to narrow (or even eliminate) MGMTL's copyright claim outside the context of a dispositive motion.

STI's request is wrong on the merits, too. As scores of cases that MGMTL has cited throughout (including to defeat STI's summary judgment) demonstrate, while each individual word, menu item, or element may not be copyrightable when taken alone, the totality of the screen display or user experience often is. And to be clear, the burden when the issue is timely raised is on *STI* to come forward and point out exactly what in the software is not copyrightable. Then, and only then, would MGMTL need to respond to explain why STI's specific assertions are wrong. As authority from the Fifth Circuit makes clear, at this stage in the case, it is a question for the *jury* to

1

filter out uncopyrightable expression and determine whether there is substantial similarity between PASS and the copyrightable elements of SMART.

MGMTL opposes additional briefing or hearing now, which would be burdensome, unfair, and costly. STI has no procedural or substantive right to anything further.

## II. LAW AND ARGUMENT

### A. Any suggestion that the Court should determine the issue of copyrightability now is untimely and procedurally improper.

STI's request for additional briefing (and possible hearing) came orally during the final pre-trial conference. This tactic was procedurally improper.

First, *all non-evidentiary pretrial motions* required submission by May 25, 2021.[1] STI needed to present this subject to the Court via a motion (be it summary judgment or, perhaps, a motion for copyrightability determination) nearly a year ago. Many cases STI has previously invoked to suggest that the Court should decide copyrightability were rulings on summary judgment.[2] Issues related to copyrightability can be a question of law when presented to the court in a timely filed motion, and the court is able to resolve the issue as a matter of law. What STI is asking for, then, is yet another opportunity for dispositive motion practice, well after the deadline has passed.[3]

STI's latest request for more motion (or hearing) practice goes beyond disregard for the scheduling order. Five trial dates have now come and gone, yet only now STI raises this issue. That is—but for Covid and scheduling issues—this case would have resolved months ago. If it proceeded on any prior trial date, that resolution would have come without mention, briefing, or

---

[1] Rec. Doc. 70, p. 1.

[2] *Infra* note 9 (citing such cases).

[3] STI previously attempted to file a motion well past the deadline for doing so. Rec. Doc. 216, p. 3. The Court rejected STI's last effort as untimely.

2

hearing on copyrightability. Nor did STI raise this in the pre-trial order, which defines the parameters of the case.[4] Now nearing trial and unable to dismiss this case, it has belatedly changed its mind. That last-minute shift is unfair and prejudicial.

But even more importantly, STI has already litigated copyrightability on summary judgment. It argued that SMART's non-literal elements were not copyrightable expression. It urged:

> Here, *every single example* of MGMTL's menu screens that STI allegedly copied either contain 'words and short phrases,' are 'report forms' that are 'designed for recording information and do not in themselves convey information,' or are 'incident to' the 'idea', 'system' or 'process' required for any program designed to comply with the same body of government regulations that PASS and SMART are designed to comply with.[5]

STI failed to establish that SMART's non-literal elements are not copyrightable as a matter of law. That it would like another chance to persuade the Court is not a valid excuse. The parties have litigated whether SMART's nonliteral elements warrant copyright protection. The issue is ready for the jury, and it should not be reopened on the eve of trial.

### B. Literal elements are not subject to abstraction filtration and not at issue.

Copyright protection for computer programs extends to the literal elements of computer software—the source code and object code—and the program's nonliteral elements: its structure, sequence, organization, user interface, screen displays, and menu structures.[6] Copyright protection does not extend to ideas, processes, facts, elements required by factors external to the program itself, or items taken from the public domain.[7] To account for unprotected elements, the

---

[4] Rec. Doc. 166, p. 50, ¶ XII (proposed pre-trial order). STI agreed in the pre-trial order that "[a]ll issues except MGMTL's request for permanent injunction and post judgment fees are to be tried by the jury."

[5] Rec. Doc. 122, p. 9 (emphasis added).

[6] *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004). Copyright infringement can be of the literal elements, the nonliteral elements, or both. MGMTL need prevail on only one.

[7] *Id.* at 142-143 (5th Cir. 2004).

Fifth Circuit has generally endorsed the "abstraction-filtration-comparison" test for nonliteral elements. It has never addressed (or required) this for literal elements.[8]

It is difficult to know what STI hopes to achieve; its request was oral, and no motion is pending. But STI did not suggest source code is subject to abstraction-filtration, either. For those reasons, the Court need do nothing further. It has already denied all of STI's arguments about source code. Experts will explain competing views on copying. The jury will decide who is right.

### C. As to non-literal elements, copyrightability may be a question of law when properly raised in motion practice where the movant carries its burden.

STI urges that copyrightability is a question of law to be decided by the Court. Courts often decide issues as a matter of law when timely presented in a motion for summary judgment or similar motion. Indeed, many cases STI has previously cited regarding copyrightability were summary judgment cases.[9] *Mills v. Ayala* is an example: "Although this determination [of substantial similarity] is ordinarily left to the ultimate fact-finder, summary judgment may be appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression."[10] That court, when confronted with a summary judgment motion that raised the issue, found the chief similarity (use of the Spanish word for "gasoline" int two songs) not

---

[8]   *Id.* at 143. Regardless, MGMTL's expert eliminated "unprotectable material such as public domain information, hardware and software standards, computer manufacturer design standards, target industry practice and demands, and computer industry programming practices" in his analysis. Rec. Doc. 101-6, Expert Report of Gary Stringham, ¶ 20(d).

[9]   *See, e.g., Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004) (summary judgment); *CSS, Inc. v. Herrington*, 306 F. Supp. 3d 857, 866 (S.D.W. Va. 2018) (summary judgment); *Mills v. Ayala*, No. CIV.A. 08-5168, 2010 WL 420556, at *3 (E.D. La. Jan. 29, 2010) (summary judgment); *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25 (1st Cir. 2001) (summary judgment).

[10]  *Mills*, 2010 WL 420556, at *3 (citations omitted).

sufficiently original to be protectible so substantial similarity of ideas and expression was lacking.[11] When that happens, the court rules as a matter of law. That is not the posture here.

Moreover, non-binding cases cited by STI do not show that a copyrightability hearing is required (or encouraged) in this circuit (especially outside a timely motion). Instead, the most instructive example is *Aspen Tech. Inc. v. M3 Tech., Inc.* The Fifth Circuit is clear that the *jury* is to decide the issues STI wrongly claims are questions of law for the Court:

> Though M3 contends that this testimony was insufficient to demonstrate proper filtration or comparison, the jury heard M3's account as to why the three similarities should have been removed from the comparison. *The jury, as the ultimate factfinder, was entitled to determine whether the copied aspects of the program were entitled to copyright protection.* We cannot say as a matter of law that the expert testimony was so lacking as would cause reasonable minds to reject the conclusion drawn by the jury in this case that Aspen's claims were legally actionable. Accordingly, M3 was not entitled to judgment as a matter of law on Aspen's copyright infringement claims.[12]

Where a program is utterly lacking copyright protection, the Court may decide that (when timely raised) as a matter of law. But summary judgment and dispositive motion practice are over. There are disputed facts on copyrightability and substantial similarity. MGMTL's expert will testify as to what he considered and what he filtered out from analysis when performing his software comparison. Experts will weigh the competing positions. The jury—as the Fifth Circuit blessed in *Aspen Tech*—will decide.

Moreover, the Eleventh Circuit also follows the "abstraction-filtration-comparison" test, and its pattern jury instructions instruct the jury on what is copyrightable and what is not and instruct the jury to filter out unprotected expression:

---

[11] *Id.* at 4.
[12] *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 270 (5th Cir. 2014) (emphasis added).

> . . . You must determine whether there is "substantial similarity" between [name of defendant]'s allegedly infringing program and the original elements of [name of plaintiff]'s software that the law protects.
>
> To do that, you'll need to filter [name of plaintiff]'s copyrighted computer program to decide what part of [his/her/its] copyrighted software program is protected by the law and what part is not protectable.
>
> You'll need to break down the allegedly infringed program—[name of plaintiff]'s copyrighted work—into its structural parts so you can consider the individual elements of [name of plaintiff]'s copyrighted work. Then you'll need to determine which of the elements that [name of plaintiff] claims have been infringed are protected by the law.[13]

If that were a pure legal question, as STI suggests, pattern instructions would not tell the jury to perform the analysis to consider—and filter out—unprotected expression. If a case survives summary judgment and proceeds to the jury—like here—this analysis is for the jury, not the Court.

### D.     STI's contention that SMART's non-literal elements are not subject to copyright protection is wrong and may not be re-urged now.

For copyright protection, there need only be a minimal level of originality.[14] Nevertheless, STI suggests all of SMART's non-literal elements are not copyrightable expression. In so doing, STI previously parsed out individual elements in isolation and mischaracterized law and expert reports to conclude that the non-literal elements are not protected expression.

STI has urged that there is only one way to make a security management software so SMART has no copyrightable expression because it is dictated by Department of Defense regulations. But STI has no proof—now or at trial—that there is only one way to structure or organize the non-literal elements of SMART or that external factors mandated the look and feel of SMART's screen displays. STI relies on expert Jonathan Krein to urge SMART's non-literal

---

[13] Eleventh Circuit Civil Pattern Jury Instructions § 9.22; *see, e.g.*, *SAS Inst. Inc. v. World Programming Ltd.*, 496 F. Supp. 3d 1019, 1026 (E.D. Tex. 2020) (citing the Eleventh Circuit, *Compulife Software Inc. v. Newman*, 959 F.3d 1288 (11th Cir. 2020), for its analysis regarding abstraction-filtration-comparison).

[14] *Feist Pub., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358 (1991).

6

elements are dictated by external factors.[15] But he acknowledged: "certainly I'm not a Department of Defense expert."[16] STI has no one knowledgeable on this topic. In fact, the only person with Department of Defense experience and familiarity with whether regulations dictate the user interface of a security management software like SMART (they do not) is Menes. He will testify external factors did not dictate SMART's non-literal elements.[17]

Another tactic employed by STI is to characterize the screen displays as *de minimis*, and therefore not copyrightable. By way of example, STI previously cherry-picked a screen with only three terms on it: "ACTIVE PERSONNEL, INACTIVE PERSONNEL, and DONE." Of course, if SMART consisted of only this *one* screen display, STI might be right. But the screen STI points to is just one among many copied screens (indeed, MGMTL's expert's report included *numerous* screen displays of SMART and comparable screen displays of PASS), *all* arranged in exactly the same way and structured with respect to each other in exactly the same way. Stringham's report provides the evidence with dozens of unaltered pictures. MGMTL is not claiming it has a copyright over just one screen or that any screen display should be viewed in isolation. It is claiming it has a copyright over the SMART program taken as a whole—the totality of the user interface.[18] STI's

---

[15] Rec. Doc. 197-12, Krein report, ¶ 84 ("The user interfaces and functionality of the SMART and PASS applications appear to be largely dictated by the industry—in particular by the DoD. . . . ").

[16] Exhibit A, Krein depo, p. 18:18-19; *see also id.* at p. 20:4-8 ("[G]iven that I don't have direct knowledge of Department of Defense processes and procedures, I would certainly need to go out and do the necessary research in order to obtain that information.").

[17] Rec. Doc. 101-3, Menes declaration, ¶ 9 ("I made the design choices on behalf of MGMTL on how to organize and compile SMART's screen displays and experience for a user. This included making selections about SMART's word choice, structure, sequence, organization, screen displays, user interface, and menu structures of SMART. Because of these creative decisions, if another software developer were asked to create a security management software, the resulting word choice, sequences, organization, structure, screen displays, user interface, menu structures would not look and feel exactly like SMART.").

[18] As numerous cases about computer software explain, creators exhibit creativity and exhibit copyrightable expression in the composition and arrangement of screen displays even when the underlying

tactic seems to be to try to redact every word MGMTL did not make up or every individual aspect of the program that MGMTL did not invent. Eventually, if STI has its way and enough individual, isolated elements are removed, the jurors will be left unable to see much of anything side by side. It's like taking a novel and pointing out that every word is in the dictionary, so therefore none of the novel receives copyright protection. That approach is absurd.

STI has tried to critique Stringham's analysis as if he misapplied applicable standards. There was a remedy for that if it were true: STI could have moved to exclude him. It did not, and Stringham will testify before the jury. STI may argue that Stringham's testimony is somehow insufficient to demonstrate proper filtration or comparison. But that was the same claim in *Aspen Tech*. The Fifth Circuit is clear that the jury will assess if expert testimony is "insufficient to demonstrate proper filtration or comparison" and if certain "similarities should have been removed from the comparison."[19] The experts will outline the analysis and the jury will decide.

---

    elements taken on their own are not copyrightable. A few examples follow but citing more examples would be too long to list here. For more, see Rec. Doc. 211, pp. 10-11 and notes 18-20. *E.g.*, *M-I LLC v. Q'Max Solutions, Inc.*, No. H-18-1099, 2020 WL 4549210, at *8 (S.D. Tex. Aug. 6, 2020) ("The court is not persuaded, however, that the arrangement and presentation of the data table, header bar, and vertical graphs on the Virtual Hydraulics Snapshot are totally devoid of originality. At minimum, screenshots of the M-I Snapshot, Baker Hughes interface, and Halliburton interface demonstrate there is some variation in the arrangement, presentation, and coloring of those elements of the results screen that is left to the discretion of the program's author."); *Real View, LLC v. 20-20 Techs., Inc.*, 683 F. Supp. 2d 147, 157 (D. Mass. 2010) ("The fact that each individual icon or feature on a screen cannot necessarily be copyrighted does not deny the screen itself, as the sum of those icons or features, copyright protection."); *Harbor Software, Inc. v. Applied Sys., Inc.*, 925 F. Supp. 1042, 1052 (S.D.N.Y. 1996) ("[S]ufficient expressive choices were made in the selection and arrangement of the elements in each exhibit to satisfy the minimal requirement of originality and warrant protection."); *Mfrs. Tech., Inc. v. Cams, Inc.*, 706 F. Supp. 984, 994 (D. Conn. 1989) ("The flow of the plaintiff's screen displays reflect plaintiff's creative manner of expressing how the process of cost-estimating should be accomplished."); *see also Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 387 (5th Cir. 1984) ("Since the plaintiffs alleged copyright ownership with respect to the show as a whole, it was erroneous for the district court to base its decision as to the success of the infringement claim on the originality or copyrightability of the individual elements of the show. Instead, the court should have examined 'The Country Kids Show' in its entirety, and made fact findings on the originality and copyrightability of the show as a package.").

[19]   *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 270 (5th Cir. 2014).

For all those reasons, STI's rigid view ignores caselaw and overlooks that the overall user interface is copyrightable and must be assessed by the jury.

### E. A hearing at this late stage is unfair, impractical, and unduly prejudicial.

The idea of a hearing at this stage, and on this record, is unfair, impractical and unduly prejudicial. This is so because of, among other reasons, the burden-shifting framework for this type of analysis. The court in *SAS Inst. Inc. v. World Programming Ltd.*—after a copyrightability hearing when the issue was brought to the court's attention on opposing motions for summary judgment—noted the Fifth Circuit has not provided authority on the burden of proof in the filtration analysis of copyrightability.[20] The lack of Fifth Circuit precedent proves the point: such a hearing is not required or contemplated.

With a lack of guidance from the Fifth Circuit, the *SAS* court looked to the Eleventh Circuit. The Eleventh Circuit endorsed a burden-shifting framework.[21] The plaintiff first proves a valid copyright and factual copying. *The burden then shifts to the defendant to prove that some or all of the copied material is unprotectable.* If the defendant so shows, the burden shifts to the plaintiff to respond. The court explained the rationale for such an approach:

> Filtration can be tricky because copied material may be unprotectable for a wide variety of reasons. . . [T]he Eleventh Circuit noted that the plaintiff in a copyright action is to "respond to any proof advanced by the defendant that the portion of copyrighted work actually taken does not satisfy the constitutional requirement of originality." The Eleventh Circuit also noted that placing the whole of the burden on the plaintiff would "unfairly require him to prove a negative," by demonstrating that the whole universe of unprotectability did not exist. Placing the burden on the defendant, by contrast, merely requires him to identify the species of unprotectability that he is

---

[20] *SAS Inst. Inc. v. World Programming Ltd.*, 496 F. Supp. 3d 1019, 1026 (E.D. Tex. 2020).

[21] *Id.* (citing *Compulife Software Inc. v. Newman,* 959 F.3d 1288 (11th Cir. 2020)). As explained earlier, this Court should likewise look to Eleventh Circuit pattern jury instructions instructing the jury that it is the jury's task to apply the abstraction, filtration, comparison test since the Fifth Circuit has no model pattern instruction and it is proper to be guided by the Eleventh Circuit.

9

alleging and to present supporting evidence where appropriate. The plaintiff then faces the manageable task of responding to the appropriately narrowed issue.[22]

MGMTL has throughout shown it has a copyright and can prove factual copying. It is STI's burden to prove what copied material is unprotectable. To meet this burden, STI must provide evidence and clearly identify what exact components in SMART are not copyrightable. STI tried already—and failed—on summary judgment to convince the Court that nothing in SMART is copyrightable. There is no motion pending, no evidence from STI as to what exactly it contends is not copyrightable, no expert in Department of Defense regulations to opine that such regulations mandated SMART's screen displays, and no ability for MGMTL to pre-but whatever STI might belatedly point to in the context of these contemporaneously filed briefs on the eve of trial.

A hearing for which the parties have to find a way to schedule experts (not to mention the extraordinary expense) and at which STI might wrongly try to convince the Court to redact words or line items from dozens of screen displays in isolation is unfair, impractical, unduly prejudicial as well as substantively wrong.

### III. CONCLUSION

It would be extraordinary to give STI additional chances at more briefing or a hearing. This case is ready for trial. The jury will conclude copying when presented with the evidence. That STI expects it will lose if the jury sees its misconduct is no basis to allow STI's unfair and belated efforts to inject confusion and additional barriers before trial. There is nothing more for the Court to do pre-trial; the remaining analysis is for the jury.

---

[22] *Id.*

/s/ Camille E. Gauthier
Thomas M. Flanagan (#19569)
Harold J. Flanagan (#24091)
Camille E. Gauthier (#34558)
Dennis O. Durocher, Jr. (#36441)
FLANAGAN PARTNERS LLP
201 St. Charles Ave. Suite 3300
New Orleans, Louisiana 70170
Telephone: (504) 569-0235
Facsimile: (504) 529-0251
tflanagan@flanaganpartners.com
cgauthier@flanaganpartners.com
hflanagan@flanaganpartners.com
ddurocher@flanaganpartners.com

Attorneys for MGMTL, LLC