## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MGMTL, LLC**                                                **CIVIL ACTION**

**VERSUS**                                                   **NO. 20-2138**

**STRATEGIC TECHNOLOGY INSTITUTE, INC.**      **SECTION: D (5)**

### ORDER AND REASONS

Before the Court is MGMTL, LLC'S Motion for Attorneys' Fees, wherein MGMTL seeks an award of $1,327,984.50 in attorney's fees incurred through February 2023 for prevailing on its copyright and misappropriation of trade secrets claims against Strategic Technology Institute, Inc. ("STI"). [1]   MGMTL filed a Supplemental Memorandum in Support of Motion for Attorneys' Fees, seeking an additional $31,066.00 in attorney's fees that it incurred in March and April 2023, for a total requested fee award of $1,359,050.50. [2]  STI opposes the Motion, [3] and MGMTL has filed a Reply. [4]

The Court referred the Motion to the assigned United States Magistrate Judge for hearing and submission of a Report and Recommendation. [5]  On December 4, 2023, the Magistrate Judge issued a Report and Recommendation, recommending that the Motion be granted in part, and that MGMTL be awarded a total of $616,334.60 in

---

[1] R. Doc. 281.
[2] R. Doc. 298.
[3] R. Doc. 299.
[4] R. Doc. 306.
[5] R. Doc. 282.

attorney's fees. [6]   MGMTL and STI both filed objections to the Report and Recommendation,[7] and MGMTL filed an Opposition to STI's objections.[8]

While the Motion was pending, STI appealed this Court's Final Judgment[9] to the Fifth Circuit.[10]  On October 16, 2024, the Fifth Circuit issued an opinion affirming in part, reversing in part, and vacating in part the Final Judgment.[11]  Specifically, the Fifth Circuit affirmed the judgment in favor of MGMTL on the copyright infringement and breach of the Distributor Agreement claims, reversed the judgment for MGMTL on the two trade secrets misappropriation claims, and vacated the judgment and remanded for this Court to enter judgment in favor of STI on the breach of the Software Evaluation Agreement claim.[12]

In response to that ruling, the Court allowed MGMTL to file a Second Supplemental Memorandum in Support of Motion for Attorneys' Fees, seeking an additional $82,608.00 for fees incurred between May 2023 and September 2024.[13]  The Court also allowed STI to file an Opposition to the Motion,[14] and allowed MGMTL to file a Reply.[15]

---

[6] R. Doc. 347.
[7] R. Docs. 349 & 353.
[8] R. Doc. 354.
[9] R. Doc. 293.
[10] R. Doc. 301.
[11] *MGMTL, LLC v. Strategic Technology Institute, Inc.,* Case No. 23-30298, 2024 WL 3949073 (5th Cir. Aug. 27, 2024), *cert. denied sub nom. Strategic Tech. Inst. v. MGMTL, LLC,* Case No. 24-734, 2025 WL 581674 (Feb. 24, 2025).
[12] *Id.*
[13] *See* R. Docs. 358, 360, & 361.
[14] R. Docs. 360 & 365.
[15] R. Docs. 367, 368, & 369.

After careful consideration of the pleadings and the applicable law, the Report and Recommendation is **ADOPTED in part and MODIFIED in part,** as set forth herein.  Accordingly, the Motion is **GRANTED in part, as modified.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND[16]

This is a copyright infringement case concerning MGMTL's computer software application, Security Management and Reporting Tool or "SMART."  On July 28, 2020, MGMTL filed a Complaint in this Court against STI asserting claims of copyright infringement, breach of a Software Evaluation Agreement, breach of a Distributor Agreement, misappropriation of trade secrets under the Louisiana Uniform Trade Secrets Act ("LUTSA"), and misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA").[17]  After extensive motion practice, the matter went to trial before a jury on September 26, 2022.[18]  On the fifth day of trial, after MGMTL rested its case, STI orally moved for a Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50.[19]  The Court issued an oral Order deferring its ruling until after the jury returned with a verdict.[20]  The following day, after both STI and MGMTL rested their cases, STI re-urged its oral Motion for Judgment as a Matter of Law under Rule 50.[21]  The Court took the matter under advisement.[22]

---

[16] In the interest of judicial economy, and because the factual background of this case has been extensively detailed in several prior Orders (*See* R. Docs. 173, 175, 176, 187, 188, & 325) the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.
[17] R. Docs. 1 & 199.
[18] R. Doc. 251.
[19] R. Doc. 265 at p. 2.
[20] *Id*.
[21] R. Doc. 266.
[22] *Id*. at p. 2.

After a seven-day trial, the jury found that STI willfully infringed MGMTL's copyright interests in SMART and awarded MGMTL $150,000 in statutory damages.[23]  The jury further found that STI did not breach the Software Evaluation Agreement,[24] that STI breached the Distributor Agreement,[25] that STI willfully and maliciously misappropriated SMART under the LUTSA,[26] and that STI misappropriated SMART under the DTSA.[27]  The jury awarded MGMTL $30,000 on its breach of the Distributor Agreement claim, but awarded no damages on the LUTSA and DTSA claims.[28]  The Court issued an Order on October 5, 2022, giving MGMTL 10 days to submit a proposed judgment to the Court consistent with the verdict reached by the jury,[29] and setting a telephone status conference for October 21, 2022 to discuss MGMTL's proposed judgment.[30]  The Court continued the conference without date,[31] and a settlement conference was scheduled for November 4, 2022.[32]  According to a Minute Entry issued by the Magistrate Judge on November 4, 2022, settlement negotiations were "ongoing."[33]

MGMTL filed the instant Motion for Attorneys' Fees on March 17, 2023.[34]  On March 22, 2023, STI filed a motion seeking a briefing schedule to address (1) its oral

---

[23] R. Doc. 273.
[24] R. Doc. 273-1.
[25] R. Doc. 273-2.
[26] R. Doc. 273-3.
[27] R. Doc. 273-4.
[28] R. Doc. 273-2 at p. 2, R. Doc. 273-3 at p. 4, & R. Doc. 273-4 at p. 3.
[29] R. Doc. 269.
[30] R. Doc. 276.
[31] R. Doc. 277.
[32] R. Doc. 278.
[33] R. Doc. 279.  The Court notes that the Magistrate Judge who held that settlement conference was not the Magistrate Judge assigned to this case.  It is the Court's understanding that the parties reached out to the Magistrate Judge and requested a settlement conference.
[34] R. Doc. 281.

motion under Fed. R. Civ. P. 50; (2) entry of judgment; and (3) MGMTL's Motion for Attorneys' Fees, including whether the Motion should be stayed pending appeal.[35] The Court held a telephone status conference on March 31, 2023, during which the Court set a briefing schedule on STI's Rule 50 motion.[36] The Court held another telephone status conference to discuss STI's motion on April 12, 2023, which was continued until and concluded on April 13, 2023.[37] For the reasons stated during the conference, the Court overruled each of STI's objections to MGMTL's proposed final judgment, denied STI's request to stay MGMTL's Motion for Attorneys' Fees, and denied STI's Rule 50 motion.[38] The Court issued a Final Judgment on April 13, 2023, awarding judgment to MGMTL on the copyright infringement, breach of the Distributor Agreement, and the two misappropriation of trade secrets claims.[39] STI filed a notice of appeal on May 4, 2023.[40]

While the case was on appeal, the parties briefed MGMTL's Motion for Attorneys' Fees. MGMTL asserts that it is entitled to $1,327,984.50 for 4,381 hours spent litigating this "complex and hard-fought computer software case."[41] MGMTL claims that its fees were largely driven by STI's conduct and unsuccessful motion practice,[42] and MGMTL argues it is entitled to its attorney's fees as the prevailing party in this copyright infringement and misappropriation of trade secrets case.[43]

---

[35] R. Doc. 283.
[36] R. Doc. 287.
[37] R. Doc. 292.
[38] *Id*. *See* R. Doc. 307.
[39] R. Doc. 293.
[40] R. Doc. 301.
[41] R. Doc. 281-1 at p. 1.
[42] *Id*. at pp. 1 & 8–9.
[43] *Id*. at pp. 1, 7, & 9–10.

MGMTL contends that an attorney fee award need not be proportionate to the damages awarded,[44] and further asserts that its fees should not be reduced to exclude work performed on its unsuccessful claims because its copyright claim was interrelated with those claims.[45]  MGMTL argues that the fees sought are reasonable and appropriate for copyright infringement under *Fogerty v. Fantasy, Inc.* and *Johnson v. Georgia Highway Express*,[46] and MGMTL notes that it has exercised billing judgment by cutting at least 412 hours from its fee submission.[47]  MGMTL maintains that it is entitled to the fees sought, which will achieve the Copyright Act's goals of compensation and deterrence.[48]

In its Supplemental Memorandum, MGMTL seeks an additional $31,066 in attorney's fees that it incurred in March and April 2023 for 90.80 hours spent opposing STI's Rule 50 motion, opposing STI's efforts to stay resolution of MGMTL's Motion until after appeal, and responding to STI's multiple objections to MGMTL's proposed judgment.[49]

STI argues that MGMTL's request for $1,359,050.50 in attorney's fees is not reasonable because MGMTL rejected reasonable settlement offers and "chased" a $10 million verdict, but the jury only awarded MGMTL $150,000 in statutory damages for copyright infringement and awarded $0 for misappropriation of trade secrets.[50]

---

[44] *Id*. at pp. 11–12.
[45] *Id*. at pp. 13–15.
[46] *Id*. at pp. 15–25 (citing *Fogerty*, 510 U.S. 517, 534 n.19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); *Johnson*, 488 F.2d 714, 717–19 (5th Cir. 1974)).
[47] R. Doc. 281-1 at p. 19, n.88 (*citing* R. Doc. 281-2 at pp. 4–91).
[48] R. Doc. 281-1 at pp. 1, 11, 19, & 24.
[49] R. Doc. 298.
[50] R. Doc. 299 at p. 1.

STI asserts that while it "did not make a Rule 68 Offer of Judgment," it made good faith attempts to settle the case and MGMTL "rebuffed STI's settlement offers to pay the maximum statutory damages of $150,000 (plus reasonable fees)."[51] STI asserts that MGMTL pursued "fantastical damages" that were "concocted" by Jorge Menes, the creator of SMART, who opined that the fair market value or reasonable exclusive licensing fee for SMART was $7,650,000 to $89,870,000, despite the fact that there were no actual sales of SMART or of PASS, STI's version of SMART.[52] STI points out that while it successfully moved to exclude Menes' opinion on the fair market value of SMART,[53] MGMTL rebuffed STI's settlement offers and "gambled on a jury trial" for $10 million in damages.[54] STI argues this was a garden variety copyright case and that it reasonably disputed the copyrightability of SMART.[55] STI argues that the Court should award MGMTL $50,000 in attorney's fees, which is proportionate to MGMTL's success on its copyright claim.[56] Turning to the *Fogerty* factors, STI seems to assert that all three factors support a $50,000 fee award.[57] STI further asserts that MGMTL is not entitled to attorney's fees for its misappropriation of trade secrets claims because it was not awarded any damages on these claims and, therefore, it was not the prevailing party.[58]

---

[51] *Id*. at pp. 1–2 & 4 (*citing* R. Doc. 299-1).
[52] R. Doc. 299 at pp. 1 & 4.
[53] *See* R. Doc. 173.
[54] R. Doc. 299 at p. 3–5.
[55] *Id*. at pp. 5–7.
[56] *Id*. at p. 7.
[57] *Id*. at pp. 7–11.
[58] *Id*. at pp. 11–13.

Alternatively, STI argues that if the Court awards MGMTL more than $50,000 in attorney's fees, the Court should reduce the award for time spent on unsuccessful claims and theories, directing the Court to certain motions filed by MGMTL that "did not contribute to statutory damages."[59]  STI also asserts that the fee award calculated under the lodestar method should be reduced based upon the *Johnson* factors, namely the degree of success obtained by MGMTL and fee awards in similar cases.[60]  STI claims that further reductions are warranted for MGMTL's block billing, its billing for clerical work, and MGMTL's failure to exercise billing judgment.[61]

In response, MGMTL argues that it is the prevailing party on the copyright and misappropriation of trade secrets claims and that the fee reductions requested by STI are not warranted.[62]  MGMTL argues that the thrust of STI's Opposition brief is that MGMTL refused to settle early in the litigation, but MGMTL points out that STI relies upon an email its counsel sent four days before trial, more than two years into this litigation.[63]  MGMTL further asserts that STI offers no legal authority for reducing its fee award based upon unsuccessful motions and objections, and maintains that work performed on its breach of contract claims were intertwined with its copyright and misappropriation of trade secrets claims.[64]  MGMTL argues that STI's Opposition brief demonstrates why it had to spend the time it did to prosecute

---

[59] *Id*. at pp. 13–16.
[60] *Id*. at pp. 16–18.
[61] *Id*. at pp. 18–23.
[62] R. Doc. 306.
[63] *Id*. at pp. 1–2 & 7–10.
[64] *Id*. at pp. 4–7.

this case, and MGMTL maintains that the fees it seeks are reasonable under copyright law.[65]

On December 4, 2023, the assigned Magistrate Judge issued a Report and Recommendation, recommending that MGMTL's Motion for Attorneys' Fees be granted in part and that MGMTL be awarded a total of $616,334.60 in attorney's fees.[66]  Finding that MGMTL "prevailed on several of its claims,"[67] the Magistrate Judge found that a fee award was warranted under the three factors set forth in *Fogerty*, which bear on a district court's discretion to award attorney's fees in copyright cases.[68]  Addressing the second factor – motivation – the Magistrate Judge found that, "while MGMTL may not have prosecuted its claims in bad faith, it is patently clear that STI's motivation was to settle this matter as early as one year into this litigation," as "STI offered to settle the lawsuit for nearly the exact amount that MGMTL received from the jury on the claim for copyright infringement."[69]  The Magistrate Judge ultimately concluded that MGMTL was entitled to a an attorney fee award, but a reduced one, because "MGMTL's refusal of STI's settlement offer protracted this litigation (in which it ultimately received only what STI had originally offered), defeated the purpose of settlement, and increased litigation costs for all involved."[70]

---

[65] *Id*. at p. 10.
[66] R. Doc. 347.
[67] *Id*. at p. 5.  *See Id*. at p. 23 (finding that MGMTL prevailed on the breach of the Distributor Agreement claim); *Id*. at pp. 34–35 (finding that MGMTL "prevailed in part after three years").
[68] *Id*. at pp. 4–9 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)).
[69] R. Doc. 347 at p. 6 (*citing* R. Docs. 133 & 299-1).
[70] R. Doc. 347 at pp. 7 & 9.

The Magistrate Judge then used the lodestar method to calculate a reasonable fee award.[71]  The Magistrate Judge first determined that the hourly rates sought by MGMTL's four attorneys were unreasonable and reduced them according to the prevailing market rates in the Eastern District of Louisiana.[72]  Turning to the reasonable hours expended by MGMTL, the Magistrate Judge largely rejected STI's arguments in support of a fee reduction, but concluded that a 30% reduction was warranted based upon the partial success obtained by MGMTL, a 10% reduction was warranted for MGMTL's block billing, and a 5% reduction was warranted for MGMTL's billing of clerical work.[73]  The Magistrate Judge determined that no further increase or reduction in the fee award was warranted by any of the *Johnson* factors, and that $592,785.60 was a reasonable fee award under the lodestar method after applying a 45% reduction.[74]  The Magistrate Judge further found that MGMTL was entitled to attorney's fees for the additional work its counsel performed in March and April 2023, as the hours worked were reasonable.[75]  Applying the reduced hourly rates to the additional hours billed, the Magistrate Judge found that MGMTL was entitled to an additional $23,549.00 in attorney's fees, for a total of $616,334.60.

MGMTL and STI both filed objections to the Report and Recommendation. MGMTL argues that the Magistrate Judge erred in applying a 30% reduction to the fee award  based upon the mistaken belief that STI offered to settle the matter early

---

[71] *Id*. at pp. 10–11.
[72] *Id*. at pp. 11–19.
[73] *Id*. at pp. 20–35.
[74] *Id*. at pp. 35–36.
[75] *Id*. at pp. 36–37.

on for what MGMTL ultimately recovered after trial.[76]  MGMTL asserts that there is no evidence in the record to support this finding.[77]  STI asserts three objections to the Report and Recommendation, arguing that the Magistrate Judge: (1) should have reduced the reasonable hours expended by MGMTL to exclude unnecessary work and unsuccessful filings; (2) should have considered the twelfth *Johnson* factor – fee awards in similar cases, which is not subsumed in the lodestar calculation; and (3) should have reduced the fee award by at least 75% to 85% for rejecting STI's reasonable pretrial offers to settle.[78]  Alternatively, STI asserts that this Court should exercise its discretion to reduce MGMTL's fee award by 85% based upon MGMTL's limited success, proving only 1.8% of the $10 million sought in damages.[79]  MGMTL filed an Opposition to STI's objections, pointing out that STI failed to rebut its arguments regarding the Magistrate Judge's mistake regarding an early settlement offer, and further asserting that STI's objections should be overruled.[80]

Seven months later, the Fifth Circuit issued an opinion on STI's appeal, affirming in part, reversing in part, and vacating in part the Final Judgement issued by this Court in favor of MGMTL.[81]  The Fifth Circuit affirmed the judgment in favor of MGMTL on the copyright infringement and breach of the Distributor Agreement claims, but found that judgment should have been entered for STI on the breach of

---

[76] R. Doc. 349.

[77] *Id*. at pp. 2–4 (*citing* R. Docs. 133 & 299-1).

[78] R. Doc. 353.

[79] *Id*. at pp. 9–10.

[80] R. Doc. 354.

[81] *MGMTL, LLC v. Strategic Technology Institute, Inc.,* Case No. 23-30298, 2024 WL 3949073 (5th Cir. Aug. 27, 2024).

the Software Evaluation Agreement claim.[82]  The Fifth Circuit also reversed the judgment for MGMTL on the misappropriation of trade secrets claims brought under the LUTSA and the DTSA, finding that proof of damages is an element of both claims and that while the jury found that STI had misappropriated SMART, the jury found that MGMTL failed to prove any damages.[83]  As such, the Fifth Circuit vacated the judgment in part and remanded the matter for this Court to enter judgment in favor of STI on the breach of the Software Evaluation Agreement claim.[84]

In light of that ruling, the Court held a telephone status conference on October 4, 2024, during which it granted MGMTL's request to file a Second Supplemental Memorandum in support of its Motion for Attorneys' Fees.[85]  In the Second Supplemental Memorandum, MGMTL seeks an additional $82,608 for fees incurred from May 2023 to September 2024 for 240.30 hours spent litigating its Motion for Attorneys' Fees, litigating its Bill of Costs, and opposing STI's appeal.[86]  STI opposes the Second Supplemental Memorandum, asserting that the Court should deny MGMTL's Motion for Attorneys' Fees or significantly reduce MGMTL's request, including the fees requested in the Second Supplemental Memorandum, because the Fifth Circuit determined that MGMTL was even less successful than the Magistrate Judge had assumed at the time of the Report and Recommendation.[87]  STI also asserts that the hourly rates in the Second Supplemental Memorandum should be

---

[82] *Id.*, Case No. 23-30298, 2024 WL 3949073 at *3–4.
[83] *Id.* at *3.
[84] *Id.* at *4.
[85] R. Docs. 358, 360, & 361.
[86] R. Doc. 361.
[87] R. Doc. 365 at pp. 1–4.

reduced to the reasonable hourly rates set forth in the Report and Recommendation, and that the Court should either apply the same 45% reduction or an 85% reduction to the reasonable hours expended for the same reasons set forth in STI's Opposition to the Motion for Attorneys' Fees.[88]  STI further asserts that the Fifth Circuit determined that each party would bear its own costs on appeal, and that MGMTL's request for costs on appeal should be denied.[89]

In response, MGMTL points out that STI did not challenge the billing entries, which should be accepted as unopposed.[90]  MGMTL also asserts that STI repeats the same false narrative regarding its settlement offers and MGMTL maintains that there is no proof in the record to support that narrative.[91]  MGMTL argues that STI's contention that it is not entitled to attorney's fees is both waived and incorrect.[92]  MGMTL further claims that the increased hourly rates sought for the work performed in 2023 and 2024 is supported by recent case law from this Court.[93]  Finally, MGMTL asserts that it is not requesting costs and that it is only seeking additional attorney's fees.[94]

## II.    LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(B), the district court may refer dispositive matters to a magistrate judge, who then issues a report and recommendations.[95]  Pursuant to

---

[88] *Id*. at pp. 4–5.
[89] *Id*. at pp. 5–6.
[90] R. Doc. 369 at pp. 1 & 2.
[91] *Id*. at pp. 2–3.
[92] *Id*. at pp. 4–5.
[93] *Id*. at pp. 5–6.
[94] *Id*. at pp. 6–7.
[95] 28 U.S.C. § 636(b)(1)(C).

Fed. R. Civ. P. 54(d)(2)(D), a district court may refer a motion for attorney's fees to a magistrate judge "as if it were a dispositive pretrial matter."[96]  The district court must review *de novo* those portions of the report and recommendations to which a specific objection is made.[97]  The Court reviews all other portions of the report and recommendations for plain error.[98]  "The Fifth Circuit has oft-repeated that a request for attorneys' fees should not spawn ancillary major litigation."[99]

Here, MGMTL objects to the Magistrate Judge's 30% reduction of the reasonable hours expended and claims that it was based on the mistaken belief that STI offered to settle the matter early on for the same amount that MGMTL ultimately recovered after trial.  STI objects to the Magistrate Judge's finding that a reduction was not warranted for MGMTL's unnecessary work and unsuccessful filings, the Magistrate Judge's failure to consider fee awards in similar cases under *Johnson*, and the Magistrate Judge's failure to reduce MGMTL's fee award by 75% to 85% for MGMTL's rejection of reasonable settlement offers.  As such, the Court must conduct a *de novo* review of the Magistrate Judge's determinations on those issues.  The remainder of the Report and Recommendation will be reviewed for plain error.

---

[96] Fed. R. Civ. P. 54(d)(2)(D).

[97] 28 U.S.C. § 636(b)(1).

[98] *See United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989); Fed. R. Civ. P. 72(b) (Advisory Committee Notes, 1983 Addition); 28 U.S.C. § 636(b)(1)(A).

[99] *Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 696 (E.D. La. 2001) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed. 40 (1983); *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 379 (5th Cir. 1990)).

## III.    ANALYSIS

### A. Entitlement to Attorney's Fees for Copyright Infringement[100]

It is well settled that the party seeking attorney fees bears the burden of establishing entitlement to an award.[101]  "The Copyright Act of 1976, 17 U.S.C. § 505, provides in relevant part that in any copyright infringement action 'the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs.'"[102] The Supreme Court has held that, "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."[103]  The Fifth Circuit has likewise recognized that the Copyright Act gives courts discretion to award "reasonable" attorney's fees to the "prevailing parties."[104]  "Such fee awards encourage the types of lawsuits that promote the statutes' purposes, i.e., 'encouraging and rewarding authors' creations while also enabling others to build on that work.'"[105]

While fee awards in copyright cases are not automatic in this Circuit, awarding fees to the prevailing party "is the rule rather than the exception and should be

---

[100] While the Court's Final Judgment awarded MGMTL its costs and reasonable attorney's fees (R. Doc. 293), the Court will analyze this issue because MGMTL has lodged an objection to the Magistrate Judge's analysis of one of the *Fogerty* factors (R. Doc. 349).  The Court notes that STI has also argued in its Opposition brief to MGMTL's Second Supplemental Memorandum that MGMTL is not entitled to an award of attorney's fees (R. Doc. 365 at p. 4).

[101] *Amawi v. Paxton*, 48 F.4th 412, 416 (5th Cir. 2022) (citing *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941).

[102] *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 519, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (*quoting* 17 U.S.C. § 505).

[103] *Fogerty*, 510 U.S. at 534, 114 S.Ct. 1023.

[104] *Digital Drilling Data Sys., LLC v. Petrolink Serv., Inc.*, 965 F.3d 365, 385 (5th Cir. 2020).

[105] *Id*. (quoting *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204, 136 S.Ct. 1979, 1986, 195 L.Ed.2d 368 (2016)).

awarded routinely."[106]  Still, "[i]t is a matter of the district court's discretion."[107]  The Supreme Court has noted with approval "several nonexclusive factors" that may be used to guide a court's discretion, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[108]  These are referred to as the *Fogerty* factors.  The Supreme Court has instructed that while objective reasonableness is not the controlling factor in assessing fee awards, it carries significant weight.[109]

Here, MGMTL asserts that it is the prevailing party on its copyright infringement and misappropriation of trade secrets claims.[110]  STI argues that MGMTL did not prevail on its misappropriation of trade secrets claims because it was not awarded any damages on these claims.[111]  While STI does not explicitly address whether MGMTL was the prevailing party on its copyright infringement claim in its Opposition brief, STI seems to concede as much by addressing the *Fogerty* factors as if MGMTL was the prevailing party on its copyright claim.[112]  Moreover, STI admits that it "lost" with respect to the copyrightability of the SMART software.[113]

---

[106] *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 326 (5th Cir. 2022) (quoting *Virgin Records Am, Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008)) (internal quotation marks omitted).
[107] *Bell*, 27 F.4th at 326 (citing *Fogerty*, 510 U.S. at 533, 114 S.Ct. 1023).
[108] *Fogerty*, 510 U.S. at 534, n.19, 114 S.Ct. 1023 (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)) (internal quotation marks omitted).
[109] *Kirtsaeng*, 579 U.S. at 207–09, 136 S.Ct. at 1988–89.
[110] R. Doc. 281-1 at pp. 9–10.
[111] R. Doc. 299 at pp. 11–13.
[112] *Id*. at pp. 7–11.
[113] *Id*. at p. 5.

In the Report and Recommendation, the Magistrate Judge seems to have found that MGMTL was the prevailing party on its copyright claim.[114]  Neither party objected to this finding,[115] and the Court finds no error.  The Court finds that MGMTL was the prevailing party on its copyright infringement claim, but not on its misappropriation of trade secrets claims.  Importantly, on appeal, the Fifth Circuit affirmed this Court's judgment in favor of MGMTL on the copyright infringement and breach of the Distributor Agreement claims, but reversed the judgment for MGMTL on the two misappropriation of trade secrets claims, holding that, "the jury's finding that MGMTL proved no damages means that MGMTL failed to prove its trade secrets misappropriation claims.  Therefore, judgment should have been entered for STI."[116]  The case was remanded for this Court to enter judgment in favor of STI on the breach of the Software Evaluation Agreement claim.[117]  Pertinent to the instant Motion, the Fifth Circuit has held that whether a party prevailed on any non-copyright claim is irrelevant to the prevailing party analysis under the Copyright Act.[118]  According to the Fifth Circuit, "a litigant may be a prevailing party under § 505 [of the Copyright Act] even if the party fails to prevail 'in full' on its *copyright* claims."[119]  Because the Court finds that MGMTL was the prevailing party on its copyright infringement

---

[114] R. Doc. 347 at pp. 5 & 34–35.

[115] *See, generally*, R. Docs. 349, 353, & 354.

[116] *MGMTL, LLC v. Strategic Technology Institute, Inc.,* Case No. 23-30298, 2024 WL 3949073, at *3 (5th Cir. Aug. 27, 2024).

[117] *Id.*

[118] *Digital Drilling Data Sys., LLC v. Petrolink Serv., Inc.*, 965 F.3d 365, 386 (5th Cir. 2020); *See Balsley v. LFP, Inc.*, 691 F.3d 747, 772–74 (6th Cir. 2012) (affirming fee award to party who prevailed on one copyright claim, agreed to dismiss two other copyright claims without prejudice, and lost on four state law claims).

[119] *Digital Drilling*, 965 F.3d at 386 (emphasis in original).

claim, the Court will review the Magistrate Judge's analysis of the three *Fogerty* factors used to guide the courts' discretion in awarding attorney's fees in copyright infringement claims.

### i. Frivolousness and Objective Reasonableness

Courts in this Circuit typically consider the frivolousness and objective reasonableness factors together.[120]  "Generally, courts have held that a copyright lawsuit was frivolous if they are so meritless that there is little chance of success on the claim."[121]  Likewise, "'[o]bjective unreasonableness' is generally used to describe claims that have no legal or factual support."[122]  "There is a difference between a suit that is 'without merit' and one that is 'patently frivolous.'"[123]  Further, "[t]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act."[124] "A key function of copyright law's fee-shifting provision is encouraging parties to

---

[120] *Causi v. Family First Sports Firm, LLC*, Civ. A. No. 4:23-cv-2578, 2025 WL 220043, at *2 (S.D. Tex. Jan. 16, 2025) (Hanen, J.); *Novedea Sys., Inc. v. Colaberry, Inc.*, Civ. A. No. 6:20-cv-180-JDK, 2022 WL 4360541, at *9 (E.D. Tex. Sept. 20, 2022) (Kernodle, J.); *Advanta-STAR Automotive Research Corp. of America v. DealerCMO, Inc.*, Civ. A. No. 20-1150, 2022 WL 179466, at *10 (E.D. La. Jan. 20, 2022) (Vance, J.); *Nola Spice Designs, LLC v. Haydel Enterprises, Inc.*, Civ. A. No. 12-2515, 2013 WL 5329398, at *2 (E.D. La. Sept. 20, 2013) (Barbier, J.).

[121] *Broadcast Music, Inc. v. C.B.G., Inc.*, Civ. A. No. 11-cv-40142-FDS, 2014 WL 4656879, at *2 (D. Mass. Sept. 12, 2014) (Hillman, J.) (citing *Garcia-Goyco v. Law Env't. Consultants, Inc.*, 428 F.3d 14 (1st Cir. 2005); *Applied Innovations, Inc. v. Regents of the Univ. of Minnesota*, 876 F.2d 626 (8th Cir. 1989)).

[122] *Collins v. Doe*, Civ. A. No. H-10-2882, 2013 WL 2896822, at *6 (S.D. Tex. June 12, 2013) (Rosenthal, J.) (quoting *Viva Video, Inc. v. Cabrera*, 9 Fed.Appx. 77, 80 (2d Cir. 2001)) (internal quotation marks omitted).

[123] *Collins*, Civ. A. No. H-10-2882, 2013 WL 2896822 at *6 (citing *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 382 n.23 (5th Cir. 2004) *abrogated on other grounds* by *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010)).

[124] *Collins*, Civ. A. No. H-10-2882, 2013 WL 2896822 at *6 (quoting *Matthew Bender & Co. v. West Publishing Co.*, 240 F.3d 116, 112 (2d Cir. 2001)) (internal quotation marks omitted).

litigate strong positions, either as a plaintiff or defendant, and discouraging parties from commencing or settling nuisance suits."[125]

The Magistrate Judge found no frivolousness or objective unreasonableness by MGMTL or STI.[126]  The Magistrate Judge pointed out that MGMTL met its burden of proof on its copyright infringement and breach of the Distributor Agreement claims and was awarded damages on both claims.[127]  The Magistrate Judge also found that STI's defenses were not objectively unreasonable or frivolous, as STI "defeated MGMTL's overreaching damages request under the Copyright Act" and proved that MGMTL failed to meet its burden of proof on its remaining claims.[128]  As such, the Magistrate Judge found these two *Fogerty* factors weighed in favor of awarding MGMTL its attorney's fees.[129]  Neither party has objected to the Magistrate Judge's determination regarding these two factors, and the Court finds no error in this determination.  The Court, having presided over the entirety of the matter, agrees that neither party advanced a frivolous or objectively unreasonable claim or defense. This was a hard-fought case in which MGMTL was successful on two of the five claims it asserted against STI, including the overarching copyright infringement claim.  STI likewise presented meritorious defenses to three of MGMTL's claims, including the two misappropriation of trade secrets claims.  As such, the Court finds that these two factors weigh in favor of a fee award for MGMTL.

---

[125] *Novedea*, Civ. A. No. 6:20-cv-180-JDK, 2022 WL 4360541 at *9 (citing *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 209, 136 S.Ct. 1979, 195 L.Ed.2d 368 (2016)).
[126] R. Doc. 347 at p. 5.
[127] *Id.*
[128] *Id.*
[129] *Id.*

ii.    <u>The Parties' Motivation</u>

The next factor the Court must consider in exercising its discretion to award attorney's fees is the parties' motivation.  "In evaluating this factor, other circuits have considered: (1) the defendant's status as an innocent, rather than a willful or knowing, infringer; (2) the plaintiff's prosecution of the case in bad faith; and (3) the defendant's good faith attempt to avoid infringement." [130]  The Magistrate Judge found that the jury concluded that STI was a willful and knowing infringer and that there was no good faith attempt by STI to avoid infringement in this case. [131]  Neither party objects to those findings and the Court finds no error.

The Magistrate Judge further found that while MGMTL did not pursue its claim in bad faith, "it is patently clear that STI's motivation was to settle this matter as early as one year into this litigation." [132]  Relying on a minute entry from a settlement conference held on June 8, 2021 [133] and an email that was sent by STI's counsel to MGMTL's counsel on September 22, 2022, [134] the Magistrate Judge found that, "STI offered to settle the lawsuit for nearly the exact amount that MGMTL received from the jury on the claim for copyright infringement," since "STI offered to pay the statutory cap of $150,000.00 plus 'reasonable' fees and costs." [135]  The Magistrate Judge further found that, "MGMTL refused the offer and continued to argue that it was entitled to $10 million in damages (despite the statutory cap)," but

---

[130] *Collins v. Doe*, Civ. A. No. H-10-2882, 2013 WL 2896822, at *7 (S.D. Tex. June 12, 2013) (citing *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1583 (Fed. Cir. 1992)).
[131] R. Doc. 347 at p. 6 (*citing* R. Doc. 275-1).
[132] *Id*. (*citing* R. Docs. 133 & 299-1).
[133] R. Doc. 133.  The Complaint was filed on July 28, 2020.  *See* R. Doc. 1.
[134] R. Doc. 299-1.
[135] R. Doc. 347 at p. 6 (*citing* R. Doc. 299-1).

that the jury only awarded MGMTL $150,000 for copyright infringement and $30,000 for one of the breach of contract claims.[136]  The Magistrate Judge seemed to agree with STI that MGMTL's unreasonable demand for damages weighed in favor of limiting its attorney fee award, as the Magistrate Judge concluded that, "MGMTL's refusal of STI's settlement offer protracted this litigation (in which it ultimately received only what STI had originally offered), defeated the purpose of settlement, and increased litigation costs for all involved."[137]  As such, the Magistrate Judge was "skeptical of awarding MGMTL such exorbitant fees, particularly in light of the amount of its recovery."[138]

MGMTL objects to the Magistrate Judge's finding regarding its motivation, arguing that there is no evidence in the record to support STI's contention that it offered to settle the case early on for the same amount of damages that MGMTL was awarded by the jury.[139]  MGMTL points out that the minute entry from the June 8, 2021 settlement conference reflects only that, "[n]egotiations were productive but unfortunately no resolution of Plaintiff's claims could be achieved at this time. Further negotiations will proceed telephonically."[140]  MGMTL emphasizes that there is nothing in the June 8, 2021 minute entry memorializing a settlement offer, and STI has offered no proof that it communicated any offer to MGMTL at that time.[141] MGMTL then directs the Court to an internal email sent by MGMTL's lead counsel

---

[136] R. Doc. 347 at p. 6 (*citing* R. Doc. 318 at p. 165; R. Doc. 273; & R. Doc. 273-2).
[137] R. Doc. 347 at pp. 6–7.
[138] *Id*. at p. 7.
[139] R. Doc. 349.
[140] *Id*. at p. 3 (*quoting* R. Doc. 133) (internal quotation marks omitted).
[141] R. Doc. 349 at p. 3.

to MGMTL's litigation team on that same day, June 8, 2021, stating that the Magistrate Judge had "shut down" the negotiations and that, "[t]he other side said that the only thing they were even considering was statutory damages, and they couldn't even get their client to agree to that."[142]  MGMTL further points out that the email submitted by STI that included an offer to settle for $150,000 plus reasonable attorneys' fees and reimbursement of costs, which was relied upon by the Magistrate Judge, was sent by defense counsel four days before trial and over two years into litigation.[143]  MGMTL strenuously insists that STI did not offer to settle for statutory damages early in the case.[144]  MGMTL argues that the Magistrate Judge's 30% reduction of the fee award is based upon its misunderstanding of the settlement posture of this case and is not supported by the record.[145]

In its Objections to the Report and Recommendation, STI merely repeats its contention that MGMTL "obtained little more from its jury verdict than what the defendant offered in settlement long before trial."[146]  STI relies upon the Magistrate Judge's "personal involvement with the case," including in the June 8, 2021 settlement conference, as well as a statement in the September 22, 2022 email that STI's counsel had previously "proposed a settlement that would assume maximum statutory damages of $150k plus a reasonable attorney's fee and reimbursement of costs."[147]  STI argues that, "MGMTL deliberately rejected reasonable settlement

---

[142] *Id.* (*quoting* R. Doc. 349-1) (internal quotation marks omitted).
[143] R. Doc. 349 at p. 3 (*citing* R. Doc. 299-1).
[144] R. Doc. 369 at p. 3.
[145] R. Doc. 349 at p. 6.
[146] R. Doc. 353 at p. 2.  *See Id.* at pp. 4–5.
[147] *Id.* at p. 8 (*quoting* R. Doc. 299-1 at pp. 1–2).

offers from STI, choosing instead to stand on its dreams of proving $10,000,000 or more in damages at trial."[148]  STI asserts that MGMTL "gambled and lost" and that its lawyers should not "be rewarded with a windfall fee."[149]

The Court finds no error in the Magistrate Judge's finding that STI was a willful and knowing infringer and that STI made no good faith attempt to avoid infringement, as those findings are clearly supported by the jury's findings.[150]  The Court further finds, however, that the record evidence does not support STI's claim that it offered to settle the case "long before trial" for the same amount that MGMTL was awarded by a jury.[151]  As MGMTL correctly points out, the June 8, 2021 minute entry is understandably devoid of any information regarding settlement offers made by STI or rejected by MGMTL,[152] which is the general practice in this district.  While the Magistrate Judge conducted the settlement conference, the Magistrate Judge did not provide any information in the Report and Recommendation regarding the settlement discussions that took place beyond referencing the minute entry.[153]  As MGMTL points out, STI also admitted in its Opposition brief that it "did not make a Rule 68 Offer of Judgment" to MGMTL.[154]

The Court further finds that the email relied upon so heavily by both the Magistrate Judge and STI, in which STI offered to settle the case for "(statutory damages + reasonable attorney's fee[])" was sent to MGMTL's counsel on Thursday,

---

[148] R. Doc. 353 at p. 9.
[149] *Id.*
[150] R. Doc. 273 at pp. 1, 5, & 7.
[151] R. Doc. 353 at p. 2.
[152] R. Doc. 133.
[153] R. Doc. 347 at pp. 6–7.
[154] R. Doc. 299 at p. 1.

September 22, 2022, a mere four days before the September 26, 2022 trial date, over two years after the filing of the lawsuit, and after extensive motion practice.[155]  As MGMTL repeatedly points out in its briefs, STI has offered no other evidence to substantiate its claim that it offered to settle this case early on in the litigation for the same amount that MGMTL ultimately recovered other than the email which references "the last time we talked about this (and earlier with Judge North)."[156]  STI has not provided any support, such as a confirmation or follow up email, which puts a time frame on the time period STI is referencing.  The Court would be speculating if it put that time frame the day before, when the Court held an in-person status conference with counsel,[157] three months earlier when the Court held both a telephone and a separate zoom status conference with counsel,[158] several months earlier when the parties conferred to provide the Court with the Joint Proposed Pretrial Order,[159] or whether it was early in the case.  The Court finds it inappropriate to speculate; instead, it relies on the record evidence.  The Court therefore rejects STI's assertion that its motivation was to settle this matter early and for nearly the same amount that MGMTL received from the jury.  STI has failed to produce any record evidence supporting that assertion.  Accordingly, the Court sustains MGMTL's objection to the portion of the Report and Recommendation in which the Magistrate Judge determined that MGMTL's motivation weighed in favor

---

[155] R. Doc. 251.
[156] *See, generally*, R. Docs. 299 & 353.
[157] *See* R. Doc. 246.
[158] *See* R. Docs. 238 & 240.
[159] *See* R. Doc. 199.

of a fee award, although a reduced one, based upon MGMTL's refusal to settle early in the litigation.

While the Court is satisfied that there was no bad faith on the part of MGMTL in bringing this lawsuit, the Court questions MGMTL's strategy in continuing to pursue a multi-million dollar verdict on its copyright claim without proof of damages. The Court notes that, at trial, MGMTL had no evidence of actual sales of its SMART software or of STI's PASS software. Several months before trial, the Court issued an Order and Reasons granting STI's request to exclude the opinion testimony of Jorge Menes, SMART's creator, regarding his calculation of the fair market value or reasonable exclusive licensing fee for SMART as between $7,650,000 and $89,870,000.[160] The Court found that Menes was not qualified to offer such opinions and that there was no "concrete" evidence to support his opinions.[161] Despite this ruling, the revised Joint Pretrial Order[162] and MGMTL's opening statement at trial make clear that MGMTL pursued "a multi-million dollar verdict"[163] based upon the same information used by Menes to support the opinions that the Court had previously excluded. During opening statements, MGMTL told the jury that Menes and his uncle agreed that they would not have sold SMART "for less than $10 million."[164] STI objected to Menes offering testimony to support this statement, claiming this amount was never previously disclosed to STI.[165] The Court, after

---

[160] R. Doc. 173.
[161] *Id.* at pp. 33–34.
[162] R. Doc. 199 at p. 9.
[163] R. Doc. 318 at pp. 144–45 & 170. *See Id.* at pp. 152 & 164–65.
[164] *Id.* at pp. 152 & 165.
[165] *Id.* at pp. 290–91.

reviewing its prior Order and Reasons excluding Menes' testimony regarding the fair market value of SMART, found that MGMTL failed to produce any evidence showing that it had previously disclosed that Menes had a discussion with his uncle about not selling SMART for less than $10 million, and the Court issued an order prohibiting Menes from offering such testimony at trial.[166]

As noted earlier, the Court does not find any bad faith by MGMTL in bringing the lawsuit; the Court has already determined that the claims were objectively reasonable. The Court questions MGMTL's strategy of continuing to pursue a multi-million dollar verdict and the refusal to settle, even if the settlement offer was made only four days before the start of the trial. While questioning MGMTL's strategy of continuing to pursue such a high damage award without concrete evidence of damages, the Court balances that against STI's willful infringement of MGMTL's copyright interests and STI's failure to make a good faith attempt to avoid infringement. In doing so, the Court finds that the motivation factor is weighs in favor of an award of attorney's fees. To be clear, even if the Court were to consider MGMTL's questionable trial strategy as negatively impacting its motivation analysis, the Court still considers the other components of motivation—STI's status as a willful or knowing infringer, and the lack of evidence of STI's good faith attempt to avoid infringement—to weigh in favor of an award of attorney's fees to MGMTL.

---

[166] R. Doc. 319 at pp. 11–12.

### iii.    The Need to Advance Considerations of Compensation and Deterrence

The fourth and final *Fogerty* factor is the need in particular circumstances to advance the considerations of compensation and deterrence.  "Compensation is available when requiring a party to bear its own costs and fees would run afoul of the purpose of the Copyright Act to promote the progress of science and useful arts."[167] "Compensation works hand-in-hand with deterrence.  Courts award fees to deter future plaintiffs from bringing similar frivolous or unreasonable claims."[168]  Further, "the smaller the damages, provided there is a real, and especially a willful, infringement, the stronger the case for an award of attorneys' fees . . . ."[169]  An attorney fee award "helps to ensure that all litigants have equal access to the courts to vindicate their statutory rights.  It also prevents copyright infringements from going unchallenged where the commercial value of the infringed work is small and there is no economic incentive to challenge an infringement through expensive litigation."[170]  According to the Supreme Court, "[i]t is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent . . . ."[171]

---

[167] *Spear Marketing, Inc. v. Bancorpsouth Bank*, Civ. A. No. 3:12-CV-3583, 2016 WL 193586, at *7 (N.D. Tex. Jan. 14, 2016) (Boyle, J.) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 529, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)).

[168] *Spear Marketing*, Civ. A. No. 3:12-CV-3583, 2016 WL 193586 at *8 (citing *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006)).

[169] *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004) (quoting *Gonzales v. Transfer Technologies, Inc.*, 301 F.3d 608, 610 (7th Cir. 2002)) (internal quotation marks omitted).

[170] *Quinto v. Legal Times of Washington, Inc.*, 511 F.Supp. 579, 581 (D.D.C. 1981).

[171] *Fogerty*, 510 U.S. at 529, 114 S.Ct. 1023 (*quoting* W. Strauss, Damage Provisions of the Copyright Law, Study No. 31 (H. Judiciary Comm. Print 1960)).

The Court finds that a fee award in this case would advance the purpose behind the Copyright Act, compensating MGMTL for protecting its copyright interests and deterring STI from future infringement. While MGMTL recovered the statutory cap of $150,000 on its copyright claim, the jury found that STI intentionally infringed its copyright interests. Compensating MGMTL for litigating this matter would serve to protect the functions of copyright law. There also appears to be a need for deterrence, as STI listed the PASS software for sale on its government-wide GSA contract, including for immediate purchase on the GSA website during the pendency of this case,[172] and STI is willing to engage in expensive litigation to protect itself, as shown by the fact that it spent $3 million defending this lawsuit.[173]

    iv.   <u>Balancing the *Fogerty* Factors</u>

After considering the four *Fogerty* factors in light of the Fifth Circuit's "discretionary but routinely awarded" standard, the Court finds that MGMTL is entitled to attorney's fees under the Copyright Act. While MGMTL was only successful on two of its five claims, its success on the copyright infringement claim shows that it was not frivolous or objectively unreasonable. And while the parties' motivation somewhat cuts both ways, the jury's finding that STI was a willful and knowing infringer and that there was no good faith attempt by STI to avoid infringement in this case compels that factor to fall in favor of awarding attorney's fees. Finally, considerations of compensation and deterrence warrant an award of

---

[172] *See* R. Doc. 334-18 at p. 52; R. Doc. 334-19.

[173] R. Doc. 321 at p. 53. *See Nola Spice Designs, LLC v. Haydel Enterprises, Inc.*, Civ. A. No. 12-2515, 2013 WL 5329398, at *1 (E.D. La. Sept. 20, 2013).

attorney's fees. As such, MGMTL is entitled to an award of the reasonable attorney's fees incurred in pursuing its copyright infringement claim.

## B. Calculating a Reasonable Fee Under the Lodestar Method

As recognized by the Magistrate Judge, the Fifth Circuit applies the lodestar method to calculate reasonable attorney's fees.[174] "The lodestar is computed by multiplying 'the reasonable number of hours expended on the litigation' by 'the reasonable hourly rates for the participating lawyers.'"[175] The lodestar method "is presumed to yield a reasonable fee but may be adjusted up or down if the twelve *Johnson* factors show exceptional circumstances warranting a departure."[176] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[177]

---

[174] *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996).

[175] *ADB Com. Constr. (Louisiana) LLC v. St. Charles Housing LP*, Civ. A. No. 2:22-CV-01083, 2023 WL 8263433, at *1 (W.D. La. Nov. 29, 2023) (Cain, J.) (quoting *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)).

[176] *ADB Com. Constr.*, Civ. A. No. 2:22-CV-01083, 2023 WL 8263433 at *1 (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

[177] *Johnson*, 488 F.2d at 717–19.

The Fifth Circuit has held that, "of the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel."[178]  The Fifth Circuit, however, has also held that four of the *Johnson* factors, including the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained, are presumably fully reflected and subsumed in the lodestar amount and can only be used to support an upward adjustment in "rare and exceptional cases."[179]

### i.    Reasonable Hourly Fees

The Fifth Circuit has held that, "reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant community."[180]  Courts should consider "the prevailing market rate for attorneys of comparable experience in cases of similar complexity.  Satisfactory evidence of the requested rate 'should include declarations or evidence of rates actually billed and paid by plaintiff's counsel; rates charged by attorneys in similar lawsuits; and the relative skill of the attorney involved.'"[181]  Further, "[t]he relevant legal market is the community where the

---

[178] *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Von Clark v. Butler,* 916 F.2d 255, 258 (5th Cir. 1990)).

[179] *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993) (citation omitted); *Heidtman v. Cnty. Of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986)) (internal quotation marks omitted).  *See Cajun Services Unlimited, LLC v. Benton Energy Service Co.*, Civ. A. No. 17-491 c/w 18-5630 and 18-5932, 2020 WL 375596, at *8 (E.D. La. Jan. 23, 2020) (Ashe, J.) (citing authority).

[180] *McClain v. Lufkin Industries, Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)) (internal quotation marks omitted).

[181] *White v. Imperial Adjustment Corp.*, Civ. A. No 99-3804, 2005 WL 1578810, at *5 (E.D. La. June 28, 2005) (Engelhardt, J.) (quotation omitted).

district court sits."[182]  "An attorney's requested hourly rate is prima facie reasonable when she requests that the lodestar be computed at her 'customary billing rate,' the rate is within the range of prevailing market rates and the rate is not contested."[183] As recognized by another Section of this Court, "[p]revailing market rates in this community generally range from $200 to $400 per hour depending on the attorney's level of experience."[184]  Where, like here, a party does not offer affidavits from other attorneys in the district regarding the prevailing market rate, the Fifth Circuit has recognized that the district court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value."[185]

While STI did not challenge the hourly rates sought by MGMTL's four attorneys,[186] the Magistrate Judge found that the rates requested did not reflect the prevailing rates in this district and reduced them accordingly.[187]  As to Harold Flanagan, an attorney with 28 years of experience, MGMTL sought an hourly rate of $475 in 2020, $490 in 2021, and $520 in 2022,[188] but the Magistrate Judge found that a reasonable hourly rate for someone with that experience in this community is $450

---

[182] *White*, Civ. A. No 99-3804, 2005 WL 1578810 at *5 (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)).

[183] *White*, Civ. A. No 99-3804, 2005 WL 1578810 at *5 (quoting *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)).

[184] *Nelson v. Constant*, Civ. A. No. 17-14581, 2021 WL 76407, at *3 (E.D. La. Jan. 8, 2021) (van Meerveld, M.J.) (citing authority).

[185] *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940) (citing authority).

[186] R. Doc. 299 at p. 17 ("STI does not quarrel with rates or qualifications.").

[187] R. Doc. 347 at pp. 11–19.

[188] R. Doc. 281-2 at p. 2.

in 2020, $465 in 2021, and $480 in 2022.[189]  Neither party has objected to this finding, and the Court finds no error.[190]  For Camille Gauthier, an attorney with 11 years of experience, MGMTL sought hourly rates of $350 in 2020, $375 in 2021 and 2022, and $390 for 2023,[191] but the Magistrate Judge found that a reasonable hourly rate for someone with her experience in this community was $250 in 2020, $265 in 2021, and $275 in 2022.[192]  Neither party objected to this finding, and the Court finds no error in the Magistrate Judge's determination, especially since there is no indication that Gauthier has specialized experience in copyright litigation.[193]

---

[189] R. Doc. 347 at p. 16.

[190] *See Bardales v. Fontana & Fontana, LLC*, Civ. A. No. 19-40-WBV-DMD, 2021 WL 2328382, at *5–6 (E.D. La. June 8, 2021) (Vitter, J.) (reducing the reasonable hourly rate for attorney with 48 years of experience, 26 of which were in consumer rights litigation, to $400 per hour); *Batiste v. Lewis*, Civ. A. No. 17-4435, 2019 WL 1591951, at *2–3 (E.D. La. Apr. 12, 2019) (Roby, M.J.) (concluding in a copyright case that $375 is a reasonable hourly rate for an attorney with 35 years of experience, that $290 is a reasonable hourly rate for an attorney with 36 years of experience, and that $200 is a reasonable hourly rate for an attorney with five years of experience); *St. Joseph Abbey v. Castille*, Civ. A. No. 10-2717, 2015 WL 3444897, at *2 (E.D. La. May 27, 2015) (Duval, J.) (reducing the reasonable hourly rate for an attorney with over 22 years of experience to $450 in a case that raised constitutional issues "of first impression in the Fifth Circuit").  *See also REC Marine Logistics, LLC v. Richard*, Civ. A. No. 19-11149, 2020 WL 1527766, at *3 (E.D. La. Mar. 27, 2020) (Douglas, M.J.) (summarizing cases from this Court addressing reasonable hourly rates).

[191] R. Doc. 281-2 at p. 2.

[192] R. Doc. 347 at pp. 16–17 (citing *Grant v. Gusman*, Civ. A. No. 17-2797, 2023 WL 315937, at *13 (E.D. La. Jan. 19, 2023) (Brown, C.J.) (finding that $275 was a reasonable hourly rate for an attorney with 11 years of experience); *Ivy v. Tran*, Civ. A. No. 20-1475, 2021 WL 1428877, at *2 (E.D. La. Apr. 15, 2021) (Roby, M.J.) (finding that $275 is a reasonable hourly rate for an attorney with 11 years of experience)).

[193] *See Batiste*, Civ. A. No. 17-4435, 2019 WL 1591951 at *3 (finding $375 and $290 are reasonable hourly rates for attorneys with 35 and 36 years of experience, respectively, and who are specialists in copyright law); *Bd. of Supervisors of La. State Univ. v. Smack Apparel Co.*, Civ. A. No. 04-01593, 2009 WL 927996, at *4–5 (E.D. La. Apr. 2, 2009) (Lemmon, J.) (finding $325 was a reasonable hourly rate for an attorney with 10 years of specialized experience in trademark litigation and for an attorney with 29 years of experience but not in the field of intellectual property law); *Who Dat Yat Chat, LLC v. Who Dat Inc.*, 838 F. Supp. 2d 516, 519–20 (E.D. La. 2012) (finding $325 was a reasonable hourly rate for an attorney with 28 years of experience based upon the *Smack Apparel* case).  The Court notes Gauthier's extensive involvement in every aspect of the matter.

With respect to Dennis Durocher, an attorney with eight years of experience, MGMTL sought hourly rates of $240 for 2020, $250 for 2021, and $280 for 2022.[194] Finding that Durocher had only five years of experience when this litigation began, the Magistrate Judge reduced his reasonable hourly rates to $200 for 2020, $215 for 2021 and 2022, and $225 for 2023.[195]  Neither party objects to this finding and the Court finds no error.[196]  Regarding Ally Duplechain, who passed the Louisiana Bar Exam in 2020, the same year this case was filed, MGMTL sought hourly rates of $220 for 2020, $230 for 2021, and $250 for 2022.[197]  The Magistrate Judge found that $200 was a reasonable hourly rate for all three years, since "[j]udges in this district award attorney's fees in the amount of $200 for work performed by an associate with less than five years of experience."[198]  Neither party objected to this finding and the Court finds no error.

Although not mentioned in their Motion[199] or the attached Declaration of Harold J. Flanagan,[200] MGMTL also seeks to recover the fees incurred by two paralegals, Gabi Rivera and Monica Padilla, both of whom have an hourly rate of

---

[194] R. Doc. 281-2 at pp. 2–3.
[195] R. Doc. 347 at pp. 17–18 (citing *Girod LoanCo., LLC v. Heisler*, Civ. A. No. 19-13150, 2020 WL 3605947, at *8 (E.D. La. July 2, 2020) (Brown, C.J.) (citing *Batiste*, Civ. A. No. 17-4435, 2019 WL 1591951 at *3).
[196] *See Girod LoanCo.*, Civ. A. No. 19-13150, 2020 WL 3605947 at *8 (citing *Batiste*, Civ. A. No. 17-4435, 2019 WL 1591951 at *3) ("Judges in this district award attorneys' fees in the amount of $200 for work performed by an associate with less than five years of experience."); *REC Marine Logistics, LLC v. Richard*, Civ. A. No. 19-11149, 2020 WL 1527766, at *3 (E.D. La. Mar. 27, 2020) (citing *Batiste*, Civ. A. No. 17-4435, 2019 WL 1591951 at *3, as authority for awarding $200 per hour to an attorney with five years of experience).
[197] R. Doc. 281-2 at p. 3.
[198] R. Doc. 347 at p. 18 (quoting *Girod LoanCo.*, Civ. A. No. 19-13150, 2020 WL 3605947 at *8) (internal quotation marks omitted).
[199] *See, generally*, R. Docs. 281 & 281-1.
[200] R. Doc. 281-2 at pp. 1–3.

$125.[201]  The Magistrate Judge found that rate to be reasonable for a paralegal.[202]

Neither party objects to this finding, and the Court finds no error in the Magistrate

Judge's determination.

As set forth above, based on the Court's own knowledge and experience, the

Court finds no error in the Magistrate Judge's determination regarding the

reasonable hourly rates for MGMTL's counsel and paralegals in this matter.

### ii.    Reasonable Hours Expended

After determining the reasonable hourly rates, the bulk of the Report and

Recommendation addresses the reasonable hours expended by MGMTL's counsel.[203]

According to the Magistrate Judge, STI "strenuously" opposed MGMTL's Motion and

blamed "MGMTL's steadfast reluctance to admit the true value of its claims for

converting this run-of-the-mill case into the protracted litigations [sic] that it

became."[204]  In its Opposition brief, STI argued that if the Court awarded MGMTL

more than $50,000 in attorney's fees, it should reduce the fee award based upon

MGMTL's unsuccessful claims or theories,[205] the eighth *Johnson* factor (the amount

involved and the results obtained), the twelfth *Johnson* factor (awards in similar

cases),[206] and for MGMTL's block billing, billing for clerical work, and lack of billing

judgment. [207]   The Magistrate Judge addressed each of these arguments and

---

[201] *Id.* at p. 91.
[202] R. Doc. 347 at pp. 18–19 (citing authority).
[203] *Id.* at pp. 19–35.
[204] *Id.* at p. 19.
[205] R. Doc. 299 at pp. 13–16.
[206] *Id.* at pp. 16–18.
[207] *Id.* at pp. 18–23.

concluded that a 45% reduction in MGMTL's fee award was warranted.[208]  MGMTL

and STI both object to various determinations made by the Magistrate Judge in

determining this reduction, therefore, the Court reviews these findings *de novo*.[209]

      a. *Unnecessary Work*

STI argued in its Opposition brief that MGMTL's fee award should be reduced

to exclude any work performed on unsuccessful claims and any work that "was not

necessary to statutory damages."[210]  STI specifically points to portions of the original

and amended complaints that address MGMTL's breach of contract claims, a motion

to compel filed by MGMTL, portions of a deposition and MGMTL's opposition to STI's

successful motion in limine to exclude Menes' testimony, motions in limine filed by

MGMTL, and pretrial preparation and trial regarding MGMTL's unsuccessful claims

as examples of work that should be excluded from the fee award.[211]  STI asserted that

if such time is excluded, MGMTL could attribute only 10% of the $1,359,050.50 fees

sought, or $135,905.05, to pursuing its copyright claim.[212]  MGMTL argued that no

reduction was warranted because its misappropriation of trade secrets and breach of

contract claims were intertwined with its copyright infringement claim.[213]

The Magistrate Judge found that MGMTL's copyright claim "dominated the

litigation, and the subsidiary litigation of the trade misappropriation and breach of

contract claims were essential to establishing several elements of MGMTL's

---

[208] R. Doc. 347 at pp. 19–35.
[209] The Court's analysis of the reasonableness of the fees goes hand in hand with its analysis of the *Johnson* factors, especially factors one and eight.
[210] R. Doc. 299 at pp. 13–14.
[211] *Id*. (*citing* R. Doc. 45 at ¶ 6, R. Docs. 91 & 92, R. Doc. 124, & R. Doc. 125).
[212] R. Doc. 299 at p. 16.
[213] R. Doc. 306 at pp. 6–7.

infringement claim.    For this reason, the Court concludes that segregation of MGMTL's attorneys' fees is neither appropriate nor possible."[214]    The Magistrate Judge reasoned that, "[t]he two contracts between MGMTL and STI related to STI's obligations as they related to the SMART program and the trade secrets themselves arose from the development and manufacture of the SMART program."[215]    As such, the Magistrate Judge concluded that, "[t]he common core of fact here was the development and existence of the SMART program itself, and every other claim either revolved around or devolved from the SMART program."[216]    The Magistrate Judge further found it "impossible to differentiate between the claims in this case, given that the breach of contract, trade misappropriation, and copyright claims are inexorably intertwined," and that, "resolution of the breach of contract claims also resolved MGMTL's copyright claims and vice versa."[217]    The Magistrate Judge rejected STI's argument that MGMTL's fees should be reduced because MGMTL did not prevail on its misappropriation of trade secrets claims and one of its breach of contract claims, since MGMTL received no damages on those claims, finding that the undersigned had already rejected that argument.[218]    The Magistrate Judge also rejected as meritless STI's "novel theory of fee reduction as to unsuccessful claims," refusing STI's request to review MGMTL's billing entries and strike each discrete motion or action if it did not succeed or contribute to MGMTL's damages.[219]    The

---

[214] R. Doc. 347 at p. 22.
[215] *Id*.
[216] *Id*.
[217] *Id*. at p. 23.
[218] *Id*. at pp. 23–25 (*citing* R. Doc. 303-2 at pp. 10–11).
[219] R. Doc. 347 at p. 25.

Magistrate Judge concluded that segregation of MGMTL's claims was unwarranted and that MGMTL could recover attorney's fees for the interrelated claims irrespective of a damages awarded.

The Magistrate Judge further found that, "[c]losely intertwined with the prosecution of unsuccessful claims is the degree of success that MGMTL obtained."[220] Recognizing that the most critical factor in determining a reasonable fee award is the degree of success obtained,[221] the Magistrate Judge found that MGMTL "obtained little success compared to what it sought in the lawsuit."[222] The Magistrate Judge pointed out that while the jury ruled in MGMTL's favor on four of its five claims, it only awarded damages on two of the claims and MGMTL recovered only $180,000, or 1.8% of the $10 million it sought.[223] The Magistrate Judge also emphasized that the damages sought by MGMTL were 55.55 times greater than the amount of damages the jury awarded, and the attorney's fees sought are 7.5 times greater than the amount of damages awarded.[224] Relying upon Fifth Circuit authority,[225] including a case where the Fifth Circuit reversed a fee award when the damages sought were 26 times the amount of the damages awarded and the fee award was over 6.5 times the

---

[220] *Id.*
[221] *Id.* (quoting *Combs v. City of Huntington, Texas*, 829 F.3d 388, 394 (5th Cir. 2016)).
[222] R. Doc. 347 at p. 25.
[223] *Id.*
[224] *Id.* at p. 26.
[225] *Id.* at pp. 25–26 (citing *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799, 801 (5th Cir. 2006); *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (5th Cir. 2003)).

amount of damages awarded,[226] the Magistrate Judge found that MGMTL's fee award should be "reduced by 30% given the partial success obtained by MGMTL."[227]

MGMTL objects to the Magistrate Judge's 30% reduction, asserting that it was "motivated, in large part, by the mistaken belief that STI offered to settle the matter for the amount MGMTL received at trial from the beginning."[228] MGMTL further asserts that the Magistrate Judge's conclusion that fees should be reduced given MGMTL's partial success was also "guided by its mistaken impression that this was 'not a case in which STI . . . refused to settle'" and that MGMTL's purported refusal to settle protracted the litigation.[229]

STI objects to the Magistrate Judge's refusal to exclude fees incurred by MGMTL for work that was unsuccessful or unnecessary, essentially raising the same arguments made in its Opposition brief.[230] STI claims that MGMTL "multiplied the costs of this litigation by pursuing fantastical damages" and by rebuffing STI's settlement offers to pay the maximum statutory damages of $150,000 plus reasonable attorney's fees.[231] STI asserts that if the Court disallows recovery for any of the tasks referenced in its Opposition brief, "the Court should order the parties to confer and require MGMTL to submit a revised fee application excluding entries for issues and tasks for which the Court has disallowed recovery."[232] STI further objects to the Report and Recommendation to the extent that the Magistrate Judge imposed only a

---

[226] R. Doc. 347 at p. 26 (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047–48 (5th Cir. 1998)).
[227] R. Doc. 347 at pp. 26–27.
[228] R. Doc. 306 at p. 1.
[229] *Id.* at pp. 5–6 (*quoting* R. Doc. 347 at p. 7).
[230] R. Doc. 353 at pp. 2–5.
[231] *Id.* at pp. 4–5.
[232] R. Doc. 353 at p. 5.

30% reduction in the fee award based upon MGMTL's partial success, asserting that, "the Court should impose a substantially larger reduction than 30%, up to and including a total reduction of 85%."[233]

In response, MGMTL maintains that there is no legal basis to exclude fees for various litigation tactics that STI deems unnecessary, and that courts can only exclude fees for claims that are not successful and not interrelated to a successful claim.[234]  MGMTL further asserts that STI's suggestion for the Court to order the parties to confer and for MGMTL to submit another fee application is also "an unworkable and remarkable request and shows the absurdity of STI's approach."[235]

According to the Fifth Circuit, "[i]t is axiomatic that work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved . . . and therefore no fee may be awarded for services on [an] unsuccessful claim."[236]  "If unrelated to the successful claims, the unsuccessful ones must 'be treated as if they had been raised in separate lawsuits' and excluded from the fee award."[237]  "But when claims . . . share a 'common core of facts' or 'related legal theories,' a fee applicant may claim all hours reasonably necessary to litigate those issues."[238]  The Fifth Circuit has further held that, "[w]hen a plaintiff's claims cannot

---

[233] *Id*. at pp. 9–10 (citing authority).
[234] R. Doc. 354 at pp. 5–7.
[235] *Id*. at p. 7.
[236] *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 416 (5th Cir. 2022) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)) (internal quotation marks omitted).
[237] *Fessler*, 23 F.4th at 416 (quoting *Hensley*, 461 U.S. at 435–36, 103 S.Ct. at 1940–41 (noting that "[t]he district court may attempt to identify specific hours that should be eliminated")).
[238] *Fessler*, 23 F.4th at 416 (quoting *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995)) (internal quotation marks omitted).

be disentangled, the district court's focus should shift to the results obtained and adjust the lodestar accordingly."[239]  "Segregation of hours spent on different claims is not required when the claims are 'so intertwined that it is impossible to differentiate' between them."[240]

At the outset, the Court finds that the Magistrate Judge, and this Court, erred in rejecting STI's argument that MGMTL did not prevail on its misappropriation of trade secrets claims and one of its breach of contract claims because MGMTL received no damages for those claims.[241]  While the Magistrate Judge relied upon a prior ruling from the undersigned to support its conclusion,[242] the Fifth Circuit has since held that judgment should have been entered for STI on the breach of the Software Evaluation Agreement claim and MGMTL's two misappropriation of trade secrets claims.[243]  Accordingly, even though the jury found that STI had misappropriated SMART, MGMTL succeeded on only two of its five claims – its copyright infringement claim and its breach of the Distributor Agreement claim.  Importantly, at the time that the Magistrate Judge was considering the Motion for Attorneys' Fees and up through the issuance of the Report and Recommendation, the understanding was that MGMTL had succeeded on four of its five claims.  The Fifth Circuit has made clear that that is inaccurate.

---

[239] *Fessler*, 23 F.4th at 416 (quoting *Louisiana Power*, 50 F.3d at 327, n.13) (internal quotation marks omitted).

[240] *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 799 (S.D. Tex. 2009).

[241] R. Doc. 347 at pp. 23–25.

[242] *See Id.* at p. 23 (*citing* R. Doc. 303-2 at p. 9); R. Doc. 347 at p. 24 (*citing* R. Doc. 303-2 at pp. 10–11).

[243] *MGMTL, LLC v. Strategic Technology Institute, Inc.,* Case No. 23-30298, 2024 WL 3949073, at *3 (5th Cir. Aug. 27, 2024).

Nonetheless, the Court finds that MGMTL's copyright infringement claim clearly dominated this litigation, and the Court agrees with the Magistrate Judge that the unsuccessful claims are inexorably intertwined with the copyright infringement claim.   To establish a prima facia case of copyright infringement, MGMTL had to prove: (1) ownership of a valid copyright; and (2) copying by STI of constituent elements of the SMART software that are original.[244]  To prove actionable copying under the second prong, MGMTL had to prove that STI actually used SMART to create PASS with either direct evidence of copying or circumstantial evidence that STI had access to SMART and that SMART and PASS are "probatively" similar.[245] The Software Evaluation Agreement and the Distributor Agreement, as well as the trial testimony regarding both, were integral to MGMTL proving that STI had access to SMART.   Further, STI argued as an affirmative defense that MGMTL had authorized it to use and disclose SMART, and that MGMTL's sole remedy was for breach of the Distributor Agreement.[246]  MGMTL, however, was successful on both its copyright claim and its breach of the Distributor Agreement claim, and was awarded $150,000 and $30,000 in damages, respectively.[247]  Further, the Software Evaluation Agreement and the Distributor Agreement were pivotal to MGMTL's misappropriation of trade secrets claims, as MGMTL relied upon the agreements to illustrate the efforts taken to maintain the secrecy of the SMART software.

---

[244] *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)) (quotation marks omitted).
[245] *Gen. Univ. Sys.*, 379 F.3d at 141 (citing *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994); *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 39, 394 (5th Cir. 2001)).
[246] R. Doc. 165 at p. 22; R. Doc. 199 at pp. 20–21, ¶¶ 59–73 & p. 29, ¶ 12.
[247] R. Docs. 273 & 273-2.

The Court finds that all five of MGMTL's claims share a common core of facts, namely the development of the SMART software, MGMTL's intellectual property rights in SMART, and STI's access to, and permitted use of, SMART under the Distributor Agreement and the Software Evaluation Agreement. The Court finds that the five claims also share related legal theories, as resolution of the breach of contract claims contributed to the resolution of the copyright infringement claim and the misappropriation of trade secrets claims, and vice versa. To the extent that MGMTL's work on its copyright and breach of the Distributor Agreement claims included work on its other claims, the Court finds that the work on the intertwined claims equally supported the copyright claim. The evidence presented at trial supports that finding. As such, the Court concludes that MGMTL was not required to segregate the number of hours spent on each of its five separate claims and overrules STI's objection to the Magistrate Judge's refusal to exclude time spent on unsuccessful matters and "unnecessary work."

The Court also overrules MGMTL's objection to the Magistrate Judge's 30% reduction to the fee award that was "motivated, in large part, by the mistaken belief that STI offered to settle the matter for the amount MGMTL received at trial from the beginning."[248] The Court recognizes that the Magistrate Judge, in his analysis of the *Fogerty* factors and whether MGMTL was entitled to attorneys' fees, found as follows:

> This is not a case in which STI advanced a frivolous settlement offer or refused to settle. MGMTL's refusal of STI's settlement offer protracted this litigation (in which it ultimately received only what STI had

---

[248] R. Doc. 349 at pp. 1 & 6.

originally offered), defeated the purpose of settlement and increased litigation costs for all involved. This all makes the court skeptical of awarding MGMTL such exorbitant fees, particularly in light of the amount of its recovery.[249]

The Magistrate Judge concluded his analysis of MGMTL's entitlement to attorneys' with, "The Court finds that even though MGMTL received a smaller damages award than it sought, the *Fogerty* factors warrant an attorneys' fee award—albeit a reduced one—under these circumstances.[250] After concluding his analysis of the *Fogerty* factors and determining that MGMTL was entitled to attorneys' fees, the Magistrate Judge turned to an analysis of the reasonableness of the attorneys' fees using the lodestar approach.

At first glance, it appears as if the Magistrate Judge was suggesting that it applied a 30% reduction to MGMTL's attorney fee award, at least in part, because of MGMTL's purported refusal to settle early in the litigation. The Magistrate Judge, however, did *not* reference any unsuccessful settlement efforts in his analysis of the reasonable hours expended by MGMTL's counsel as part of the lodestar calculation.[251] After spending a considerable amount of time analyzing the reasonableness of the hours expended by MGMTL on what STI claimed was "unnecessary work," as well as MGMTL's degree of success in the case, the Magistrate Judge concluded, with respect to MGMTL's degree of success:

> Accordingly, while this factor does not weigh in favor of denying fees outright, this Court finds, in the exercise of its discretion and considering the foregoing caselaw, along with the dual policies of compensation and deterrence in copyright cases, that the award here

---

[249] R. Doc. 347 at p. 7.

[250] *Id.* at p. 9.

[251] *See Id.* at pp. 19–36.

should be reduced by 30% given the partial success obtained by MGMTL.[252]

In its own analysis, as detailed earlier, this Court has found that MGMTL's motivation[253] does not warrant a reduction in attorney's fees.[254] Thus, the Court overrules MGMTL's objection that the 30% reduction was largely motivated by the Magistrate Judge's misunderstanding of the parties' settlement positions, as there is no indication that the Magistrate Judge took that into consideration in finding that a 30% reduction was warranted.

Instead, the Magistrate Judge determined that a 30% reduction of the fee award was warranted due to MGMTL's partial success in this matter.[255] After discussing that the damages sought by MGMTL were 55.55 times greater than the amount of damages that the jury awarded and the attorneys' fees sought were 7.5 times greater than the amount of damages awarded, the Magistrate Judge reasoned, "while this factor does not weigh in favor of denying fees outright, this court finds, in the exercise of its discretion and considering the foregoing case law, along with the dual policies of compensation and deterrence in copyright cases, that the award here should be reduced by 30% given the partial success obtained."[256]  To the extent MGMTL objects to the 30% reduction as stemming from "a misunderstanding of the settlement posture *and the context of MGMTL's damages*,"[257] this appears to be

---

[252] *Id*. at p. 27.
[253] The Court uses the word "motivation" as that word is used in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), and intends it to include settlement efforts.  *See Collins v. Doe*, Civ. A. No. H-10-2882, 2013 WL 2896822, at *7 (S.D. Tex. June 12, 2013).
[254] *See* pp. 20–26 herein.
[255] R. Doc. 347 at pp. 25–27.
[256] *Id*. at pp. 26–27.
[257] R. Doc. 349 at p. 6 (emphasis added).

another reference to the parties' settlement efforts and MGMTL's ultimate damage award. The Court points out that nowhere in its briefing does MGMTL address the Magistrate Judge's analysis of MGMTL's partial success or the Fifth Circuit authority cited in support thereof.[258]

The Supreme Court has held that if a plaintiff "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."[259] While the Fifth Circuit has held that proportionality between the attorney fee award and the actual damages recovered is an appropriate consideration in assessing a fee award "in the typical case,"[260] it has also "consistently emphasized that there is no *per se* requirement of proportionality in an award of attorney fees."[261] The Fifth Circuit has also "made clear that 'while a low damages award is one factor

---

[258] *See, generally,* R. Doc. 349. *See also* R. Doc. 354 at p. 4 ("The bulk of the reduction – 30% – was driven by the mistaken impression that MGMTL had refused a reasonable settlement offer early in the litigation.").

[259] *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

[260] *Hernandez v. Hill Country Telephone Co-op, Inc.*, 849 F.2d 139, 144 (5th Cir. 1988). *See Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 259 (5th Cir. 2018) (quoting *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 802 & n.42 (5th Cir. 2006)) (finding that proportionality is an appropriate consideration in assessing a fee award in the context of a claim brought under the Fair Labor Standards Act).

[261] *Gurule*, 912 F.3d at 259 (quoting *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 396 (5th Cir. 2016)) (internal quotation marks omitted). *See Saizan*, 448 F.3d at 802 ("It remains true that there is no *per se* proportionality rule. However, the District Court had ample reason to reduce the fee award, not relying solely on the low settlement amount but also on Plaintiffs' failure to establish billing judgment and inability to prove any element of the case.") (citing authority); *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 354-55 (5th Cir. 2001) (sustaining an attorney fee award that was more than three times the treble damages award and more than nine times the actual damages, concluding that, "[s]uch disproportion alone does not render the award of attorneys' fees excessive."). *But see Branch-Hines v. Hebert*, 939 F.2d 1311, 1322 (5th Cir. 1991) (acknowledging that it had previously recognized that, "there is no *per se* requirement of proportionality in an award of attorney's fees in the civil rights context, but that proportionality is an appropriate consideration in the typical case.").

which a district court may consider in setting the amount of attorney's fees, *this factor alone should not lead the district court to reduce a fee award*.'"[262]  Notwithstanding that authority, in *Migis v. Pearle Vision, Inc.*, a Title VII case, the Fifth Circuit reviewed an attorney fee award and found that the district court failed to give adequate consideration to the eighth *Johnson* factor – the amount involved and the result obtained.[263]  After finding that the fee award was over 6.5 times the amount of the damages award and that the plaintiff sought over 26 times the damages actually awarded, the Fifth Circuit concluded that, "these ratios are simply too large to allow the fee award to stand."[264]

In *Gurule v. Land Guardian*, a Fair Labor Standards Act case, the district court reduced the $62,722.80 lodestar amount by 60% because the plaintiffs' counsel failed to show that he had exercised good judgment in obtaining successful results where only one of the four plaintiffs prevailed at trial, and that plaintiff had requested $25,683.66 and was awarded only $1,131.39.[265]  On appeal, the defendant argued that the district court abused its discretion by failing to further reduce the fee award based upon the plaintiff's actual degree of success, or the lack thereof.[266] Recognizing that "proportionality is an appropriate consideration" in assessing a fee award, the Fifth Circuit found that the disproportion between the fees awarded

---

[262] *Singer v. City of Waco*, 324 F.3d 813, 830 (5th Cir. 2003) (quoting *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000)) (emphasis added); *accord Gurule*, 912 F.3d at 257–58; *Cobb v. Miller*, 818 F.2d 1227, 1235 (5th Cir. 1987) ("In the absence of other *Johnson* factors justifying a reduction in a fee award, a district court should not reduce the fee award solely because of a low damages award.").

[263] 135 F.3d 1041, 1047–48 (5th Cir. 1998).

[264] *Id*. at 1048.

[265] 912 F.3d 252, 258 (5th Cir. 2018).

[266] *Id*. at 258–59.

($25,089.30) and plaintiff's net recovery ($745.21) was "eyebrow-raising."[267]  The Fifth Circuit nonetheless rejected the defendant's assertion that the fee award was an abuse of discretion solely due to the disproportion between the award and the plaintiff's actual recovery.[268]  Although the fee award was 33 times the plaintiff's net recovery, the Fifth Circuit maintained that there is no *per se* requirement of proportionality, even after *Migis*.[269]  The Fifth Circuit reasoned that the district court had pointed out "the chasm" between what the plaintiff sought and what little she recovered, demonstrating that it had considered the relationship between the two, and did not abuse its discretion by not further reducing the fee award.[270]

The foregoing authority makes clear that there is no *per se* proportionality rule in this Circuit regarding attorney fee awards.  Nonetheless, like in *Gurule* and *Migis*, the Court finds the disparity between the damages sought by MGMTL and the amount it recovered, especially in light of its overall success at trial, supports a 35% reduction in the fee award.  As the Magistrate Judge pointed out, MGMTL sought $10 million in damages, which is 55.5 times greater than the $180,000 that the jury awarded.  Stated another way, MGMTL was awarded 1.8% of the damages it sought at trial.[271]  Additionally, MGMTL seeks a total of $1,359,050.50 in attorney's fees,[272] which is 7.5 times greater than the amount of damages awarded by the jury.  These ratios are larger than the disparities supporting the reduced fee awards in the *Migis*

---

[267] *Id.* at 259 (quoting *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 802 & n.42 (5th Cir. 2006)).
[268] 912 F.3d at 259.
[269] *Id.*
[270] *Id.*
[271] R. Doc. 347 at p. 25.
[272] *See* R. Docs. 281 & 298.

and *Gurule* cases. Moreover, MGMTL prevailed on only two of its five claims against STI – the copyright infringement and breach of the Distributor Agreement claims.[273] When the Magistrate Judge issued his Report and Recommendation, it was his appreciation, in line with the undersigned's prior ruling, that MGMTL had prevailed on four of its five claims. Such is not the case now.

The Court, exercising its discretion and in light of the foregoing authority as well as the change in the number of MGMTL's successful claims, finds that the fee award should be reduced by 35% based upon the limited success obtained by MGMTL. As such, the Court sustains STI's objection, as modified, to the extent that STI asserts the Magistrate Judge should have imposed "a substantially larger reduction than 30%," but overrules the objection to the extent STI asks the Court to impose a reduction of up to 85%.[274]

### b. Block Billing

The next category of billing entries addressed by the Magistrate Judge was MGMTL's purported block billing.[275] STI argued that 703 of MGMTL's time entries, totaling $749,900.00, were "block-billed" with multiple tasks in a single entry, and that the Court "should reduce the amount claimed for such entries by 25% or $187,475."[276] The Court notes that STI attached as an exhibit to its Opposition brief an Excel spreadsheet containing MGMTL's billing entries, and STI placed an "X" next

---

[273] *MGMTL, LLC v. Strategic Technology Institute, Inc.,* Case No. 23-30298, 2024 WL 3949073 (5th Cir. Aug. 27, 2024).
[274] R. Doc. 353 at pp. 9–10.
[275] R. Doc. 347 at pp. 27–28.
[276] R. Doc. 299 at pp. 18–19.

to the entries it believed were examples of block billing.[277]  As the Magistrate Judge pointed out, STI's Opposition brief only cited one example of bock billing, a September 23, 2022 entry by Durocher who billed 11.60 hours for six discrete tasks.[278]

The Magistrate Judge concluded that while MGMTL's billing entries showed some evidence of block billing, there was "nothing as egregious as STI would have the Court believe."[279]  The Magistrate Judge found "some evidence of block billing," pointing to four specific billing entries, and found that nearly every entry by the two paralegals "is a prime example of block billing."[280]  The Magistrate Judge explained that while these examples were not exclusive, "the majority of MGMTL's time entries reflect hours expended on one task, or smaller tasks related to the completion of that one task."[281]  Since the block billing was not as blatant as STI claimed, but did exist in some entries, the Magistrate Judge found that a 10% reduction in the fee award was warranted "to rectify MGMTL's occasional lapse in judgment."[282]

Neither MGMTL nor STI objected to the Magistrate Judge's 10% fee reduction based upon MGMTL's block billing.[283]  As such, the Court's review is limited to plain error.  "'Block billing' refers to a 'time-keeping method by which each lawyer and legal assistant enter the total daily time spent working on a case, rather than itemizing

---

[277] *See* R. Doc. 299-2.
[278] R. Doc. 347 at p. 27 (*citing* R. Doc. 281-2 at p. 76).  *See* R. Doc. 299 at p. 19.
[279] R. Doc. 347 at p. 28.
[280] *Id*. (*citing* "Rec. doc. 282-2 *passim*").  This appears to be a typographical error, as MGMTL's billing entries are in the record at R. Doc. 281-2.
[281] R. Doc. 347 at p. 28.
[282] *Id*.
[283] *See* R. Docs. 349, 353, & 354.

the time expended on specific tasks.'" [284]    Further, "[w]hen making a reduction because of block billing most courts reduce a percentage of the hours or the lodestar figure, and this amount usually ranges from 10% to 30%." [285]    After reviewing MGMTL's billing entries, the Court finds no error in the 10% reduction applied by the Magistrate Judge for block billing.    Much of the time billed by the two paralegals are contained in block bills, and a majority of Durocher's billing entries are prime examples of block billing.[286]    While the Court also found a few instances of block billing by Flanagan[287] and Gauthier,[288] mainly during trial preparation, the Court finds no error in the Magistrate Judge's determination that a 10% reduction is warranted to rectify MGMTL's occasional lapse in judgment.

### c.  Clerical Work

The Magistrate Judge next addressed STI's assertion that 237 of MGMTL's billing entries, totaling $162,874.50 in fees, arguably mix either legal and administrative work or paralegal and administrative work, or involve paralegals or attorneys performing only clerical work.[289]    STI highlighted three examples of this,

---

[284] *Seals v. McBee*, Civ. A. No. 16-14837, 2018 WL 6815067, at *3 (E.D. La. Dec. 4, 2018) (Knowles, M.J.), *report and recommendation adopted sub nom. Seals v. McGee*, Civ. A. No. 16-14837, 2018 WL 6812463 (E.D. La. Dec. 27, 2018) (Milazzo, J.) (quoting *Dobson v. Timeless Rests., Inc.*, Civ. A. No. 3:09-CV-2481-L, 2017 WL 1330164, at *6 (N.D. Tex. Apr. 11, 2017) (Lindsay, J.)).

[285] *Seals*, Civ. A. No. 16-14837, 2018 WL 6815067 at *3 (citing *Dobson*, Civ. A. No. 3:09-CV-2481-L, 2017 WL 1330164 at*5).

[286] By way of example, the Court points to several billing entries in November 2020 wherein Durocher billed five or more hours for work performed without itemizing the time spent on each task.  *See* R. Doc. 281-2 at p. 11.  *See also* R. Doc. 281-2 at pp. 22, 23, 24, & 25.  Durocher's block billing continued through trial preparation and the trial, as well.  *Id*. at pp. 75–80.

[287] *See* R. Doc. 281-2 at pp. 61 & 63 (billing for "Work on numerous pretrial matters" on February 26, 2022, March 3, 2022, and March 4, 2022).

[288] *See* R. Doc. 281-2 at pp. 62 & 63 ("Pretrial tasks" billed on March 1, 2022, March 2, 2022, March 3, 2022, and March 4, 2022).

[289] R. Doc. 347 at pp. 29–30.

pointing to a June 17, 2021 entry wherein Durocher billed 4.00 hours for adding bates labels to a trial exhibit chart, a March 9, 2021 entry wherein Durocher billed for uploading documents to storage software, and an April 12, 2021 entry wherein Gauthier billed time to "revise, finalize, and file" a document.[290]  The Magistrate Judge agreed with STI that these entries mixed legal and clerical work or were purely clerical work and left the court "without any way to disentangle legal from administrative work in these mixed time entries . . . ."[291]  After conducting its own review of the billing entries, the Magistrate Judge found other clerical tasks were performed by attorneys or paralegals, and pointed out one entry wherein Gauthier billed to finalize trial exhibits and deliver physical and electronic books, noting that these are clerical tasks.[292]  The Magistrate Judge, however, did not find widespread billing for clerical tasks and concluded that a 5% reduction of the fee award was warranted.[293]

Neither party objected to the Magistrate Judge's 5% reduction to the fee award based upon MGMTL's counsel billing for clerical tasks.  The Court finds no error in this conclusion.  As the Magistrate Judge pointed out, "[w]hen an attorney or paralegal performs a task that could be handled by clerical staff, the opponent should not be charged."[294]  Further, "[t]asks that are purely clerical in nature include faxing,

---

[290] *Id*. at p. 29 (*citing* R. Doc. 281-2 at pp. 22, 26, & 41).  *See* R. Doc. 299 at p. 20.
[291] R. Doc. 347 at p. 29 (quoting *Richard v. St. Tammany Par. Sheriff's Dep't*, Civ. A. No. 17-9703, 2022 WL 4534728, at *8 (E.D. La. Sept. 28, 2022) (Brown, C.J.)) (internal quotation marks omitted).
[292] R. Doc. 347 at pp. 29–30 (*citing* R. Doc. 281-2 at p. 64).
[293] R. Doc. 347 at p. 30.
[294] *Richard*, Civ. A. No. 17-9703, 2022 WL 4534728 at *8 (citing *Kuperman v. ICF Int'l*, Civ. A. No. 08-565, 2009 WL 10737138, at *9 (E.D. La. Oct. 13, 2009) (Knowles, M.J.).

mailing, filing and delivering legal documents."[295]  Having reviewed MGMTL's billing records, the Court finds that Durocher billed MGMTL several times for labeling exhibits[296] and Gauthier billed MGMTL several times for filing documents.[297]  The Court, however, agrees with the Magistrate Judge that there was no widespread billing for clerical tasks and that a 5% reduction is warranted.

### d. Excessive Billing

The Magistrate Judge next addressed STI's argument that 486 of MGMTL's billing entries, totaling $509,520.50 in fees, were excessively billed and that half of those bills, or $254,760.25, should be deducted from MGMTL's fee award.[298]  MGMTL maintained that it had exercised billing judgment by excising 412 hours from its billing entries when there may have been excessive timekeepers, duplicative tasks, or tasks not described with sufficient particularity.[299]  The Magistrate Judge recognized that, "[c]ourts disallow charges for excessive hours or unnecessary work,

---

[295] *Richard*, Civ. A. No. 17-9703, 2022 WL 4534728 at *8 (citing *Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 710–11 (E.D. La. 2001); *Kuperman*, Civ. A. No. 08-565, 2009 WL 10737138 at *9 (reducing hours billed for attorney time spent on clerical matters (e.g., e-filing documents, copying and Bates-numbering documents))).

[296] See, for example, R. Doc. 281-2 at p. 21 (March 5, 2021 and March 8, 2021 entries), p. 22 (March 15, 2021 entry), p. 32 (May 15, 2021 entry), p. 33 (May 16, 2021 entry), p. 35 (May 24, 2021 entry), p. 41 (June 17, 2021 entry for "Add bates label number to final version of trial exhibit chart"), and p. 70 (September 2, 2022 entry).

[297] See, for example, R. Doc. 281-2 at p. 5 (July 28, 2020 and August 11, 2020 entries), p. 7 (October 13, 2020 entry to "Finalize and file corporate disclosure statement"), p. 9 (two October 26, 2020 entries to "Finalize and file" various pleadings), p. 21 (March 4, 2021 entry), p. 26 (April 12, 2021 entry to "Revise, finalize, and file opposition to STI's motion to compel"), p. 34 (May 17, 2021 entry to "Proofread, finalize and e-file oppositions to summary judgment . . . ."), p. 60 (February 24, 2022 entry to "Revies, finalize, file final will-call witness list" and February 25, 2022 entry to "Finish drafting, revise, finalize, and file STI's [sic] motion to limit MGMTL to statutory copyright damages"), p. 66 (April 1, 2022 entry), p. 67 (April 18, 2022 entry), p. 79 (October 1, 2022 entry to, in pertinent part, "finalize and file all pleadings and accompanying exhibits and accompanying request for expedited relief and motion to seal").

[298] R. Doc. 347 at pp. 30– 35.  *See* R. Doc. 299 at pp. 20–21.

[299] R. Doc. 347 at p. 30.  *See* R. Doc. 281-1 at p. 19, n.88.

duplicative or redundant work or personnel, and vague or inadequately documented entries."[300]  The Magistrate then addressed each of these categories – unnecessary work, duplicative work, and vague time entries – individually.

The Magistrate Judge first denied STI's request to exclude 294 billing entries, totaling $275,190 in fees, that purportedly involved unnecessary, unsuccessful, or otherwise unreasonable work.[301]  While STI challenged certain motions filed by MGMTL and MGMTL's decision to use a mock jury when there was no evidence of any sales of SMART or PASS, the Magistrate Judge pointed out that strategies change during the litigation process and such changes do not necessarily render other work unnecessary.[302]  The Magistrate Judge likewise found that the use of a mock jury was not *per se* unnecessary merely because there were no actual sales of the software.[303]  The Magistrate Judge concluded that, "this Court has already reduced MGMTL's fees for its partial success on damages.  To do so again would be overkill."[304]  Neither party objected to this finding,[305] and the Court finds no error, especially since the Court reduced the fee award by an 35% for MGMTL's limited success.

---

[300] R. Doc. 347 at p. 30 (citing *Richard v. St. Tammany Par. Sheriff's Dep't*, Civ. A. No. 17-9703, 2022 WL 4534728, at *8 (E.D. La. Sept. 28, 2022); *Alfasigma USA, Inc. v. EBM*, Civ. A. No. 17-07753, 2018 WL 3869496, at *5 (E.D. La. Aug. 15, 2018) (Roby, M.J.); *White v. Imperial Adjustment Corp.*, Civ. A. No. A. 99-3804, 2005 WL 1578810, at *9 (E.D. La. June 28, 2005)).

[301] R. Doc. 347 at pp. 31–32.

[302] *Id.* at p. 32.

[303] *Id.*

[304] *Id.*

[305] As previously discussed, STI objected to the Magistrate Judge's failure to reduce MGMTL's fee award "for unsuccessful filings and unnecessary work" (R. Doc. 353 at pp. 1 & 2–5) and cited page 25 of the Report and Recommendation, wherein the Magistrate Judge addressed STI's challenge to fees charged for unsuccessful or unnecessary work on MGMTL's unsuccessful claims.  *See* R. Doc. 353 at p. 3 (*quoting* R. Doc. 347 at p. 25).  The Court has overruled that objection.  To the extent STI also objects to the Magistrate Judge's finding that no additional reduction was warranted for the 294 billing entries involving "unnecessary, unsuccessful, or otherwise unreasonable work," the Court overrules the objection for the same reasons previously stated.

STI next challenged 177 of MGMTL's billing entries, totaling $177,140.50 in fees, as duplicative.[306]  The Magistrate Judge pointed out that STI marked several billing entries as duplicative when multiple attorneys attended conferences or hearings, and even trial.[307]  After reviewing the billing entries, the Magistrate Judge found STI's definition of duplicative to be overbroad.[308]  The Magistrate Judge explained that, "[i]n a protracted three-year litigation, in which MGMTL asserted five claims, and STI asserted at least five substantive affirmative defenses, it is not uncommon for more than one attorney to attend a hearing, a deposition, a settlement conference, or a trial."[309]  Relying on his own experience, the Magistrate Judge found that during such a long litigation, certain attorneys may work on specific issues or claims and need to be present should that issue or claim arise.  Additionally, while STI complained about Durocher's attendance at trial, the Magistrate Judge found that Durocher played a significant role in and outside the courtroom, justifying his presence at trial.[310]  As such, the Magistrate Judge refused to reduce MGMTL's fee award for alleged "duplicative" billing entries.  Neither party objected to this finding, and the Court finds no error.  The Court agrees with the Magistrate Judge that it is common for more than one attorney to attend conferences and hearings, as well as trial, in the event that certain issues arise, and that such attendance does not warrant a fee reduction.  Having presided over every aspect of the case, the

---

[306] R. Doc. 347 at p. 32.  *See* R. Doc. 299 at pp. 22–23.
[307] R. Doc. 347 at pp. 32–33.
[308] *Id.* at p. 33.
[309] *Id.*
[310] *Id.*

undersigned is also satisfied as to the participation level of each attorney at each conference and at trial.

STI next challenged 65 billing entries, totaling $140,367.50 in fees, as impermissibly vague.[311]  The Magistrate Judge pointed out that fee awards cannot include hours for which the plaintiff provides inadequate documentation,[312] and that courts have excluded fees for billing entries in which "attorneys state only that they 'spoke with' another attorney, or 'helped' another attorney prepare for a hearing."[313] Citing a Supreme Court opinion, the Magistrate Judge recognized that, "[t]rial courts need not, and indeed should not, become green-eyeshade accountants," but that they "may take into account their overall sense of a suit" when the party "submit[s] appropriate documentation."[314]  The Magistrate Judge also pointed out that the Fifth Circuit has found that a district court does not err in refusing to reduce a fee award due to vague billing entries when the district court has "familiarity with [the] case, including the quality of the attorneys' work over a period of several years."[315]

Relying upon that authority, as well as its involvement in the case and its familiarity with the undersigned's rulings, the Magistrate Judge declined "on the ground of vagueness to reduce the number of hours billed over the course of litigation

---

[311] R. Doc. 299 at p. 23.
[312] R. Doc. 347 at p. 33 (citing *Kuperman v. ICF Int'l*, Civ. A. No. 08-565, 2009 WL 10737138, at *8 (E.D. La. Oct. 13, 2009)).
[313] R. Doc. 347 at p. 33 (citing *Alfasigma USA, Inc. v. EBM*, Civ. A. No. 17-07753, 2018 WL 3869496, at *6 (E.D. La. Aug. 15, 2018)).
[314] R. Doc. 347 at p. 34 (quoting *Fox v. Vice*, 563 U.S. 826, 838, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 34, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983))) (internal quotation marks omitted).
[315] R. Doc. 347 at p. 34 (quoting *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995)) (internal quotation marks omitted).

when MGMTL prevailed in part after three years and provides the appropriate documentation to support its request."[316]  In a footnote, the Magistrate Judge took judicial notice "of the fact that many attorneys – aware that they may produce their time entries in connection with a fee application – may be reluctant to detail each and every facet of a conversation or a meeting with another attorney or a client for fear of waiving the attorney-client or work-product privilege."[317]  Neither party objected to the Magistrate Judge's finding, and the Court finds no error.

### C. Consideration of the *Johnson* Factors

After reviewing the reasonable hours expended by MGMTL, the Magistrate Judge reviewed the factors set forth in *Johnson v. Georgia Highway Express* to determine if the lodestar should be increased or decreased.[318]  As previously mentioned, the twelve *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[319]  The Magistrate Judge pointed out that the most

---

[316] R. Doc. 347 at pp. 34–35.
[317] *Id*. at p. 35, n.6.
[318] *Id*. at pp. 35–36 (citing *Johnson*, 488 F.2d 714 (5th Cir. 1974)).
[319] 488 F.2d at 717–19.

critical factor in determining a reasonable fee award is the degree of success and the results obtained.[320]

While both parties had asked for an increase or a decrease in the fee award based upon different *Johnson* factors, the Magistrate Judge found no further reduction was warranted. Specifically, the Magistrate Judge found that the time and labor required, as well as the novelty and difficulty of the issues, were adequately addressed by the consideration of MGMTL's billing entries during its lodestar calculation.[321] The Magistrate Judge also found that the skill required to perform legal services, the preclusion of other employment, the customary fee, and the experience and reputation of the attorneys were addressed in consideration of the reasonable hourly rates of MGMTL's counsel.[322] The Magistrate Judge likewise determined that the amount involved and the results obtained were already considered in great detail, and that the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases "do not bear on the award here."[323]

MGMTL does not object to the Magistrate Judge's consideration of the *Johnson* factors.[324] STI objects to the Magistrate Judge's failure to consider the twelfth *Johnson* factor – fee awards in similar cases.[325] STI claims that it had cited "several

---

[320] R. Doc. 347 at p. 35 (quoting *Combs v. City of Huntington, Texas*, 829 F.3d 388, 394 (5th Cir. 2016)).
[321] R. Doc. 347 at p. 35.
[322] *Id.*
[323] *Id.* at pp. 35–36.
[324] *See, generally*, R. Docs. 349 & 354.
[325] R. Doc. 353 at pp. 5–9. The Court notes that as recognized by STI, several of the *Johnson* factors, including factors two, three, eight and nine, are "presumably fully reflected in the lodestar amount." R. Doc. 353-1 at p. 6 (quoting *Sales v. Bailey,* Civ. A. No. 2:12-cv-00056-SA-SAA, 2015 WL 1825060, at

cases imposing significant reductions to fee awards because the plaintiff rejected reasonable settlement offers earlier in the case,"[326] and STI argues that MGMTL's fee award "should be reduced by at least 75% to 85%" because MGMTL likewise "gambled by rejecting STI's reasonable pretrial offers."[327] STI points out that the Fifth Circuit has held that failure to adequately consider the *Johnson* factors may constitute reversible error,[328] and that the twelfth factor is not usually subsumed in the lodestar analysis.[329] STI then cites three "similar cases" where courts reduced fee awards for a party's refusal to settle for the amount awarded at trial, and STI proceeds to rehash its argument that MGMTL's fees should be significantly reduced because MGMTL refused to settle this case early in the litigation for the same amount that the jury ultimately awarded.[330] MGMTL asserts that STI's argument is based on the erroneous assumption that STI offered to settle this case from the beginning, and further asserts that the Magistrate Judge did consider the cases cited by STI, but in a different portion of its analysis.[331] As such, MGMTL asserts that the Court should reject STI's request to further reduce the fee award based on inapposite cases already analyzed in the Report and Recommendation.[332]

---

[footnotes]

\*4 (N.D. Miss. Apr. 22, 2015) (Aycock, J.)). The Court agrees that those factors have been fully subsumed in the lodestar analysis.

[326] R. Doc. 353 at p. 5 (*citing* R. Doc. 299 at pp. 9 & 17–18).

[327] R. Doc. 353 at pp. 5–6.

[328] *Id*. at p. 6 (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998)).

[329] R. Doc. 353 at p. 6 (citing *Symetra Life Ins. Co. v. Smith*, Civ. A. No. 1:21-CV-02366, 2023 WL 6194339, at \*4 (W.D. La. Aug. 17, 2023) (Perez-Montes, M.J.)).

[330] R. Doc. 353 at pp. 7–9 (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, Civ. A. No. 15-MD-02672-CRB, 2023 WL 4109573, at \*12 (N.D. Cal. June 20, 2023) (Breyer, J.); *FameFlynet Inc. v. Jasmine Enters., Inc.*, Civ. A. No. 17 C 4749, 2019 WL 3733592 (N.D. Ill. Aug. 8, 2019) (Durkin, J.); *Greenwich Film Prods., S.A. v. DRG Recs., Inc.*, Civ. A. No. 91 CIV 0546 (JSM), 1996 WL 502336 (S.D.N.Y. Sept. 5, 1996) (Martin, J.)).

[331] R. Doc. 354 at pp. 8–10.

[332] *Id* at p. 10.

The Court finds that, as MGMTL correctly points out, the Magistrate Judge did consider two of the three cases cited by STI, albeit in the context of its review of the *Fogerty* factors and the parties' motivation in this case.[333] The Court, however, finds no error in the Magistrate Judge's failure to consider these cases again in its *Johnson* analysis, as the Court agrees with MGMTL that they are distinguishable from the facts of this case.  Notably, all three cases are unpublished, non-circuit authority.  Nonetheless, the Court will conduct its own analysis of the three cases cited by STI: (1) *In re Volkswagen "Clean Diesel" Marketing., Sales Practices, & Products Liability Litigation*;[334] (2) *FameFlynet Inc., v. Jasmine Enterprises, Incorporated*;[335] and (3) *Greenwich Film Productions, S.A. v. DRG Records, Inc.*[336]

The *Volkswagen* case involved claims that Volkswagen had misbranded clean diesel vehicles, which resulted in thousands of lawsuits and two class actions.  The plaintiffs opted out of the class settlements and instead brought their own claims under California's Consumer Legal Remedies Act.[337]  After plaintiffs filed suit, Volkswagen offered them settlement amounts ranging from $11,000 to $30,500; plaintiffs refused the offers.[338]  A jury awarded four of the plaintiffs compensatory damages ranging from $500 to $3,000, and awarded nothing to the remaining five plaintiffs.[339]  The jury also awarded minimal punitive damages of $25,000 per car to the same four plaintiffs who recovered economic damages, for a total of $100,000,

---

[333] *See* R. Doc. 347 at pp. 4 & 5–8.
[334] Civ. A. No. 15-MD-02672-CRB, 2023 WL 4109573 at *12.
[335] Civ. A. No. 17 C 4749, 2019 WL 3733592.
[336] Civ. A. No. 91 CIV. 0546 (JSM), 1996 WL 502336 (S.D.N.Y. Sept. 5, 1996).
[337] Civ. A. No. 15-MD-02672-CRB, 2023 WL 4109573 at *1–2.
[338] *Id*. at *2.
[339] *Id*.

which was later reduced by the court after trial.[340]  As a result of their success, the

plaintiffs sought over $623,000 in attorney's fees and costs.[341]  The Northern District

of California reduced the amount of fees and costs sought by 85% explaining that:

> A significant reduction in attorneys' fees is appropriate given the largely
> wasted litigation following Volkswagen's settlement offer.  In the Ninth
> Circuit, it is well-established that "[w]hen a plaintiff rejects a Rule
> 68 offer, the reasonableness of an attorney fee award ... will depend, at
> least in part, on the district court's consideration of the results the
> plaintiff obtained by going to trial compared to the Rule 68 offer."[342]

The district court pointed out that, "[o]ther circuits agree that a prevailing plaintiff's

rejection of a settlement offer may be a factor affecting the amount of the fee award,"

and, "[s]o, too, in California."[343]

> Importantly, the district court then concluded:

> This was a run-of-the-mill CLRA/Song-Beverly case for Knight Law,
> which itself proclaims to be "the largest and most respected lemon law
> firm in California," Knight Law Reply at 12.  The trial attorneys'
> performance here, however, was subpar and riddled with bad arguments
> and unnecessary motions.  Moreover, as an individual action in the
> MDL, [one of the plaintiff's] case did not involve any complex issues.
> There's also no indication that Knight Law, as a repeated lemon law
> player in California courts, was precluded from accepting other cases
> because it was busy prosecuting this one.[344]

In particular, the district court recognized that, "an 85-percent reduction certainly is

steep," but held that it was warranted given Volkswagen's early settlement offer "and

the bad result here."[345]

---

[340] *Id.*
[341] *Id.* at *1.
[342] *Id.* at *10 (citing *Haworth v. Nevada*, 56 F.3d 1048 (9th Cir. 1995)).
[343] Civ. A. No. 15-MD-02672-CRB, 2023 WL 4109573 at *10 (citing authority).
[344] *Id.* at *12.
[345] *Id.*

The Court points out that the significant issues relied upon by the district court in *Volkswagen* to impose a "steep" reduction in the attorney fee award do not exist in this case. According to the *Volkswagen* court, that was a "run-of-the-mill" case; MGMTL's case was not "run-of-the-mill." Additionally, that court premised its steep reduction on the subpar performance of the plaintiffs attorneys; there is no such claim here. Instead, the Court can attest to the fine performance of all trial counsel. The *Volkswagen* court also recognized that the case was not complex; as discussed earlier, this case was complex, requiring experts' tedious line-by-line comparison of two software programs. The Court emphasizes the complexity of this computer software copyright infringement case, which included extensive discovery and motion practice,[346] several status conferences and oral arguments, and a two-week trial that took place just over two years from the filing of the lawsuit. And, finally, the *Volkswagen* court spilled much ink on the plaintiffs' refusal of an early settlement offer even after thousands of litigants had availed themselves of similar settlements. That is not the case here.

The next case cited by STI, *FameFlynet*, involved a copyright dispute.[347] The plaintiff filed suit in September 2016, and less than two months later the parties ended settlement negotiations "because they could not bridge the $1,000 gap between the $16,000 demand and $15,000 offer."[348] According to the district court, the parties

---

[346] The Court notes that motion practice included the filing of over a dozen substantive motions, including a motion to dismiss, a motion for summary judgment, two motions to compel, and nine motions in limine.

[347] *FameFlynet, Inc. v. Jasmine Ent. Inc.,* Civ. A. No. 17 C 4749, 2019 WL 3733592 (N.D. Ill. Aug. 8, 2019).

[348] Civ. A. No. 17 C 4749, 2019 WL 3733592 at *1.

engaged in discovery disputes for the next year.[349]  Two years after initiation of the suit, the district court granted the plaintiff's motion for summary judgment as to defendant's liability.[350]  After the ruling, the plaintiff demanded $200,000 and the defendant offered $15,000 and then $17,000 to settle the case, which plaintiff again declined.[351]  In lieu of trial, the parties stipulated to the facts and a statutory damages award of $5,000, reserving their rights to attorneys' fees.[352]  The plaintiff then sought over $225,000 in attorneys' fees and costs.[353]  The Northern District of Illinois awarded $10,500 in fees and costs, finding that:

> The past two-and-a-half years of litigation could have been avoided.  The parties were $1,000 apart from settling three weeks after [plaintiff] served [defendant] with the summons and complaint.  For [plaintiff] to then incur hundreds of thousands of dollars in fees simply makes no sense, and it should not be rewarded for what should have been a straightforward case.[354]

The facts in *FameFlynet* are distinguishable from this case.  While STI maintains that it made a settlement offer early in the case, as discussed earlier, the record evidence does not support that this matter could have been settled early on for the same amount ultimately awarded by the jury.  Again, as noted above, this case involved extensive, hotly contested motion practice and a two-week trial; not the "stipulation of facts" that went to trial in *FameFlynet*.

---

[349] *Id.*

[350] *Id.*

[351] *Id.*

[352] *Id.* at *2.

[353] *Id.*

[354] *Id.* at *6.

Finally, in *Greenwich Film Prods., S.A. v. DRG Recs., Inc.*, a case out of the Southern District of New York, the plaintiff agreed to settle his copyright and related breach of contract claim for a little over $70,000, but sought over $259,000 in fees and costs.[355]  In that case, the defendant had offered to settle the case for $30,000 before the action was filed, but the plaintiff refused.[356]  The court awarded attorneys' fees in the amount of $10,000, finding, "[i]t is clear that the result achieved does not justify a substantial award."[357]  While that case resulted in a significant reduction in the attorney fee award, the district court's reasoning was clear that the reduction was the result of the plaintiff refusing the settlement offer made prior to litigation.

Each of these three cases cited by STI is premised on the district court finding that a party refused an early and reasonable settlement offer.  Indeed, in *Greenwich*, the defendant offered to settle prior to the filing of the lawsuit.  In this case, the evidence confirms that a settlement offer was made by STI, but the only evidence in support of the timing of that settlement offer reflects that it was made days before trial.  Accordingly, the Court overrules STI's objection to the Report and Recommendation based upon the Magistrate Judge's failure to consider the twelfth *Johnson* factor, awards in similar cases.

With that said, and as detailed earlier, the Court is fully cognizant of the disparity between the damages sought at trial by MGMTL and the amount it recovered, as well as the disparity between the fees sought by MGMTL and the

---

[355] Civ. A. No. 91 CIV. 0546 (JSM), 1996 WL 502336, at *1 (S.D.N.Y. Sept. 5, 1996).
[356] *Id.* at *2.
[357] *Id.*

amount it recovered, and MGMTL's overall success at trial. In accordance with Fifth Circuit precedent, it is that information that forms the basis for this Court's determination of a reduced award. After full consideration of the *Johnson* factors, the Court concludes that no further adjustment to the lodestar amount is appropriate.

### iii.    Calculation of the Reasonable Fee Award

Having determined the reasonable hourly rates of MGMTL's attorneys and that the reasonable fee award is subject to a 50% reduction due to MGMTL's limited success, MGMTL's block billing, and MGMTL's billing for clerical work, the following chart sets forth the reasonable fee award under the lodestar method:

| Name | Hours[358] | Year | Hourly Rate | Amount |
|---|---|---|---|---|
| Flanagan | 18.80 | 2020 | $450.00 | $8,460.00 |
| Flanagan | 123.10 | 2021 | $465.00 | $57,241.50 |
| Flanagan | 264 | 2022 | $480.00 | $126,720.00 |
| Gauthier | 211.10 | 2020 | $250.00 | $52,775.00 |
| Gauthier | 1245.60 | 2021–22 | $265.00 | $330,084.00 |
| Gauthier | 11.90 | 2023 | $275.00 | $3,272.50 |
| Durocher | 215 | 2020 | $200.00 | $43,000.00 |
| Durocher | 1602.10 | 2021–22 | $215.00 | $344,451.50 |
| Durocher | 67.60 | 2023 | $225.00 | $15,210.00 |
| Duplechain | 31.30 | 2020 | $200.00 | $6,260.00 |
| Duplechain | 171.10 | 2021 | $200.00 | $34,220.00 |

---

[358] *See* R. Doc. 281-2 at p. 91.

| Duplechain | 48.80 | 2022 | $200.00 | $9,760.00 |
|---|---|---|---|---|
| Rivera | 136.90 | | $125.00 | $17,112.50 |
| Padilla | 233.80 | | $125.00 | $29,225.00 |

Based on the foregoing chart, the total amount billed by MGMTL on its copyright infringement claim, using the court-determined reasonable hourly rates, is $1,077,792.00. After applying a 50% reduction for the reasons detailed herein, the lodestar calculation of a reasonable fee award in this case is $538,896.00.[359]

    iv.   MGMTL's Supplemental Memorandum

After using the lodestar method to calculate a reasonable fee award, the Magistrate Judge considered MGMTL's Supplemental Memorandum requesting an additional $31,066 in attorney's fees that it incurred in March and April 2023 to: (1) oppose STI's re-urged Fed. R. Civ. P. 50 motion to overturn the jury verdict; (2) oppose STI's efforts to stay resolution of the instant Motion until after its appeal to the Fifth Circuit; and (3) respond to STI's multiple objections to MGMTL's proposed judgment.[360] STI did not file a response to the Supplemental Memorandum. The Magistrate Judge found that MGMTL was entitled to the additional fees because MGMTL prevailed on all three issues.[361] The Magistrate Judge pointed out that the undersigned denied STI's Rule 50 motion, denied STI's request to stay resolution of the instant Motion, and overruled each of STI's objections to MGMTL's proposed final

---

[359] The attorney fee award is now just over three times the amount recovered in trial.

[360] R. Doc. 347 at pp. 36–37.  *See* R. Doc. 298.

[361] R. Doc. 347 at p. 37.

judgment. The Magistrate Judge, applying the previously-determined reasonable hourly rates for Flanagan, Gauthier, and Durocher, determined that MGMTL was entitled to an additional $23,549 in attorney's fees.[362]

Neither party objected to the Magistrate Judge's award of an additional $23,549 in attorney's fees, in either their objections to the Report and Recommendation or their subsequent briefing on MGMTL's Second Supplemental Memorandum requesting more fees.[363] The Court finds that while there was no error in this finding at the time it was issued by the Magistrate Judge, the Fifth Circuit has since clarified that STI is entitled to judgment on three of MGMTL's claims – the breach of the Software Evaluation Agreement claim and the two misappropriation of trade secrets claims brought under the LUTSA and the DTSA.[364] STI, in an email sent to this Court on October 18, 2022, objected to MGMTL's proposed final judgment on several grounds, including on the ground that STI was entitled to judgment on these three counts. Since that was one of five objections asserted regarding MGMTL's proposed final judgment, the Court finds that a 10% reduction to the supplemental fees requested is warranted. Applying that 10% reduction to the $23,549 in additional fees calculated by the Magistrate Judge using the reasonable hourly rates for Flanagan, Gauthier, and Durocher, the Court finds that MGMTL is entitled to an additional $21,194.10 in fees for work performed in March and April 2023.

---

[362] *Id.*
[363] *See* R. Docs. 349, 353, 354, 361, 365, & 369.
[364] *MGMTL, LLC v. Strategic Technology Institute, Inc.,* Case No. 23-30298, 2024 WL 3949073, at *3 (5th Cir. Aug. 27, 2024).

### C. MGMTL's Second Supplemental Memorandum

In its Second Supplemental Memorandum, MGMTL seeks an additional $82,608 for the fees it incurred from May 2023 to September 2024 for 240.30 hours it spent litigating the instant Motion for Attorneys' Fees, litigating its Bill of Costs, and opposing STI's appeal to the Fifth Circuit.[365]   MGMTL claims that it has already exercised billing judgment by excising duplicative or excessive billing entries and any billing entries related to claims not affirmed on appeal.[366]   MGMTL points to the reply briefs it filed in support of its Motion for Attorneys' Fees and its Bill of Costs, as well as its Objections to the Report and Recommendation and its Opposition brief to STI's objections.[367]   MGMTL also asserts that the Fifth Circuit affirmed its judgments and awards on the copyright infringement and breach of the Distributor Agreement claims, and reversed judgment only as to the claims for which MGMTL was awarded no damages.[368]   MGMTL claims that its status as the prevailing party awarded damages under the Copyright Act remains unchanged and that its copyright claim dominated the litigation at both the district court and appellate levels.[369]   MGMTL asserts that because it has been forced to incur additional fees that were largely driven by STI's opposition to its request for fees and costs, STI's withdrawal of counsel, and STI's unsuccessful copyright appeal, the Court should award MGMTL the additional $82,608 in fees that it incurred from May 2023 to September 2024.

---

[365] R. Doc. 361.
[366] *Id*. at p. 2 (*citing* R. Doc. 361-2 at pp. 2–3).
[367] R. Doc. 361 at p. 3 (*citing* R. Docs. 306, 313, 349, & 354).
[368] R. Doc. 361 at pp. 4–5.
[369] *Id*. at p. 5.

STI opposes MGMTL's Second Supplemental Memorandum, pointing out that the Fifth Circuit has clarified that MGMTL was even less successful on its claims than the Magistrate Judge had assumed at the time of issuing the Report and Recommendation, and found that STI was successful on three out of MGMTL's five claims.[370] STI points out that the Fifth Circuit ruled that each party should bear its own costs on appeal.[371] STI then cites the *Fogerty* factors and seems to assert that all three factors weigh against an award of fees in this case.[372] While not a model of clarity, STI seems to assert, for the first time, that the Court should deny MGMTL's Motion for Attorneys' Fees and, in the alternative, that the Court should "significantly reduce the request, including MGMTL's supplemental fee request."[373] STI then points out that MGMTL's Second Supplemental Memorandum neither reflects the reduced hourly rates set forth in the Report and Recommendation nor provides evidence to support the higher rates requested.[374] Applying the reduced rates recommended by the Magistrate Judge, STI asserts that MGMTL's request for additional fees should only total $39,435.[375] STI further asserts that this amount should be significantly reduced in the same proportion as MGMTL's original fee

---

[370] R. Doc. 365 at pp. 1–2.
[371] *Id*. at p. 2 (*citing* R. Doc. 362 at p. 2).  *See* R. Doc. 365 at pp. 5–6 (*citing* R. Doc. 362 at p. 2).
[372] R. Doc. 365 at pp. 2–4 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)).
[373] R. Doc. 356 at p. 4.  *See Id*. at p. 5 ("As noted above, STI urges the Court to exercise its discretion to disallow MGMTL's fee claim entirely.").
[374] *Id*. at pp. 4–5.
[375] *Id*. at p. 5.

request, or by as much as 85% based on awards in similar cases where plaintiffs refused to settle for the amount ultimately awarded at trial.[376]

In response, MGMTL asserts that because STI did not challenge the billing entries supporting its Second Supplemental Memorandum the Court can accept them as unopposed.[377] MGMTL claims that STI again repeats the false narrative that it was motivated to settle and offered to settle the case from the beginning for the amount MGMTL ultimately recovered, and MGMTL maintains that this argument is irrelevant to its supplemental request for fees.[378] MGMTL further asserts that STI's argument that it is not entitled to any of its fees is both waived and incorrect, pointing out that STI's proposed amended judgment shows STI's belief that MGMTL is entitled to fees and that STI confirmed during a September 10, 2024 telephone status conference that it was not challenging MGMTL's entitlement to fees.[379] MGMTL then argues that this Court has held that the hourly rates sought by MGMTL for the work performed in 2023 and 2024 are reasonable, and that there is no support for STI's suggestion that MGMTL's counsel's rates should remain stagnant over time.[380]

---

[376] *Id*. (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, Civ. A. No. 15-MD-02672-CRB, 2023 WL 4109573, at *12 (N.D. Cal. June 20, 2023); *FameFlynet Inc. v. Jasmine Enters., Inc.*, Civ. A. No. 17 C 4749, 2019 WL 3733592 (N.D. Ill. Aug. 8, 2019); *Greenwich Film Prods., S.A. v. DRG Recs., Inc.*, Civ. A. No. 91 CIV. 0546 (JSM), 1996 WL 502336 (S.D.N.Y. Sept. 5, 1996)).

[377] R. Doc. 369 at pp. 1 & 2.

[378] *Id*. at pp. 2–3.

[379] *Id*. at pp. 4–5 (*citing* R. Doc. 364-1).

[380] R. Doc. 369 at pp. 5–6 (citing *REC Marine Logistics, L.L.C. v. Richard*, Civ. A. No. 19-11149, 2020 WL 1527766, at *3 (E.D. La. Mar. 27, 2020) (finding $375 per hour reasonable for an attorney with 13 years of experience); *Markey v. Wyndham Vacation Ownership, Inc*., Civ. A. No. 20- 02517, 2021 WL 4902583, at *2 (E.D. La. Oct. 21, 2021) (Roby, M.J.) (awarding fees at a rate of $378 per hour for an attorney with 9 years of experience); *Loiacano v. DISA Glob. Sols*., Civ. A. No. 14-1750, 2016 WL 2926679, at *2 (E.D. La. May 19, 2016) (Lemelle, J.) ($350 per hour is reasonable for partner work); *RedHawk Holdings Corp. v. Schreiber*, Civ. A. No. 17-819, 2022 WL 65860, at *5 (E.D. La. Jan. 6, 2022) (Lemelle, J.) (approving $325 per hour for a partner with 10 years of experience)).

Finally, MGMTL asserts that its supplemental request for attorney's fees does not include a request for costs.[381]

At the outset, the Court agrees with MGMTL that any argument by STI that MGMTL is not entitled to an award of attorney's fees has been waived. On September 10, 2024, the Court held a telephone status conference and ordered the parties to confer and send an email to the Court with a "proposed amendment judgment that is commensurate with the Fifth Circuit's August 27, 2024 per curiam opinion."[382] On September 16, 2024, MGMTL's counsel emailed the Court a copy of MGMTL's proposed judgment and STI's revisions to MGMTL's proposed judgment, which shows that STI did not contest the inclusion of an award of attorney's fees in MGMTL's proposed judgment.[383] Additionally, during the September 10, 2024 telephone status conference, counsel for both parties confirmed that neither party was seeking additional briefing regarding MGMTL's Motion for Attorneys' Fees or the Report and Recommendation in light of the Fifth Circuit's ruling.[384] Notably, STI's counsel did not argue that MGMTL was not allowed to attorney's fees, and instead asserted that the Fifth Circuit's ruling merely strengthened the arguments STI made in its objections to the Report and Recommendation. As such, the Court rejects STI's attempt, at this late stage, to assert that MGMTL is not entitled to attorney's fees.

Turning to the merits of MGMTL's request for supplemental fees, the Court notes that MGMTL cites no legal authority in the Second Supplemental

---

[381] R. Doc. 369 at pp. 6–7.
[382] R. Doc. 357.
[383] *See* R. Doc. 364-1.
[384] R. Doc. 357.

Memorandum to support its request for additional fees.  With respect to MGMTL's request for the fees it incurred to litigate its Motion for Attorneys' Fees, while the Fifth Circuit has held that attorney's fees may be awarded for time spent litigating the fee claim in civil rights cases,[385] MGMTL has not cited, and the Court has not found, any legal authority in this Circuit supporting such an award in a copyright case.  Accordingly, the Court denies MGMTL's request for additional fees for the costs incurred to litigate its Motion for Attorneys' Fees.  The Court reiterates that the party seeking attorney's fees bears the burden of establishing entitlement to an award.[386] MGMTL has failed to carry its burden with respect to the additional fees sought for pursuing the instant Motion.

The Court reaches the same conclusion with respect to MGMTL's request for additional fees it incurred to litigate its Bill of Costs.  Notably, no determination has been made on MGMTL's Bill of Costs[387] because the Court issued an Order and Reasons on July 13, 2023 granting STI's Motion to Approve Supersedeas Bond and Stay Execution of Judgment, which stayed the execution of the Court's April 13, 2023 Final Judgment, as well as the Bill of Costs.[388]  The Court lifted the stay on March

---

[385] *Johnson v. State of Miss.*, 606 F.2d 635, 638 (5th Cir. 1979).  *See also Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 336 (5th Cir. 1995) (affirming district court's discretion in refusing to tax fees and costs for pursuing a cost application in antitrust case); *Chem. Mfrs. Ass'n v. U.S.E.P.A.*, 885 F.2d 1276, 1283 (5th Cir. 1989) (finding that party could recover attorney's fees for time spent litigating its fee request in a Clean Water Act case); *Spray-Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226, 1250 (5th Cir. 1982) (affirming award of attorney's fees incurred to litigate fee request in antitrust suit).

[386] *Amawi v. Paxton*, 48 F.4th 412, 416 (5th Cir. 2022) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)).

[387] *See* R. Docs. 296 & 313.

[388] R. Doc. 325.

24, 2025.[389]  MGMTL has not directed the Court to any legal authority in this Circuit supporting its request for additional fees for filing its Bill of Costs, especially when the Bill of Costs remains pending.  As such, the Court finds that MGMTL has failed to carry its burden of proving it is entitled to additional fees to litigate its Bill of Costs.

To the extent MGMTL seeks to recover additional fees for its appellate work in this matter, the Court finds that MGMTL is entitled to a portion of those fees.  The Fifth Circuit has held that a party may recover additional attorney's fees as a successful appellee in a copyright infringement case.[390]  Because the Fifth Circuit "reject[ed] STI's attempts to overturn the jury's verdict" with respect to the copyright infringement claim,[391] the Court finds that MGMTL was a successful appellee.  The Court recognizes, however, that STI was also successful in its appeal, as the Fifth Circuit determined that STI had been successful on three out of MGMTL's five claims.  As such, the Court finds that MGMTL may recover a portion of the attorney's fees it incurred on appeal.  Since MGMTL's counsel did not separate its billing entries based upon the three categories of work for which it seeks additional fees – litigating the instant Motion, litigating its Bill of Costs, and litigating STI's appeal – and because MGMTL was only partially successful in one of those categories, since STI was partially successful in its appeal, the Court finds that MGMTL is entitled to 25% of the additional fees sought in its Second Supplemental Memorandum.

---

[389] R. Doc. 372.

[390] *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 578 (5th Cir. 2003) (citing *Maljack Prods. v. GoodTimes Home Video Corp.*, 82 F.3d 881, 890–91 (9th Cir. 1996)).

[391] *MGMTL, LLC v. Strategic Technology Institute, Inc.,* Case No. 23-30298, 2024 WL 3949073, at *3 (5th Cir. Aug. 27, 2024).

Turning to the hourly rates sought for the additional work performed in 2023 and 2024 by Durocher ($280), Duplechain ($250), and Gauthier ($390), MGMTL failed to submit affidavits from other attorneys in the Eastern District of Louisiana or any other evidence of prevailing market rates in this community.[392]  The Court, however, "is itself an expert on the question of [reasonable billing rates] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value."[393]

The Court has already determined that a reasonable hourly rate for Gauthier in 2023 is $275, and that a reasonable hourly rate for Durocher in 2023 is $225.  The Court further finds that $200 is a reasonable hourly rate for work that Duplechain performed in 2023 and 2024, as she was admitted to the Louisiana bar in 2020 and has less than five years of experience.[394]  The Court further finds that a reasonable hourly rate for Gauthier in 2024, when she had 12 years of experience,[395] is $290.  "Judges in this district award attorneys' fees in the amount of $300–375 per hour for work performed by a partner with 13 to 20 years of experience."[396]  As to Durocher, who had nine years of experience in 2024,[397] the Court find that a reasonable hourly

---

[392] *See, generally*, R. Doc. 361.
[393] *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940) (citing authority).
[394] *Girod LoanCo., LLC v. Heisler*, Civ. A. No. 19-13150, 2020 WL 3605947, at *8 (E.D. La. July 2, 2020) (citing *Batiste v. Lewis*, Civ. A. No. 17-4435, 2019 WL 1591951, at *3 (E.D. La. Apr. 12, 2019) (awarding $200.00 per hour to attorney with five years of experience)).
[395] *See* R. Doc. 281-2 at p. 2, ¶ 7.
[396] *Girod LoanCo.*, Civ. A. No. 19-13150, 2020 WL 3605947 at *8 (citing authority).
[397] *See* R. Doc. 281-2 at pp. 2–3, ¶ 8.

rate is $240.[398]  Accordingly, using the reduced hourly rates set forth above, and based

upon the Court's calculation,[399] MGMTL is seeking the following additional fees:

| Name | Hours | Year | Hourly Rate | Total |
|------|-------|------|-------------|-------|
| Gauthier | 73.20 | 2023 | $275.00 | $20,130.00 |
| Gauthier | 70.20 | 2024 | $290.00 | $20,358.00 |
| Durocher | 60.30 | 2023 | $225.00 | $13,567.50 |
| Durocher | 21.60 | 2024 | $240.00 | $5,184.00 |
| Duplechain | 2.70 | 2023 | $200.00 | $540.00 |
| Duplechain | 12.30 | 2024 | $200.00 | $2,460.00 |

Based on the foregoing chart, the total amount of additional fees billed by MGMTL

in 2023 and 2024, using the court-determined reasonable hourly rates for 2023 and

2024, is $62,239.50.  Since the Court has determined that MGMTL is entitled to 25%

of those fees, the Court finds that MGMTL is entitled to an additional fee award of

$15,559.88.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that MGMTL, LLC'S

Motion for Attorneys' Fees[400] is **GRANTED in part, as modified**, and Strategic

---

[398] *See Nelson v. Constant*, Civ. A. No. 17-14581, 2021 WL 76407, at *3 (E.D. La. Jan. 8, 2021) (summarizing case law from this Court regarding reasonable hourly rates).

[399] The Court notes that MGMTL did not provide a summary of hours worked by each attorney in 2023 and 2024, and instead provided only the total number of hours billed by each attorney during that time.  R. Doc. 361-1.

[400] R. Doc. 281.

Technology Institute, Inc. is **ORDERED** to pay MGMTL, LLC reasonable attorney's fees in the amount of **$575,649.98** ($538,896.00 + $21,194.10 + $15,559.88).

New Orleans, Louisiana, March 31, 2025.

**WENDY B. VITTER**
**United States District Judge**